FILED

2015 NOV -3 PM 1:13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
J. MARK CHILDS (Cal. SBN: 162684)
Assistant United States Attorneys
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2433
    Facsimile: (213) 894-0142
    Email:  Mark.Childs@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION  CR 15 00606

| UNITED STATES OF AMERICA, | Case No. CR |
|---|---|
|     Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ANDREW HARRISON KRAMER |
|     v. | |
| ANDREW HARRISON KRAMER, | |
|     Defendant. | |

    1.  This constitutes the plea agreement between ANDREW HARRISON KRAMER ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the investigation by the government of defendant's marijuana trafficking that occurred between the years 2006 and 2013.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a)   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single count information in the form attached to this agreement as Exhibit 1 or a substantially similar form, which charges defendant with conspiracy to distribute a controlled substance, namely, marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

b)   Not contest facts agreed to in this agreement.

c)   Abide by all agreements regarding sentencing contained in this agreement.

d)   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing state or federal court order.

e)   To recommend and to not contest a sentence that includes a term of imprisonment of 16 years to be followed by seven years of supervised release.

f)   To recommend to the Court that the term of imprisonment imposed in this federal criminal case run concurrent to the term of imprisonment imposed or to be imposed against defendant by the state court in the case of People of the State of California v. Andrew Kramer, Superior Court for the State of California, County of Los Angeles, Case No. BA410217-01 ("Case No. BA410217-01").  To recommend to the Court that the Court include in the judgment in this case the following statement or a similar statement, "the term of imprisonment in this federal criminal case shall run concurrent to the term of imprisonment imposed or yet-to-be imposed against

defendant by the Superior Court for the States of California, County of Los Angeles, in the case of <u>People of the State of California v. Andrew Kramer</u>, Case No. BA410217-01".

g) Not to contest defendant's transfer from state custody to federal custody for the purpose of attending court appearances in this case. Not to contest defendant's transfer from federal custody to state custody for the purpose of attending court appearances in Case No. BA410217-01.

h) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

i) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

j) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

k) Not bring a post-conviction collateral attack on the conviction or sentence in this case, including the forfeiture order, except a post-conviction collateral attack based on ineffective assistance of counsel.

l) Not move to withdraw his guilty plea in this case.

m) Agree to, and not oppose, the imposition of the following conditions of probation or supervised release: not to engage in the sale, distribution, possession, or use of marijuana.

n) At the sole discretion and sole request of the government, allow funds previously seized by the government in

3

connection with this matter to be applied by the Court to pay restitution that defendant is required to pay by order of the state court in Case No. BA410217-01 and execute papers as necessary to accomplish this restitution payment.

o)   To forfeit to the United States immediately all of his right, title and interest in: a) any property constituting, or derived from, any proceeds defendant obtained, directly or indirectly, as the result of narcotics trafficking, that are subject to forfeiture pursuant to 21 U.S.C. § 853 including but not limited to all assets ("Forfeitable Assets") listed on Exhibit 2, attached hereto.  Defendant further agrees:

i)   The Forfeitable Assets are the proceeds of narcotics trafficking as set forth in the single count Information.

ii)  To waive prior notice of forfeiture through the charging document (Information) in this case.

iii) To fully assist the United States in the forfeiture of the Forfeitable Assets and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effectuate such forfeiture; assisting in bringing any assets located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any of the Forfeitable Assets in any civil forfeiture proceeding, administrative or judicial, which may

1  be initiated, and to withdraw any such claim that Defendant may have

2  already filed.

3         iv)  Not to claim that reasonable cause to seize the

4  assets was lacking.

5         v)   To fill out and deliver to the USAO a completed

6  financial statement listing defendant's assets on a form provided by

7  the USAO.

8         vi)  That forfeiture of assets described in Exhibit 2

9  shall not be counted toward satisfaction of any special assessment,

10  fine, restitution, costs, or other penalty the Court may impose,

11  except as specified in this agreement.

12

13       p)  To agree that his entry into this plea agreement is

14  not the result of coercion or pressure from anyone, including co-

15  conspirators or family members.

16                    THE USAO'S OBLIGATIONS

17       3.  The USAO agrees to:

18       a)  Not contest facts agreed to in this agreement.

19       b)  Abide by all agreements regarding sentencing

20  contained in this agreement.

21       c)  At the time of sentencing, provided that defendant

22  demonstrates an acceptance of responsibility for the offense up to

23  and including the time of sentencing, recommend a two-level

24  reduction in the applicable Sentencing Guidelines offense level,

25  pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move

26  for an additional one-level reduction if available under that

27  section.

28

1      d)   To recommend defendant's sentence in this case

2  include a term of imprisonment of 16 years to be followed by seven

3  years of supervised release.

4      e)   To recommend to the Court that the term of

5  imprisonment imposed in this federal criminal case run concurrent to

6  the term of imprisonment imposed or to be imposed against defendant

7  by the state court in the case of People of the State of California

8  v. Andrew Kramer, Superior Court for the State of California, County

9  of Los Angeles, Case No. BA410217-01 ("Case No. BA410217-01").  To

10 recommend to the Court that the Court include in the judgment in

11 this case the following statement or a similar statement, "the term

12 of imprisonment in this federal criminal case shall run concurrent

13 to the term of imprisonment imposed or yet-to-be imposed against

14 defendant by the Superior Court for the State of California, County

15 of Los Angeles, in the case of People of the State of California v.

16 Andrew Kramer, Case No. BA410217-01".

17      f)   Except for criminal tax violations (including

18 conspiracy to commit such violations chargeable under 18 U.S.C.

19 § 371), not criminally prosecute Rosalinda Kramer ("R. Kramer"),

20 Stuart Kramer ("S. Kramer"), Anahi E. Gutierrez ("A. Gutierrez") and

21 Cristhiane Beatie ("C. Beatie") for violations of federal drug

22 trafficking and money laundering laws arising out of their

23 conducting financial transactions or sales of marijuana, which

24 occurred in Los Angeles County, on behalf of defendant, and as part

25 of the operation of defendant's marijuana shops between the years

26 2009 and 2013.  Defendant understands that the USAO is free to

27 criminally prosecute R. Kramer, S. Kramer, A. Gutierrez and C.

28

Beatie for any other unlawful past conduct or any unlawful conduct that occurred after December 31, 2013.

## NATURE OF THE OFFENSE

4. Defendant understands that for defendant to be guilty of the crime charged in the single count information, that is, conspiracy to distribute at least 1000 kilograms of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), the following must be true:

(1) There was an agreement between two or more persons to distribute a controlled substance, such as marijuana or some other prohibited drug; and

(2) Defendant joined in the agreement knowing of its purpose of distributing a controlled substance, such as marijuana, and intending to help accomplish that purpose.

Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that defendant conspired to distribute at least 1000 kilograms of a mixture or substance containing a detectable amount of marijuana. Defendant admits that defendant, in fact, conspired to distribute over 3000 kilograms of a mixture or substance containing a detectable amount of marijuana (see factual basis, attached as Exhibit 3 hereto).

## PENALTIES

5. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), as charged in the

7

1  single count information, is: life imprisonment; a lifetime period

2  of supervised release; a fine of $10,000,000, or twice the gross

3  gain or gross loss resulting from the offense, whichever is

4  greatest; and a mandatory special assessment of $100.

5       6.   Defendant understands that the statutory mandatory minimum

6  sentence that the Court must impose for a violation of Title 21,

7  United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), as

8  charged in the single count information, is: 10 years' imprisonment,

9  followed by a five-year period of supervised release, and a

10  mandatory special assessment of $100.

11      7.   Defendant understands that supervised release is a period

12  of time following imprisonment during which defendant will be

13  subject to various restrictions and requirements.  Defendant

14  understands that if defendant violates one or more of the conditions

15  of any supervised release imposed, defendant may be returned to

16  prison for all or part of the term of supervised release authorized

17  by statute for the offense that resulted in the term of supervised

18  release.

19      8.   Defendant understands that, by pleading guilty, defendant

20  may be giving up valuable government benefits and valuable civic

21  rights, such as the right to vote, the right to possess a firearm,

22  the right to hold office, and the right to serve on a jury.

23  Defendant understands that once the court accepts defendant's guilty

24  plea, it will be a federal felony for defendant to possess a firearm

25  or ammunition.  Defendant understands that the conviction in this

26  case may also subject defendant to various other collateral

27  consequences, including but not limited to revocation of probation,

28  parole, or supervised release in another case and suspension or

1    revocation of a professional license.  Defendant understands that
2    unanticipated collateral consequences will not serve as grounds to
3    withdraw defendant's guilty plea.
4         9.   Defendant understands that under 21 U.S.C. § 862a,
5    defendant will not be eligible for assistance under state programs
6    funded under the Social Security Act or Federal Food Stamp Act or
7    for federal food stamp program benefits, and that any such benefits
8    or assistance received by defendant's family members will be reduced
9    to reflect defendant's ineligibility.
10        10.  Defendant understands that, if defendant is not a United
11   States citizen, the felony conviction in this case may subject
12   defendant to: removal, also known as deportation, which may, under
13   some circumstances, be mandatory; denial of citizenship; and denial
14   of admission to the United States in the future.  The court cannot,
15   and defendant's attorney also may not be able to, advise defendant
16   fully regarding the immigration consequences of the felony
17   conviction in this case.  Defendant understands that unexpected
18   immigration consequences will not serve as grounds to withdraw
19   defendant's guilty plea.

FACTUAL BASIS

20
21   Defendant admits that defendant is, in fact, guilty of the
22   offense to which defendant is agreeing to plead guilty.  Defendant
23   admits to the facts in Exhibit 3.  Defendant and the USAO agree to
24   the statement of facts attached as Exhibit 3 is sufficient to
25   support a plea of guilty to the charge described in this agreement
26   and to establish the Sentencing Guidelines factors set forth in
27   paragraph 12 below but is not meant to be a complete recitation of
28   all facts relevant to the underlying criminal conduct or all facts

9

1   known to either party that relate to that conduct.

2   <u>SENTENCING FACTORS</u>

3       11.   Defendant understands that in determining defendant's

4   sentence the Court is required to calculate the applicable

5   Sentencing Guidelines range and to consider that range, possible

6   departures under the Sentencing Guidelines, and the other sentencing

7   factors set forth in 18 U.S.C. § 3553(a).  Defendant understands

8   that the Sentencing Guidelines are advisory only, that defendant

9   cannot have any expectation of receiving a sentence within the

10  calculated Sentencing Guidelines range, and that after considering

11  the Sentencing Guidelines and the other § 3553(a) factors, the Court

12  will be free to exercise its discretion to impose any sentence it

13  finds appropriate up to the maximum set by statutes for the crimes

14  of conviction.  Defendant understands that he waives and gives up

15  any right to argue at sentencing, on appeal, or through a post-

16  conviction collateral attack on the conviction or sentence about the

17  applicability of the base offense level in the below paragraph, even

18  if this base offense level is subsequently modified or changed by

19  the U.S.S.G. or by federal statute or regulation.

20      12.   Defendant and the USAO agree to the following applicable

21  Sentencing Guidelines factor(s):

22      Base Offense Level:  32   [U.S.S.G. §§ 2D1.1(c)(4)]

23      Role:               +4   [U.S.S.G. § 3B1.1]

24      Drug Trafficking
        Premises:           +2   [U.S.S.G. § 2D1.1(b)(12)]
25
        Acceptance:         -3   [U.S.S.G. § 3E1.1]
26

27  Defendant and the USAO agree not to seek, argue, or suggest in any

28  way, either orally or in writing, that any other specific offense

characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13. Defendant and the USAO agree and stipulate that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), a sentence of 16 years of imprisonment, followed by seven years of supervised release, represents a reasonable and appropriate sentence in this case. Therefore, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that, either under the Sentencing Guidelines or the factors listed in 18 U.S.C. § 3553(a)(1)-(7), the Court impose a sentence other than 16 years of imprisonment, followed by seven years of supervised release, and that to do so would constitute a breach of this agreement. The parties agree that the parties may argue factors listed in 18 U.S.C. § 3553(a)(1)-(7) in support of a sentence that includes 16 years of imprisonment. The parties also agree that no prior imprisonment (other than credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3.

14. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15. Defendant understands that the Court may impose the term

11

1  of imprisonment in this case to run concurrently, partially

2  concurrently, or consecutively to any prior undischarged term of

3  imprisonment.  However, the parties agree to recommend to the Court

4  that the term of imprisonment imposed against defendant in this case

5  should run concurrent to the term(s) of imprisonment imposed or to

6  be imposed against defendant in People of the State of California v.

7  Andrew Kramer, Case No. Case No. BA410217-01.  The parties have no

8  agreement whether defendant is to be sentenced in this case before

9  or after defendant is sentenced in Case No. BA410217-01.

10       16.  Defendant agrees that the Court's failure to follow a

11  recommendation of the parties contained in this agreement will not

12  serve as a basis for defendant to withdraw his guilty plea.

13                    WAIVER OF CONSTITUTIONAL RIGHTS

14       17.  Defendant understands that by pleading guilty, defendant

15  gives up the following rights:

16            a)   The right to persist in a plea of not guilty.

17            b)   The right to a speedy and public trial by jury.

18            c)   The right to be represented by counsel – and if

19  necessary have the court appoint counsel - at trial.  Defendant

20  understands, however, that, defendant retains the right to be

21  represented by counsel – and if necessary have the court appoint

22  counsel – at every other stage of the proceeding.

23            d)   The right to be presumed innocent and to have the

24  burden of proof placed on the government to prove defendant guilty

25  beyond a reasonable doubt.

26            e)   The right to confront and cross-examine witnesses

27  against defendant.

28

1    f)    The right to testify and to present evidence in

2  opposition to the charge, including the right to compel the

3  attendance of witnesses to testify.

4    g)    The right not to be compelled to testify, and, if

5  defendant chose not to testify or present evidence, to have that

6  choice not be used against defendant.

7    h)    Any and all rights to pursue any affirmative

8  defenses, Fourth Amendment or Fifth Amendment claims, and other

9  pretrial motions that have been filed or could be filed.

10                    WAIVER OF APPEAL OF CONVICTION

11    18.   Defendant understands that by pleading guilty defendant is

12  waiving and giving up any right to appeal defendant's conviction on

13  the offense to which defendant is pleading guilty.

14                    WAIVER OF APPEAL OF SENTENCE

15    19.   As long as the Court imposes a sentence that includes a

16  term of imprisonment of no more than 16 years, defendant gives up

17  and waives any right to appeal all of the following: (a) the

18  procedures and calculations used to determine and impose any portion

19  of the sentence; (b) the term of imprisonment imposed by the Court;

20  (c) the fine or restitution amount imposed by the Court; (d) the

21  term of probation or supervised release imposed by the Court; and

22  (e) all conditions of probation or supervised release imposed by the

23  Court, including, but not limited to, the conditions set forth in

24  General Orders 318, 01-05, and/or 05-02 of this Court, the drug

25  testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d),

26  the alcohol and drug use conditions authorized by 18 U.S.C.

27  § 3563(b)(7), and the condition not to engage in the sale,

28  distribution, possession, or use of marijuana.

20. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel.

21. As long as the Court imposes a sentence that includes a term of imprisonment of 16 years, the USAO gives up its right to appeal any sentence imposed by the Court and the manner in which the sentence is determined.

RESULT OF WITHDRAWAL OF GUILTY PLEA

22. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any allegation of a prior conviction for a felony drug offense that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement. In addition, pursuant to the agreements entitled, "Statute of Limitations Tolling Agreement and Waiver", effective January 1, 2014 and June 1, 2015 ("Tolling Agreements"), the parties agree that the period of limitations applicable to criminal charges referenced in the Tolling Agreements shall be tolled for the period beginning on January 1,

1 | 2014 and ending on December 1, 2015.

2 | <u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

3 |     23.  Defendant agrees that if the count of conviction is

4 | vacated, reversed, or set aside, both the USAO and defendant will be

5 | released from all their obligations under this agreement.

6 | <u>EFFECTIVE DATE OF AGREEMENT</u>

7 |     24.  This agreement is effective upon signature and execution

8 | of all required certifications by defendant, defendant's counsel,

9 | and an Assistant United States Attorney.

10 | <u>BREACH OF AGREEMENT</u>

11 |     25.  Defendant agrees that if defendant, at any time after the

12 | signature of this agreement and execution of all required

13 | certifications by defendant, defendant's counsel, and an Assistant

14 | United States Attorney, knowingly violates or fails to perform any

15 | of defendant's obligations under this agreement ("a breach"), the

16 | USAO may declare this agreement breached.  All of defendant's

17 | obligations are material, a single breach of this agreement is

18 | sufficient for the USAO to declare a breach, and defendant shall not

19 | be deemed to have cured a breach without the express agreement of

20 | the USAO in writing.  For instance, if defendant fails to plead

21 | guilty as required by this agreement (or fails to recommend a term

22 | of imprisonment of 16 years), defendant will have breached the plea

23 | agreement.  If the USAO declares this agreement breached, and the

24 | Court finds such a breach to have occurred, then: (a) if defendant

25 | has previously entered a guilty plea pursuant to this agreement,

26 | defendant will not be able to withdraw the guilty plea, and (b) the

27 | USAO will be relieved of all its obligations under this agreement.

28 |     26.  Following the Court's finding of a knowing breach of this

1   agreement by defendant, should the USAO choose to pursue any charge

2   in the attached information, any charge related to defendant's drug

3   trafficking and money laundering, or any charge or any allegation of

4   a prior conviction for a felony drug offense that was either

5   dismissed or not filed as a result of this agreement, then:

6          a)   Defendant agrees that any applicable statute of

7   limitations is tolled between the date of defendant's signing of

8   this agreement and the filing commencing any such action.

9          b)   Defendant waives and gives up all defenses based on

10  the statute of limitations, any claim of pre-indictment delay, or

11  any speedy trial claim with respect to any such action.

12         c)   Defendant agrees that: (i) any statements made by

13  defendant, under oath, at the guilty plea hearing (if such a hearing

14  occurred prior to the breach); (ii) the agreed to factual basis

15  statement attached to this agreement (namely, Exhibit 3 attached

16  hereto); and (iii) any evidence derived from such statements, shall

17  be admissible against defendant in any action against defendant

18  (including, but not limited to, in the government's case-in-chief in

19  any case based on defendant's drug trafficking described in this

20  agreement), and defendant waives and gives up any claim under the

21  United States Constitution, any statute, Rule 410 of the Federal

22  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

23  Procedure, or any other federal rule, that the statements or any

24  evidence derived from the statements should be suppressed or are

25  inadmissible.

26              COURTS AND PROBATION OFFICE NOT PARTIES

27      27.  Defendant understands that the Court and the United States

28  Probation Office are not parties to this agreement and need not

1   accept any of the parties' sentencing recommendations or the

2   parties' agreements to facts or sentencing factors.  A state court

3   is not a party to this agreement.  Defendant gives up any right to

4   argue that an action by a state court serves as a ground to withdraw

5   defendant's guilty plea to the single count information in this

6   case.

7       28.   Defendant understands that both defendant and the USAO are

8   free to: (a) supplement the facts by supplying relevant information

9   to the United States Probation Office and the Court, (b) correct any

10   and all factual misstatements relating to the Court's Sentencing

11   Guidelines calculations and determination of sentence, and (c) argue

12   on appeal and collateral review that the Court's Sentencing

13   Guidelines calculations and the sentence it chooses to impose are

14   not error, although each party agrees to maintain its view that the

15   calculations above are consistent with the facts of this case.

16   While this paragraph permits both the USAO and defendant to submit

17   full and complete factual information to the United States Probation

18   Office and the Court, even if that factual information may be viewed

19   as inconsistent with the facts agreed to in this agreement, this

20   paragraph does not affect defendant's and the USAO's obligations not

21   to contest the facts agreed to in this agreement.

22       29.   Defendant understands that even if the Court ignores any

23   sentencing recommendation, finds facts or reaches conclusions

24   different from those agreed to, and/or imposes any sentence up to

25   the maximum established by statute, defendant cannot, for that

26   reason, withdraw defendant's guilty plea, and defendant will remain

27   bound to fulfill all defendant's obligations under this agreement.

28   Defendant understands that no one -- not the prosecutor, defendant's

1  attorney, or the Court -- can make a binding prediction or promise
2  regarding the sentence defendant will receive, except that it will
3  be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

4
5      30.  Defendant understands that, except as set forth herein or
6  in other signed written agreement(s) with the government, there are
7  no promises, understandings, or agreements between the USAO and
8  defendant or defendant's attorney, and that no additional promise,
9  understanding, or agreement may be entered into unless in a writing
10 signed by all parties or on the record in Court.
11

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13     31.  The parties agree that this agreement and exhibits
14 attached to and apart of this agreement will be considered part of
15 the record of defendant's guilty plea hearing as if the entire
16 agreement had been read into the record of the proceeding.

17 AGREED AND ACCEPTED

18 UNITED STATES ATTORNEY'S OFFICE
19 FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 _____     11/2/15
   J. MARK CHILDS                      Date
21 Assistant United States Attorney

22

23 _____     11-2-15
24 ANDREW HARRISON KRAMER              Date
   Defendant
25
26 _____     11/2/15
   SARA AZARI                          Date
27 Attorney for Defendant
   ANDREW HARRISON KRAMER
28

18

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  I understand that the Court's failure to follow a recommendation of the parties in this agreement will not serve as a basis to withdraw my guilty plea.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement or in another signed written agreement(s) with the government.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _11-2-15_
ANDREW HARRISON KRAMER               Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ANDREW HARRISON KRAMER's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible

1   pretrial motions that might be filed, of possible defenses that
2   might be asserted either prior to or at trial, of the sentencing
3   factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing
4   Guidelines provisions, and of the consequences of entering into this
5   agreement.  I have explained to my client that the Court's failure
6   to follow a recommendation of the parties contained in this
7   agreement will not serve as a basis for my client to withdraw his
8   guilty plea.  To my knowledge: no promises, inducements, or
9   representations of any kind have been made to my client other than
10  those contained or referenced in this agreement or in another signed
11  written agreement(s) with the government; no one has threatened or
12  forced my client in any way to enter into this agreement; my
13  client's decision to enter into this agreement is an informed and
14  voluntary one; and the factual basis set forth in this agreement is
15  sufficient to support my client's entry of a guilty plea pursuant to
16  this agreement.

17
18  _____          _____
19  SARA AZARI                               Date  11/2/15
    Attorney for Defendant
20  ANDREW HARRISON KRAMER

21
22
23
24
25
26
27
28

# EXHIBIT ONE

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,        )   CR No. 15
                                      )
11              Plaintiff,            )   I N F O R M A T I O N
                                      )
12              v.                    )   [21 U.S.C. § 846: Conspiracy
                                      )    to Distribute Marijuana]
13   ANDREW HARRISON KRAMER,          )
                                      )
14              Defendant.            )
                                      )
15   ─────────────────────────────────

16        The United States Attorney charges:

17                   [21 U.S.C. § 846]

18   A.   OBJECT OF THE CONSPIRACY

19        Beginning on a date unknown, and continuing until at least

20   in or about April 2013, in Los Angeles County, within the

21   Central District of California, and elsewhere, defendant ANDREW

22   HARRISON KRAMER ("KRAMER"), and others known and unknown to the

23   United States Attorney, conspired and agreed with each other to

24   knowingly and intentionally distribute at least 1000 kilograms

25   of a mixture and substance containing a detectable amount of

26   marijuana, a Schedule I controlled substance, in violation of

27   Title 21, United States Code, Sections 841(a)(1) and

28   841(b)(1)(A)(vii).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.    Defendant KRAMER and uncharged co-conspirators would own and operate businesses in Los Angeles County, California, involved in the distribution of marijuana ("defendant KRAMER's marijuana businesses").

2.    Defendant KRAMER and uncharged co-conspirators would arrange for the purchase of large quantities of marijuana from various suppliers for further distribution.

3.    Defendant KRAMER and uncharged co-conspirators would distribute dozens of kilograms of marijuana per month to customers of defendant KRAMER's marijuana businesses.

4.    Uncharged co-conspirators would ship marijuana from defendant KRAMER's marijuana businesses to customers in South Carolina, North Carolina, and elsewhere in the United States.

5.    Defendant KRAMER and uncharged co-conspirators would deposit proceeds from the sale of marijuana into financial accounts controlled by defendant KRAMER, uncharged co-conspirators, and others who acted on the behalf of defendant KRAMER.

6.    Defendant KRAMER and others, who were acting on his behalf, would load proceeds from the sale of marijuana into Automated Teller Machines ("ATMs") located at defendant KRAMER's marijuana businesses.  The ATMs would be used by customers to withdraw cash to pay for marijuana sold at defendant KRAMER's marijuana businesses.  The companies that serviced the ATMs for

2

1 | defendant KRAMER would then direct electronic payments to
2 | various accounts controlled by defendant KRAMER as reimbursement
3 | for the funds withdrawn from the ATMs, which would have the
4 | effect of concealing the source of the money generated by
5 | defendant KRAMER's marijuana businesses.

6 | C.   OVERT ACTS

7 |     In furtherance of the conspiracy and to accomplish the
8 | object of the conspiracy, on or about the following dates,
9 | defendant KRAMER and uncharged co-conspirators committed various
10 | overt acts within the Central District of California, and
11 | elsewhere, including but not limited to the following:

12 |     1.   Between the year 2006 and, at least, February 2014,
13 | defendant KRAMER and uncharged coconspirators established,
14 | owned, and operated the following businesses used as locations
15 | to distribute marijuana: Zen Healing, also known as ("aka") Zen
16 | Healing Collective, located on Santa Monica Boulevard, West
17 | Hollywood, California ("ZHC"); West Hollywood Center for
18 | Compassionate Healing, aka the Sunset Shop Incorporated, located
19 | on ~~Santa Monica~~ SUNSET Boulevard, West Hollywood, California ("WHCCH");
20 | Alternative Herbal Health Services, located on Santa Monica
21 | Boulevard, West Hollywood, California ("AHHS"); Marina
22 | Caregivers, located on Washington Boulevard, Marina Del Rey,
23 | California ("MC"); Westwood Caregivers LLC, located ~~on Santa~~ IN
24 | ~~Monica Boulevard,~~ Los Angeles, California ("WC"); La Brea
25 | Compassionate Caregivers, located on North La Brea, Los Angeles,
26 | California ("LBCC"); Mecca Natural Medicine, located on West
27 | Washington Boulevard, Los Angeles, California ("MNM"); and North
28 | Valley Discount Caregivers, located on Devonshire Boulevard,

Granada Hills, California ("NVDC"), collectively, "defendant
KRAMER's marijuana businesses."

2.   On February 19, 2008, two uncharged co-conspirators
("CC1" and "CC2"), on defendant KRAMER's behalf, opened Wells
Fargo bank account XXXXXX9438 in the name "Victory Financial
Services" for use in depositing drug proceeds generated from
defendant KRAMER's marijuana businesses.

3.   Between approximately January 2009 and September 2010,
defendant KRAMER, or others acting at his direction, deposited
over $500,000 in drug proceeds generated from defendant KRAMER's
marijuana businesses into Wells Fargo bank account XXXXXX9438.

4.   On April 29, 2009, defendant KRAMER opened Wells Fargo
Bank account number XXXXXX7418 for use in depositing drug
proceeds generated from the operation of ZHC.

5.   On September 21, 2010, from South Carolina, drug
traffickers sent a package addressed to ZHC that contained
approximately $18,000 in drug proceeds.

6.   In February 2011, CC1, acting at defendant KRAMER's
direction, opened a bank account for WC with an initial deposit
of $332,355, which consisted of drug proceeds generated from
defendant KRAMER's marijuana business.

7.   On March 15, 2011, at ZHC, defendant KRAMER and others
acting at his direction possessed approximately 441 kilograms of
marijuana and marijuana products that were available for sale at
that location.  On that day, 542 marijuana plants and $271,000
in drug proceeds were stored at ZHC.

8.   On March 15, 2011, at AHHS, defendant KRAMER and
others acting at his direction possessed approximately 149

4

kilograms of marijuana and marijuana products that were available for sale at that location. On that day, 251 marijuana plants and $34,000 in drug proceeds were stored at AHHS.

9. On December 28, 2012 and January 15, 2013, defendant KRAMER and CCI possessed drug proceeds sent from drug traffickers in North Carolina and South Carolina that had been deposited into Wells Fargo Bank account XXXXXX0202.

10. On April 16, 2013, at ZHC, defendant KRAMER and others acting at his direction possessed approximately 569 kilograms of marijuana that were available for sale to customers at that location. On that day, $89,922 in drug proceeds were stored at ZHC.

11. On April 16, 2013, at MC, defendant KRAMER and others acting at his direction possessed approximately 158 kilograms of marijuana and marijuana products that were available for sale to customers at that location. On that day, approximately, $50,000 in drug proceeds were stored at MC.

12. On April 16, 2013, at AHSS, defendant KRAMER and others acting at his direction possessed approximately 147

///
///
///
///
///
///
///
///
///

1   kilograms of marijuana and marijuana products that were

2   available for sale at that location.   On that day, $36,512 in

3   drug proceeds were stored at AHSS.

4

5                         EILEEN M. DECKER
                         United States Attorney

6

7

    LAWRENCE S. MIDDLETON

8   Assistant United States Attorney
    Chief, Criminal Division

9

    KEVIN M. LALLY

10  Assistant United States Attorney
    Chief, Organized Crime Drug

11  Enforcement Task Force Section

12  BENJAMIN R. BARRON
    Assistant United States Attorney

13  Deputy Chief, Organized Crime Drug
    Enforcement Task Force Section

14
    J. MARK CHILDS

15  Assistant United States Attorney
    Organized Crime Drug Enforcement

16  Task Force Section

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

$171,980.37 Seized from Branch Banking and Trust Account XXXXXX9375 on June 14, 2013

$174,125.00 in U.S. Currency seized on April 16, 2013

$79,375.00 in U.S. Currency seized on April 16, 2013

$525,752.70 in Escrow Funds seized on February 13, 2014

Real Property located at 11266 Chimineas Avenue, Porter Ranch, California
Real Property located at 620 W. Hyde Park Boulevard, Unit 114, Inglewood, California
Real Property located at 13250-13252 Foothill Boulevard, Los Angeles, California
Real Property located at 11552 Cantlay Street, North Hollywood, California

**Exhibit 3**

Beginning on a date unknown, and continuing through the year 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant Andrew Kramer ("KRAMER"), and others known and unknown, conspired and agreed with each other to knowingly and intentionally distribute at least 1000 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vii).

The objects of the conspiracy were to be accomplished in substance as follows:

1.    KRAMER and uncharged co-conspirators would own and operate marijuana shops in the Los Angeles County, California area.

2.    KRAMER and uncharged co-conspirators would distribute, approximately, dozens of kilograms of marijuana per month in the marijuana shops and elsewhere.

3.    KRAMER and uncharged co-conspirators would arrange for the purchase of large quantities of marijuana from suppliers for distribution to customers at the marijuana shops and elsewhere.

4.    Uncharged co-conspirators would ship marijuana to customers in South Carolina, North Carolina and elsewhere.

5.    KRAMER and uncharged co-conspirators would deposit proceeds from the sale of marijuana into financial accounts controlled by KRAMER, uncharged co-conspirators, and others acting on the behalf of KRAMER.

6.    KRAMER and others acting on his behalf would load proceeds from the sale of marijuana into Automated Teller Machines ("ATMs") located at his marijuana stores.  The ATMs would be used by customers to withdraw cash to pay for marijuana sold in the stores.  The companies that serviced the ATMs for KRAMER would then direct electronic payments to various accounts controlled by KRAMER as reimbursement for the funds withdrawn from the ATMs.

In furtherance of the conspiracy, which involved more than five conspirators, and to accomplish the objects of the conspiracy, on or about the following dates, KRAMER and his co-conspirators the committed the following acts:

1.    Between 2006 and, at least, the year 2013, KRAMER and his coconspirators owned and operated the following businesses as locations to (and that, in fact, did) distribute marijuana: Zen Healing, also known as Zen Healing Collective, located on Santa Monica Boulevard, West Hollywood, California ("ZHC"); West Hollywood Center for Compassionate Healing, also known as the Sunset Shop Incorporated, located on ~~Santa Monica~~ SUNSET Boulevard, West Hollywood, California ("WHCCH"); Alternative Herbal Health Services, located on Santa Monica Boulevard,  West Hollywood, California ("AHHS"); Marina Caregivers, located on Washington Boulevard, Marina Del Rey, California ("MC"); Westwood Caregivers LLC, located in Los Angeles, California ("WC"); La Brea Compassionate Caregivers, located on

1

North La Brea, Los Angeles, CA ("LBCC"); Mecca Natural Medicine, located on West Washington Blvd., Los Angeles, California ("MNM"), and North Valley Discount Caregivers ("NVDC").

2.    On January 2, 2006, at NVDC, 17 kilograms of marijuana and marijuana products were available for purchase. On September 28, 2006, at NVDC, 95 kilograms of marijuana and marijuana products were available for purchase. On that day, at a storage location for NVDC, located a few blocks away from NVDC, approximately, 23 kilograms of marijuana and marijuana products, and $49,821 in drug proceeds, were stored. In 2006, A. Kramer possessed, at least, $105,090 in drug proceeds in accounts at Bank of America ("BA") and Washington Mutual ("WM").

3.    On January 17, 2007, at WHCCH, 379 kilograms of marijuana and marijuana products were available for purchase and $21,000 in drug proceeds were stored at WHCCH. That same day, at ZHC, 116 kilograms of marijuana and marijuana products were available for purchase, and $6,000 in drug proceeds were stored at ZHC. In 2007, KRAMER possessed, at least, $108,998 in drug proceeds in accounts at BA and Citibank.

4.    Between the years 2008 and 2013, KRAMER'S marijuana stores distributed, per month, dozens of kilograms of marijuana and marijuana products to customers.

5.    Between the years 2009 and 2012, KRAMER and others acting on his behalf loaded proceeds from the sale of marijuana into Automated Teller Machines ("ATMs") located at his marijuana stores. The ATMs were used by customers to withdraw cash to pay for marijuana sold in the stores. The companies that serviced the ATMs for KRAMER then directed electronic payments to various bank accounts to reimburse KRAMER for the funds withdrawn from the ATMs.

6.    Between, approximately, January 2009 and May 11, 2012, over $1,500,000 of drug proceeds from KRAMER's marijuana shops were deposited by KRAMER, or others acting at his direction, into JP Morgan Chase bank accounts (accounts #s-ending 1111, 4726, 7898, 7913, 9634, 9642), Branch Banking and Trust account ("BB&T") (account #-ending 3936), Wells Fargo Bank accounts (account #s-ending 0202, 1894, 1928, 9560 and 7418) and US Bank account (account #-ending 7001), which were controlled by KRAMER and other coconspirators.

7.    On or about September 21, 2010, from South Carolina, drug traffickers sent a package containing, $18,000, approximately, in drug proceeds that was intended for KRAMER at ZHC and as payment for marijuana shipped from California by KRAMER's coconspirator to drug dealers in South Carolina. During the course of the conspiracy, KRAMER and his coconspirators caused dozens of pounds of marijuana to be shipped from California to other states, including, South Carolina and North Carolina.

8.    On March 15, 2011, at ZHC, 441 kilograms of marijuana and marijuana products were available for sale by employees of ZHC. On that day, 542 marijuana plants and $271,000 in drug proceeds were stored at ZHC.

9.    On March 15, 2011, at AHHS, 149 kilograms of marijuana and marijuana products were available for sale by employees of AHHS.   On that day, 251 marijuana plants and $34,000 in drug proceeds were stored at AHHS.

10.    In February 2011, another coconspirator ("CC2"), acting at defendant's direction, opened a bank account for WC and deposited into this account $332,355 of drug proceeds derived from defendant's marijuana business.

11.    On December 28, 2012 and January 15, 2013, drug proceeds from drug traffickers in North Carolina and South Carolina were deposited into Wells Fargo Bank account (#0202), which was controlled by KRAMER and CC2.

12.    On April 16, 2013, at ZHC, 569 kilograms of marijuana products were available for purchase; at MC, 158 kilograms of marijuana products were available for purchase; at LBCC, 230 kilograms of marijuana products were available for purchase; and at AHSS, 147 kilograms of marijuana products were available for purchase.  On that day, at ZHC, $92,962 in drug proceeds were stored; at MC, $50,000, approximately, in drug proceeds were stored; at LBCC, $20,000, approximately, in drug proceeds were stored; and at AHSS, $35,000, approximately, in drug proceeds were stored.

13.    As part of the conspiracy, defendant is responsible for the distribution of at least 3000 kilograms of a mixture and substance containing a detectable amount of marijuana but no more than 10,000 kilograms of a mixture and substance containing a detectable amount of marijuana.