1            UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3        HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4

5

UNITED STATES OF AMERICA,            )
6                                     )
                        PLAINTIFF,    )
7                                     )
            vs.                       ) No. CR 15-606-RGK
8                                     )
ANDREW HARRISON KRAMER,               )
9                                     )
                        DEFENDANT.    )

10

11

12            REPORTER'S TRANSCRIPT OF PROCEEDINGS
                    LOS ANGELES, CALIFORNIA
                   MONDAY, NOVEMBER 23, 2015
13                        1:53 P.M.

14

15               A-P-P-E-A-R-A-N-C-E-S

16  FOR PLAINTIFF:     OFFICE OF THE UNITED STATES ATTORNEY
                       BY:  MARK CHILDS
17                         ASSISTANT UNITED STATES ATTORNEY
                       312 NO. SPRING STREET
18                     LOS ANGELES, CA  90012
                       213.894.2433
19
    FOR DEFENDANT:     LAW OFFICE OF SARA AZARI
20                     BY:  SARA AZARI, ATTORNEY AT LAW
                       644 SO. FIGUEROA STREET
21                     LOS ANGELES, CA  90017
                       213.622.5000
22

23          *SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR*
              *Official Court Reporter, U.S. District Court*
24             *255 East Temple Street, Room 181-F*
                  *Los Angeles, CA  90012*
25                     *213.894.5949*

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 23, 2015

 2                            1:53 P.M.

 3                            - - - -

 4              THE CLERK:  Calling calendar item No. 17, case

 5    No. Criminal 15-606-RGK, United States of America versus Andrew

 6    Harrison Kramer.

 7          Counsel, please state your appearances.

 8              MR. CHILDS:  Good afternoon, Your Honor.  Mark Childs

 9    on behalf of the United States.

10              THE COURT:  Counsel.

11              MS. AZARI:  Good afternoon, Your Honor.  Sara Azari on

12    behalf of Mr. Kramer.

13              THE COURT:  Thank you.  If you would approach the

14    lecturn, please.

15          My understanding is this is going to be a change of plea,

16    Counsel.  Is that my understanding?

17              MS. AZARI:  Yes.

18              THE COURT:  Or not a change of plea.  An initial plea.

19              MS. AZARI:  Actually, a change of plea.

20              THE COURT:  Has he already entered a plea?

21              MS. AZARI:  He's entered a plea of not guilty before

22    the magistrate judge.

23              MR. CHILDS:  In fact, I don't think he even entered

24    a plea on that day.

25              MS. AZARI:  Oh, exactly.  You're right.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1        THE COURT:  Our records didn't show that he had.

2        MR. CHILDS:  He had not, Your Honor.

3        THE COURT:  Second question I have is that my CRD

4   mentioned to me something about not getting a sentencing

5   report.

6        MS. AZARI:  Your Honor, we'd like to request that the

7   PSR be waived and that Mr. Kramer be sentenced.  We've

8   discussed dates in December.  I think December 17th is good for

9   both parties, but obviously, that's up to the Court.

10       THE COURT:  Yeah, I don't feel -- I don't mind trying

11  to get it expedited as soon as possible, but I'd want some

12  background on it before I'd feel comfortable to enter

13  sentencing.

14       MS. AZARI:  Could we ask, then, for an abbreviated PSR

15  where we don't have to set the sentencing out 90 days?

16       THE COURT:  I'll see what -- yeah, I'll order one.  I

17  don't know if they can turn it around that fast, but I'll

18  certainly order it for you.

19       MS. AZARI:  But one that is perhaps as to his criminal

20  history, so the Court has --

21       THE COURT:  Well, criminal history, I need the

22  criminal history, but I also have to find out what the offense

23  is.  But we'll order it, and I'll ask, see what we can do as

24  far as getting an expedited PSR.

25       MS. AZARI:  Thank you.

```
 1          THE COURT:  Okay.  So in this matter, then, sir -- let
 2   me just get the papers.
 3       Mr. Kramer, my understanding is that you wish to enter a
 4   plea to the one count of the information.  Is that correct?
 5          THE DEFENDANT:  Yes, Your Honor.
 6          THE COURT:  You understand -- why don't we pull the
 7   microphone over.  Thank you.
 8       You understand that you've got a right against
 9   self-incrimination.  That means nobody could force you to plead
10   guilty or say anything that might incriminate you today.  If
11   you pled guilty, obviously you'd be incriminating yourself.
12       You understand your right against self-incrimination?
13          THE DEFENDANT:  Yes, Your Honor.
14          THE COURT:  And do you waive and give up that right so
15   you can enter your plea today?
16          THE DEFENDANT:  Yes, Your Honor.
17          THE COURT:  Now, before I take your plea, I have to
18   make certain findings for the record, so I'm going to have to
19   talk to you and ask you some questions, so let me put you under
20   oath at this time.
21          THE CLERK:  Can you please raise your right hand to
22   the best of your ability.  That's fine.
23       Do you solemnly swear that the answers you make to the
24   questions asked of you by the Court shall be the truth, the
25   whole truth, and nothing but the truth, so help you God?
```

```
 1              THE DEFENDANT:  Yes.

 2              THE CLERK:  Thank you.

 3              THE COURT:  What is your true legal name, sir?

 4              THE DEFENDANT:  It's Andrew Kramer.

 5              THE COURT:  Do you have a middle name?

 6              THE DEFENDANT:  Harrison.

 7              THE COURT:  Okay.  Is there any other name you go by?

 8              THE DEFENDANT:  No, sir.

 9              THE COURT:  Okay.  What city do you live in?

10              THE DEFENDANT:  Where I used to live?  Los Angeles.

11   West Hollywood.

12              THE COURT:  West Hollywood area?  Okay.

13         And how old are you now?

14              THE DEFENDANT:  41.

15              THE COURT:  And how much schooling or education have

16   you received?  Eighth grade?  Twelfth grade?

17              THE DEFENDANT:  No, Your Honor.  Graduate school, Your

18   Honor.

19              THE COURT:  Graduate school.  So you've gone through

20   college.  Okay.

21         One of the reasons I asked you that is because we have a

22   plea agreement here consisting of, I don't know, about 19 or 20

23   pages, and I want to make sure, have you been able to read that

24   plea agreement?

25              THE DEFENDANT:  I have, but not recently.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  Okay.  Have you gone over it with your

 2   attorney?

 3              THE DEFENDANT:  We did.

 4              THE COURT:  Okay.  What I want to make sure is that,

 5   after reading that, are you convinced that you fully understand

 6   the terms and conditions and everything in that plea agreement?

 7   Because if not -- it's more important that you understand

 8   everything that's going on here today than even myself, so I've

 9   gotta make sure you understand everything.

10              THE DEFENDANT:  I -- I agree -- not everything in

11   there is accurate, but I agree with it, yes.

12              THE COURT:  Okay.  What I'm really concerned about is

13   the agreement that you made with the AUSA.  You understand what

14   the terms of that agreement would be and what would happen to

15   you and all?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  Okay.  And you've gone over it with your

18   attorney, you're satisfied with her advice?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  And you want to enter into that plea

21   agreement today; is that correct?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  Okay.  The reason I'm waiting for you is

24   that she has to take down everything that's said, and if you

25   nod your head, she can't get it down.  So you have to answer
```

```
1    audibly as to these questions.
2        Let me get some background questions.  Is there any
3    history in your background of treatment for either mental
4    illness or addiction?
5             THE DEFENDANT:  Is ADHD considered a mental illness?
6             THE COURT:  Well, let me ask you.  Are you taking
7    medication for that?
8             THE DEFENDANT:  I was until this -- all my life, until
9    this happened, yes.
10            THE COURT:  Okay.  Is there anything about that
11   condition or the medication that you're taking, anything at all
12   that would affect your ability to understand what we're doing
13   here today?
14            THE DEFENDANT:  No.  It affects my -- if I -- just --
15   it's just I can't -- sometimes it's hard to speak as clearly as
16   I normally could.
17            THE COURT:  Okay.
18            THE DEFENDANT:  Obviously, I'm nervous, but also it --
19            THE COURT:  I'm not as concerned about that as I am
20   your understanding everything that's happening today.  I don't
21   care if you speak slowly or if you're hesitant.  What I care
22   about is, I've gotta make sure you understand everything we're
23   doing here today and agree to it.
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  Okay.  So is there anything that you --
```

1    any medication, pain medication, anything at all that might

2    make it difficult for you to understand what we're doing today?

3              THE DEFENDANT:  No, sir.

4              THE COURT:  Okay.  Now, as we go through this process,

5    if there is anything that is confusing to you or anything that

6    you're not sure of, any questions that you might ask, will you

7    please stop me and make sure that I explain it to you before we

8    go any further?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  You understand how important it is that

11   you understand everything today, okay?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Okay.  In this matter, the government has

14   alleged a violation of Title 21 of the United States Code,

15   Section 846, 841(a)(1) and 841(b)(1)(A), and what I'm going to

16   ask them to do now is to explain what elements they would have

17   to prove at trial in order to convict you of this offense.

18   Before they get into that, let me just explain to you, if you

19   wish to follow along, most of what they're going to be reading

20   is going to be from that plea agreement that you've already

21   looked at.  If you want to follow along, you can take a look at

22   page 7, paragraph 4, but listen very carefully.  I want to make

23   sure you understand the elements they would have to prove.

24        Counsel.

25             MR. CHILDS:  For defendant to be guilty of the crime

```
 1   charged in the single-count information, that is, conspiracy to
 2   distribute at least a thousand kilograms of a mixture or
 3   substance containing a detectable amount of marijuana, a
 4   Schedule 1 controlled substance, in violation of Title 21,
 5   United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A),
 6   the following must be true and must be proven by the government
 7   beyond a reasonable doubt:  First, there was an agreement
 8   between two or more persons to distribute a controlled
 9   substance such as marijuana or some other prohibited drug; and
10   second, defendant joined in the agreement knowing of its
11   purpose of distributing a controlled substance such as
12   marijuana and intending to help accomplish that purpose.
13        Further, for the defendant to be subject to the statutory
14   maximums and the statutory minimum sentences, which I'll
15   discuss, or the Court will discuss shortly, the government must
16   prove beyond a reasonable doubt that defendant conspired to
17   distribute at least a thousand kilograms of a mixture or
18   substance containing a detectable amount of marijuana.
19             THE COURT:  Okay.  So you understand what the elements
20   are the government would have to present at trial before you
21   could ever be convicted of this?  You understand that?
22             THE DEFENDANT:  Yes, Your Honor.
23             THE COURT:  Now I'm going to have them state what
24   facts they would prove -- or excuse me, what facts they would
25   present at trial to prove that these elements have been met.
```

1    So I'm going to ask you to listen very carefully, and this is,

2    by the way, on page -- make sure I have it here --

3              MR. CHILDS:  Exhibit 3.

4              THE COURT:  Exhibit 3.  But listen very carefully,

5    because they're going to tell us what facts they would present

6    at trial to prove these elements, and when they get through,

7    I'm going to ask you whether or not you admit these facts are

8    true or not, so that's why I want you to listen very carefully.

9         Counsel.

10             MR. CHILDS:  If this matter went to trial, the

11   government would prove the following through a variety of

12   different evidence, including witness testimony, documents that

13   were seized, marijuana that were seized from various

14   dispensaries, among other evidence:

15        Beginning on a date unknown and continuing through the

16   year 2013, in Los Angeles County, within the Central District

17   of California and elsewhere, defendant and others, known and

18   unknown, conspired and agreed with each other to knowingly and

19   intentionally distribute at least a thousand kilograms of a

20   mixture and substance containing a detectable amount of

21   marijuana, a Schedule 1 controlled substance, in violation of

22   Title 21, United States Code, Sections 841(a)(1) and

23   841(b)(1)(A).

24        In furtherance of the conspiracy, which involved more than

25   five conspirators, and to accomplish the object of the

1    conspiracy, on or about the following dates, defendant and his

2    co-conspirators committed the following acts:

3        First, between 2006 and at least the year 2013, defendant

4    and his co-conspirators owned and operated the following

5    businesses as locations to, and that in fact did, distribute

6    marijuana:  Zen Healing, also known as Zen Healing Collective,

7    located on Santa Monica Boulevard, West Hollywood, California;

8    West Hollywood Center for Compassionate Healing, also known as

9    The Sunset Shop, Incorporated, located on Sunset Boulevard,

10   West Hollywood, California; Alternative Herbal Health Services,

11   located on Santa Monica Boulevard, West Hollywood, California;

12   Marina Caregivers, located on Washington Boulevard, Marina Del

13   Rey, California; Westwood Caregivers, LLC, located in

14   Los Angeles, California; La Brea Compassionate Caregivers,

15   located on North La Brea, Los Angeles, California; Mecca

16   Natural Medicine, located on West Washington Boulevard,

17   Los Angeles, California; and North Valley Discount Caregivers.

18       Second, on January 2nd, 2006, at NVDC, 17 kilograms of

19   marijuana and marijuana products were available for purchase.

20   On September 28th, 2006, at NVDC, 95 kilograms of marijuana and

21   marijuana products were available for purchase.  On that day,

22   at a storage location for NVDC, located a few blocks away from

23   NVDC, approximately 23 kilograms of marijuana and marijuana

24   products, and $49,821 in drug proceeds were stored.  In 2006,

25   defendant possessed at least $105,090 in drug proceeds in

1    accounts at Bank of America and Washington Mutual.

2        Third, on January 17th, 2007, at WHCCH, 379 kilograms of

3    marijuana and marijuana products were available for purchase,

4    and 21,000 in drug proceeds were stored at WHCCH.  That same

5    day, at ZHC, 116 kilograms of marijuana and marijuana products

6    were available for purchase, and 6,000 in drug proceeds were

7    stored at ZHC.  In 2007, defendant possessed at least $108,998

8    in drug proceeds in accounts at Bank of America and Citibank.

9        Fourth, between the years 2008 and 2013, defendant's

10   marijuana stores distributed, per month, dozens of kilograms of

11   marijuana and marijuana products to customers.

12       Fifth, between the years 2009 and 2012, defendant, and

13   others acting on his behalf, loaded proceeds from the sale of

14   marijuana into Automated Teller Machines located at his

15   marijuana stores.  The ATMs were used by customers to withdraw

16   cash to pay for marijuana sold in their stores.  The companies

17   that service the ATMs for defendant then directed electronic

18   payments to various bank accounts to reimburse defendant for

19   the funds withdrawn from the ATMs.

20       Sixth, between approximately January 2009 and May 11,

21   2012, over $1,500,000 of drug proceeds from defendant's

22   marijuana shops were deposited by defendant, or others acting

23   at his direction, into JP Morgan Chase bank accounts, accounts

24   ending in 1111 or 4726 or 7898 or 7913 or 9634 or 9642; Branch

25   Banking & Trust account, account ending in 3936; Wells Fargo

1   bank accounts, accounts ending in 0202 or 1894 or 1928 or 9560

2   or 7418; and U.S. Bank account, account ending 7001 -- in other

3   words, 7001 -- which were controlled by defendant and other

4   co-conspirators.

5       Seventh, on or about September 21st, 2010, from South

6   Carolina, drug traffickers sent a package containing $18,000,

7   approximately, in drug proceeds that was intended for defendant

8   at ZHC and as payment for marijuana shipped from California by

9   defendant's co-conspirators to drug dealers in South Carolina.

10  During the course of the conspiracy, defendant and his

11  co-conspirators caused dozens of pounds of marijuana to be

12  shipped from California to other states, including South

13  Carolina and North Carolina.

14      Eighth, on March 15th, 2011, at ZHC, 441 kilograms of

15  marijuana and marijuana products were available for sale by

16  employees of ZHC.  On that day, 542 marijuana plants and

17  $271,000 in drug proceeds were stored at ZHC.

18      Ninth, on March 15th, 2011, at AHHS, 149 kilograms of

19  marijuana and marijuana products were available for sale by

20  employees of AHHS.  On that day, 251 marijuana plants and

21  34,000 in drug proceeds were stored at AHHS.

22      Tenth, in February 2011, another co-conspirator, known as

23  CC2, acting at defendant's direction, opened a bank account for

24  WC and deposited into this account $332,355 of drug proceeds

25  derived from defendant's marijuana business.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    Eleventh, on December 28, 2012, and January 15, 2013, drug

2    proceeds from drug traffickers in North Carolina and South

3    Carolina were deposited into Wells Fargo Banking account number

4    ending 0202, which was controlled by defendant and CC2.

5    Twelfth, on April 16, 2013, at ZHC, 569 kilograms of

6    marijuana products were available for purchase at MC, 158

7    kilograms of marijuana products were available for purchase at

8    LBCC, 230 kilograms of marijuana products were available for

9    purchase, and at AHSS -- that's AHSS -- 147 kilograms of

10   marijuana products were available for purchase.  On that day,

11   at ZHC, $92,962 in drug proceeds were stored.  At MC, $50,000,

12   approximately, in drug proceeds were stored.  At LBCC, $20,000,

13   approximately, in drug proceeds were stored.  And at AHSS,

14   $35,000, approximately, in drug proceeds were stored.

15   Thirteenth, as part of the conspiracy, defendant is

16   responsible for the distribution of at least 3,000 kilograms of

17   a mixture and substance containing a detectable amount of

18   marijuana, but no more than 10,000 kilograms of a mixture and

19   substance containing a detectable amount of marijuana.

20   THE COURT:  Okay.  Thank you, Counsel.

21   Okay.  The AUSA has just stated the facts that they intend

22   to present if they went to trial to prove those elements of the

23   offense.

24   You understand what those facts are?

25   THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  And do you admit those facts to be true?

 2              THE DEFENDANT:  The investigating officers found that

 3    some of those counts did not -- some of those businesses did

 4    not involve me.  And certainly some of those pro- -- a lot of

 5    those proceeds were not from anything to do with marijuana.

 6    But I understand, and I --

 7              THE COURT:  Well, let me help you out, because

 8    whatever the two sides agree on, because it's an agreed-upon

 9    plea agreement, and I will be happy to take a break so you can

10    work it out, but I've gotta make sure that the facts that they

11    say they -- I'm interested in the facts that they say they will

12    present that you admit to, because those are the only things

13    I'm going to go off of.  So do you want a few minutes?

14              MS. AZARI:  May I just have one moment?

15              THE COURT:  Sure.

16         (Defense counsel and defendant conferred privately.)

17              THE COURT:  So I want to make sure you understand that

18    the only thing that I'm interested in is the facts that you

19    admit to be true.

20              THE DEFENDANT:  Yes, Your Honor.

21              THE COURT:  So do you need some time to work it out,

22    or do you admit the facts stated by the AUSA are true?

23              THE DEFENDANT:  They're true, Your Honor.

24              THE COURT:  Okay.  As he stated here in court?

25              THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Okay.  In this particular matter, this is

2     a type of an offense that could be punished by up to a maximum

3     of life imprisonment, a lifetime period of supervised release,

4     a fine of ten million dollars or twice the gross gain or loss

5     resulting from the offense, whichever is greatest, and a

6     mandatory special assessment of $100.

7          There also is a statutory mandatory minimum that the Court

8     must impose for a violation of Title 21 of the United States

9     Code, Section 846, 841(a)(1), and 841(b)(1)(A), which is what's

10    charged in this single-count information.  The minimum -- or

11    excuse me.  The statutory minimum sentence would be ten years'

12    imprisonment followed by a five-year period of supervised

13    release and a mandatory special assessment of $100.

14         You understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Now, you understand that supervised

17    release is that period of time where, if you did time in

18    custody and then you were released on supervision, if you

19    violated the terms and conditions of that supervision, you

20    could be returned to this court on that violation, and you

21    could get additional time on the violation over and above what

22    you might additionally get.

23         You understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Also, if you happen to be on parole,

1  probation, or supervised release on some other matter other

2  than this, a plea in this matter could result in a violation of

3  that parole, probation, or supervised release, and of course

4  that court could give you time on their case independently of

5  what might happen here.

6       You understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Now, there are certain governmental rights

9  that you'd be giving up if you plead, such as your right to

10 vote, your right to serve as a juror, your right to own a

11 firearm.  Some cases, it can affect citizenship or result in

12 deportation.  It can affect welfare rights for you or your

13 family, like food stamps, things like this.

14      All those governmental rights can be affected by your

15 plea.  You understand that?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Now, I talked to you earlier about your

18 right against self-incrimination.  There are a few other rights

19 I want to talk to you about that I'm sure you've gone over with

20 your attorney, but I've gotta make sure, myself, that you

21 understand those rights and that you're willing to give them

22 up.

23      First of all, you have a right to be presumed innocent

24 until and unless the government can prove their case to 12

25 jurors who unanimously would have to agree upon your guilt

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  beyond a reasonable doubt before you could be found guilty.  If

2  you pled guilty today, you'd be giving up that right, because

3  you'd be convicted on your own plea.

4       You understand that right you have to be presumed

5  innocent?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Do you waive and give up that right in

8  order to enter your plea today?

9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  You also have a right to have an attorney

11  at all stages of the proceedings.  You have a right to have a

12  public trial, a speedy trial, a right to see, hear, and

13  cross-examine the witnesses that the government would call to

14  prove their case against you.  You'd have a right at trial to

15  present defenses in your own behalf, to subpoena witnesses in

16  free of charge to testify for you if you wished.  At trial

17  you'd have the right to take the stand and testify on your own

18  behalf if you wished, or to remain silent, not take the stand,

19  and nobody could draw any adverse inference from the fact you

20  did not take the stand.

21       All these rights you'd have at trial, you'd be giving up

22  if you plead guilty, because there's not going to be a trial.

23  You understand that?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  And you waive and give up those rights?

```
 1              THE DEFENDANT:  Yes, Your Honor.

 2              THE COURT:  Okay.  Now, going back to your plea

 3    agreement here, you said you've read it, understood it and want

 4    to enter into it, but there's a few things I just want to make

 5    sure we're very clear on.  Part of this agreement is -- let me

 6    make sure I have it here -- that you and the AUSA apparently

 7    have agreed to the following as far as arguments and as far as

 8    sentencing goes:  That the base level is a base level 32; for

 9    role, enhancement is four levels; for drug trafficking premises

10    is two levels; for acceptance of responsibility is a minus

11    three levels, which comes out to about -- I think it's 35

12    levels as far as the sentencing guidelines.  The criminal

13    history would be calculated by the Court at a later time.

14         You understand that?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  And you two have agreed to that?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  Counsel joins?

19              MS. AZARI:  Yes.

20              MR. CHILDS:  Yes, Your Honor, but there's other

21    salient points that are in there.

22              THE COURT:  I know there are.

23              MR. CHILDS:  If the Court would like, I can go over

24    the main salient points of the plea agreement quickly.

25              THE COURT:  Well, I was going to go over that, but go
```

1   ahead, and if I think you need to add anything, I'll tell you.

2           MR. CHILDS:  Thank you, Your Honor.

3       The defendant has agreed to plead guilty to the

4   single-count information, which is in the form attached to this

5   agreement as Exhibit 1, it's already been filed, which charges

6   the defendant with a conspiracy to distribute a controlled

7   substance, namely, marijuana, in violation of Title 21, United

8   States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

9       The parties jointly agree to recommend and to not contest

10  a sentence that includes a term of imprisonment of 16 years, to

11  be followed by seven years' supervised release.  The parties

12  also jointly agree to recommend to the Court that the term of

13  imprisonment imposed in this federal criminal case run

14  concurrent to the term of imprisonment imposed, or to be

15  imposed, against defendant by the state court in the case of

16  People of the State of California v. Andrew Kramer, Superior

17  Court for the State of California, County of Los Angeles, case

18  No. BA410217-01.

19      The parties also jointly agree to recommend to the Court

20  that the Court include in the judgment in this federal criminal

21  case the following statement or a similar statement, quote:

22  The term of imprisonment in this federal criminal case shall

23  run concurrent to the term of imprisonment imposed or yet to be

24  imposed against defendant by the Superior Court for the State

25  of California in case No. BA410217-01.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          Defendant also has agreed not to move to withdraw his
 2   guilty plea in this case, and also the parties have agreed at
 3   the sole discretion and sole request of the government to allow
 4   funds previously seized by the government in connection with
 5   this matter to be applied by the Court to pay restitution that
 6   defendant is required to pay by order of the state court in
 7   case No. BA410217-01, and defendant has agreed to execute
 8   papers as necessary to accomplish this restitution payment.
 9          THE COURT:  Okay.
10          MR. CHILDS:  Also, defendant has agreed to forfeit to
11   the United States, immediately upon entry of the guilty plea,
12   all of his right, title and interest in any property
13   constituting or derived from any proceeds defendant obtained
14   directly or indirectly as the result of narcotics trafficking
15   that are subject to forfeiture, including, but not limited to,
16   all assets listed in Exhibit 2 to the plea agreement.
17          THE COURT:  Okay.  Now, you've listened to this.  He
18   has really parroted a bunch of what's in this plea agreement.
19   In fact, it's all in this plea agreement.
20      Is that your understanding of the agreement, sir?
21          THE DEFENDANT:  Yes, Your Honor.
22          THE COURT:  Okay.
23          MS. AZARI:  Your Honor, if I may interject.  Can I
24   confer with counsel a little bit about one --
25          THE COURT:  Certainly.  Certainly.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1 | *(Plaintiff and defense counsel conferred privately.)* |
| 2 | MR. CHILDS:  Your Honor, there's another salient point |
| 3 | that I'd like to point out to the Court. |
| 4 | THE COURT:  Go ahead, sure. |
| 5 | MR. CHILDS:  It's on -- |
| 6 | MS. AZARI:  Six. |
| 7 | MR. CHILDS:  Okay.  Well, defendant's also agreed, |
| 8 | pursuant to paragraph 2, subparagraph P, to agree that his |
| 9 | entering into this plea agreement is not the result of coercion |
| 10 | or pressure from anyone, including co-conspirators or family |
| 11 | members.  In connection with that, on page 6, in subparagraph |
| 12 | F, the government has agreed, except for criminal tax |
| 13 | violations, including conspiracy to commit such violations |
| 14 | chargeable under 18, United States Code, Section 371, not to |
| 15 | criminally prosecute Rosalinda Kramer, Stuart Kramer, Anahi |
| 16 | Gutierrez, and Cristhiane Beatie, B-e-a-t-i-e, for violations |
| 17 | of federal drug trafficking and money laundering laws arising |
| 18 | out of their conducting financial transactions or sales of |
| 19 | marijuana which occurred in Los Angeles County on behalf of |
| 20 | defendant and as part of the operation of defendant's marijuana |
| 21 | shops between the years 2009 and 2013.  However, the defendant |
| 22 | has acknowledged his understanding that the United States |
| 23 | Attorney's Office for the Central District of California is |
| 24 | free to criminally prosecute Rosalinda Kramer, Stuart Kramer, |
| 25 | Anahi Gutierrez, or Cristhiane Beatie, for any other unlawful |

1    past conduct or any unlawful conduct that occurred after

2    December 31, 2013.

3         THE COURT:  Okay.  And that's your understanding of

4    the agreement also; is that correct?

5         THE DEFENDANT:  Yes, Your Honor.

6         THE COURT:  Okay.  Now, I want to make sure that you

7    also understand that in this agreement you have waived any

8    appeal of this conviction, and you have waived the appeal of

9    the sentence as long as the sentence was for no more than 16

10   years.  And there are other waivers that you have in here.  And

11   the government also has indicated that it waives its right to

12   appeal the sentence as long as it's at least 16 years.

13        Is that your understanding, Counsel?  Counsel?

14        MS. AZARI:  Yes.

15        MR. CHILDS:  Yes, Your Honor.

16        THE COURT:  Okay.  And that's your understanding, too,

17   sir; is that correct?

18        THE DEFENDANT:  Yes, Your Honor.

19        THE COURT:  Okay.  Now, there's 20 pages of this plea

20   agreement, plus the exhibits.  I'm not going to go through the

21   entire agreement.  We've gone through the salient points here

22   and made sure that you understood them.  You've said you read

23   it, understood it, had the advice of counsel, you were pleased

24   with her advice, and you want to enter into this today, so let

25   me ask you this.  Has anybody made any promises to you, or

1    threats or assurances, to get you to plead guilty today that

2    are not in this plea agreement or that we have not talked about

3    here in court?

4            THE DEFENDANT:  I was told that I would have a

5    opportunity to get my -- to get the discovery and have returned

6    the documents and the files that were seized.

7            THE COURT:  Okay.

8            THE DEFENDANT:  I don't know if that --

9            THE COURT:  Is that -- does counsel agree with that?

10           MR. CHILDS:  That's not in the plea agreement.

11           THE COURT:  No, it's not in the plea agreement, that's

12   correct.  That's why I asked him, anything over and above

13   what's in the plea agreement that's been agreed to to get him

14   to plea today.

15           MR. CHILDS:  No, there's no other agreement except the

16   agreements contained in the four corners of the plea agreement.

17           THE COURT:  Okay.  So what he has represented here in

18   court would not be part of the plea agreement, and that's not

19   something the government would be bound to?

20           MR. CHILDS:  No, that's -- as far as I understand, no.

21           THE COURT:  Okay.

22     Okay.  So understanding that that would not be part of the

23   agreement, is there anything else that the government has said

24   that would get you to enter into a plea, or anybody, anybody

25   that has promised you anything, or threatened you, or given you

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1    any assurances?  Anything other than that?

 2              THE DEFENDANT:  No, Your Honor.

 3              THE COURT:  Okay.  Then based on that understanding

 4    that would not be part of the agreement, do you wish to enter

 5    into the plea agreement at this time?

 6              THE DEFENDANT:  I -- I do, Your Honor, but I -- it

 7    would be nice if I could -- maybe I misunderstood that.  I know

 8    there's a difference between the law as it's written and the

 9    law as it's practiced.

10              THE COURT:  I understand, and I'll be happy to hold

11    this up for a few minutes so you and your attorney and the

12    government could talk about it, but what I have to know is,

13    what is everybody agreeing to today, and understanding that

14    this would be the agreement, and nothing on the outside, just

15    this, and this would be binding.  If you would like some time

16    to talk with them, I'm more than happy to.  Would you like some

17    more time?

18              THE DEFENDANT:  That's fine.  I certainly don't want

19    to undo the hard work that Mr. Childs and my counsel have done,

20    but I would --

21              THE COURT:  So you're hoping for other things, but

22    they're not necessarily part of this agreement; is that what

23    you're saying?

24              THE DEFENDANT:  I guess as I read the law I'm entitled

25    to them, and I haven't got them.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1              THE COURT:  Okay.  But my question is, are you
2     pleading because you will be getting these things?  If that's
3     affecting your decision today, then that would have to be part
4     of the plea agreement.
5          Counsel?
6              MS. AZARI:  May I have one moment?
7              THE COURT:  Sure.
8          (Defense counsel and defendant conferred privately.)
9              THE COURT:  Okay.  So let me get back to you, talk to
10    you a little bit.
11         You've mentioned other areas that are not part of the plea
12    agreement and you feel that you have a right to.  I just want
13    to make sure you understand, if we went ahead with the plea
14    agreement today, that would not be part of the plea agreement.
15    Doesn't stop you from arguing that later, and the government
16    may agree with you or they may not, but that would be outside
17    the plea agreement.  That's all I'm saying.  You understand
18    that?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  With that in mind, do you still wish to
21    enter into the plea agreement, understanding that you can make
22    these arguments later, but it's not part of this plea
23    agreement?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  And is that what you want to do, enter
```

```
 1    into the plea agreement today?

 2              THE DEFENDANT:  Yes, Your Honor.

 3              THE COURT:  And before we go any further, are there

 4    any questions that you have of the Court before I take your

 5    plea?

 6         (Defense counsel and defendant conferred privately.)

 7              THE DEFENDANT:  No more questions, Your Honor.

 8              THE COURT:  Then are you pleading today freely and

 9    voluntarily and accepting the agreement as stated today freely

10    and voluntarily because you feel it's in your best interest

11    today?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  Okay.  Then as to -- get the wording here.

14    As to violation of Title 21 of the United States Code, Section

15    846, 841(a)(1) and 841(b)(1)(A), as alleged in the information,

16    the one-count information, how do you now plead, guilty or not

17    guilty?

18              THE DEFENDANT:  Guilty, Your Honor.

19              THE COURT:  Counsel, do you concur in that plea?

20              MS. AZARI:  Yes, I do.

21              THE COURT:  And do you stipulate there's a sufficient

22    factual basis to allow me to accept the plea?

23              MS. AZARI:  Yes.

24              THE COURT:  The Court then would find a knowing,

25    intelligent, free and voluntarily waiver of his rights by the
```

1  defendant, would find that he has had explained to him the

2  consequences and possible consequences of the plea.  The Court

3  would find a factual basis based on the stipulation of counsel

4  and also to the acceptance and the admission of the defendant

5  to the facts stated here in court and in the plea agreement.

6  The Court would incorporate the plea agreement as part of the

7  process and would accept the plea of guilty.

8          We'll set this down for sentencing.  We're going to ask

9  for an expedited report on this.

10              THE CLERK:  Okay.  So then sentencing date would be

11  Monday, January 11th, at 1:30 p.m.

12              THE COURT:  January 11th at 1:30 p.m.

13          And Counsel, we'll do everything we can to get it for you

14  by that time.

15              MS. AZARI:  Your Honor, could we -- that's a date when

16  I'm at a conference out of town.

17              THE COURT:  Okay.

18              MS. AZARI:  Could we choose another date?

19              THE COURT:  Let me see what else we can do here for

20  you.

21              THE CLERK:  We could go with January 25th.

22              MS. AZARI:  Yes.

23              THE COURT:  Okay.

24              MR. CHILDS:  Fine with the government, Your Honor.

25              THE COURT:  I'm sorry?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. CHILDS:  The government's agreeable on that date,

 2    Your Honor.

 3              THE COURT:  Okay.  January 25th.

 4         At 1:30?

 5              THE CLERK:  Yes.

 6              THE COURT:  At 1:30.  We'll see you back in at that

 7    time.

 8              MS. AZARI:  Your Honor, may I just make a brief record

 9    regarding an issue that Mr. Kramer raised --

10              THE COURT:  Yes.

11              MS. AZARI:  -- just for the record?

12         There were several discovery requests during this process

13    made to the government.  I'm satisfied that the government

14    turned over what existed, was in their possession that I asked

15    for.  This discovery was subject to protective order, so I

16    could not release the documents into Mr. Kramer's possession,

17    who was in custody at Men's Central Jail, but I've thoroughly

18    gone over all of those documents, all of that information with

19    my client.  So just want to make a record of that.

20              THE COURT:  Okay.  I appreciate that, Counsel, and I

21    know that your client is concerned about certain issues, and I

22    think he understands that we're not foreclosing those issues;

23    it's just that they're not part of this plea agreement.

24              MS. AZARI:  That's what I explained to him.

25         Thank you.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    THE COURT:  Anything else?

2    MR. CHILDS:  Not from the government.

3  Thank you, Your Honor.

4    THE COURT:  Okay.  That'll be the order.

5

6    *(Proceedings concluded at 2:30 p.m.)*

7

8    *--oOo--*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*CERTIFICATE*

    *I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date:  December 16, 2015*

                */S/ SANDRA MACNEIL*

                *Sandra MacNeil, CSR No. 9013*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA