

THOMAS P. SLEISENGER
Law Offices of Thomas P. Sleisenger
1901 Avenue of the Stars, Suite 615
Los Angeles, California 90067
California State Bar #100254
Telephone: (310) 300-1314
Facsimile: (310) 861-0152
email: sleisengerlaw@yahoo.com

Counsel for Petitioner
Anahi Gutierrez

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 15-606-RGK |
| Plaintiff, | |
| vs. | **PETITION FOR ANCILLARY HEARING** |
| ANDREW KRAMER, | |
| Defendant. | |
| ANAHI GUTIERREZ, | |
| Petitioner. | |

**TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEY'S OF RECORD:**

Petitioner Anahi Gutierrez (hereinafter "petitioner") hereby submits her third party petition pursuant to Fed. R. Crim. P. 32.2 and 21 U.S.C. § 853(n) in this criminal forfeiture action, requesting a hearing and determination of the lack of forfeitability of her ownership interest and/or constructive trust in the property described as follows:

1.     All right, title and interest in the real property located at 11552 Cantlay Street, North Hollywood, California.

2.     Petitioner also claims an interest in the property as part of a

1   constructive trust based upon amounts invested in 11552 Cantlay Street, North
2   Hollywood, California, which approximate $100,000, as will be shown in any
3   evidentiary hearing in this case. A constructive trust is a "legal" interest under 21
4   U.S.C. § 853(n)(6)(A). See United States v. Nava, 404 F.3d 1119, 1130-31
5   (9th Cir. 2005); see also United States v. $4,224,958.57 (Boylan), 392 F.3d 1002
6   (9th Cir. 2004); United States v. Pegg, 782 F.2d 1498, 1500 (9th Cir.1986);
7   California Civil Code §§ 2223-2224.

8       On January 29, 2016, this Court issued a Preliminary Order of Forfeiture
9   with respect to, *inter alia*, all right, title, and interest of defendant Andrew Kramer,
10  in the real property located at 11552 Cantlay Street, North Hollywood, California,
11  more particularly described as follows: Lot 26 of tract number 26674, in the City
12  of Los Angeles, County of Los Angeles, State of California, as per map recorded
13  in Book 760, pages 81 to 84 of maps, in the Office of the County Recorder of said
14  county.

15      By letter dated February 16, 2016, the government notified petitioner of the
16  aforementioned Preliminary Order of Forfeiture. Pursuant to stipulation entered
17  into by and between the government and petitioner, the Court granted petitioner an
18  extension for filing the instant Petition to the date of March 31, 2016.

19      Petitioner has resided at 11552 Cantlay Street, North Hollywood, California,
20  along with other members of her family, since at least May 10, 2010. Since that
21  time she has made improvements to the property in an amount approximating
22  $100,000. Petitioner has before and after photographs which show the
23  improvements to the property which will be provided to the government during the
24  discovery process. Petitioner is also seeking to obtain receipts from contractors,
25  and subcontractors, which reflect expenses incurred by petitioner. Petitioner seeks
26  to use the subpoena power of this Court to obtain records from these vendors as
27  part of the discovery process.

28      On or about February 25, 2010, U.S. Bank National Association, as trustee

2

1    for J.P. Morgan Mortgage Acquisition Trust 2006-WM3, asset backed pass-

2    through certificates, series 2006-WMC3 conveyed by grant deed, 11552 Cantlay

3    Street, North Hollywood, California to Andrew Kramer, as a single man. (Exhibit

4    1). On or about May 10, 2010, Andrew Kramer, a single man, conveyed by grant

5    deed, 11552 Cantlay Street, North Hollywood, California, to petitioner, as an

6    unmarried woman. (Exhibit 2). On or about the same date, petitioner, as an

7    unmarried woman, conveyed by grant deed, 11552 Cantlay Street, North

8    Hollywood, California, to Private Fund Management, Inc., a Nevada Corporation.

9    (Exhibit 3). Petitioner has never been charged with any criminal conduct relating

10    to the underlying indictment in this case.

11       Petitioner has a legal right, title, or interest in the property, and such right,

12    title, or interest renders the Preliminary Order of Forfeiture invalid in whole or in

13    part because the right, title, or interest was vested in petitioner rather than

14    defendant Kramer or was superior to any right, title, or interest of defendant

15    Kramer at the time of the commission of acts which give rise to forfeiture of the

16    property. Petitioner is also a bona fide purchaser for value of the right, title and

17    interest in the real property and was at the time of the purchase of the property

18    reasonably without cause to believe that the property was subject to forfeiture

19    under 18 U.S.C. § 982. 21 U.S.C. § 853(n)(6)(A), (B).

20       Petitioner requests an evidentiary hearing on her petition as provided in 21

21    U.S.C. § 853(n)(2).

22       Paragraph 3(f) of defendant Kramer's plea agreement specifically prohibits

23    the government from "criminally prosecuting" petitioner and others "for violations

24    of federal drug trafficking and money laundering laws arising out of their

25    conducting financial transactions or sales or marijuana . . . as part of the operation

26    of defendant Kramer's marijuana shops between the years 2009 and 2013." In

27    One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693 (1965), the U.S.

28    Supreme Court held that, for purposes of applying the Fourth Amendment

1  prohibition against unreasonable searches and seizures, "criminal prosecutions"

2  include criminal proceedings against individuals and forfeiture proceedings

3  against the individuals' property.  See Id. at 696-702.  Although "technically a civil

4  proceeding," a forfeiture action "is in substance and effect a criminal one."  See Id.

5  at 697; see also Boyd v. United States, 116 U.S. 616, 633-634 (1886) ("[S]uits for

6  penalties and forfeitures, incurred by the commission of offenses against the law,

7  are of this *quasi* criminal nature, . . . they are within the reason of criminal

8  proceedings for all the purposes of the Fourth Amendment of the Constitution

9  . . . .").  (emphasis in the original).  The reasoning of Plymouth and Boyd clearly

10  apply to the instant forfeiture proceeding.

11        Under the Rohrabacher-Farr federal spending amendment, Pub. Law No.

12  114-113, Div. B, Title 5, 542, and the Anti-Deficiency Act, 31 U.S.C. §1341, the

13  United States Department of Justice is prohibited from using federal funds to

14  enforce the Controlled Substances Act against individuals engaging in the use,

15  distribution, possession, or cultivation of medical marijuana pursuant to state law.

16  See, e.g., United States v. Marin Alliance for Medical Marijuana, No. C 98-00086

17  CRB, — F. Supp.3d — (2015), 2015 WL 6123062 (N.D. Cal. 10/19/2015).

18  (Exhibit 4).  Considering the DOJ's own "enforcement priorities" stated in the

19  August 29, 2013 DOJ Memorandum from Deputy Attorney General Cole to All

20  U.S. Attorneys, none of the activities described in this forfeiture action and in

21  defendant Kramer's plea agreement justify the government's use of its "limited

22  investigative and prosecutorial resources" to seek forfeiture of 11552 Cantlay

23  Street, North Hollywood, California.

24        Petitioner declares under penalty of perjury under the law of the United

25  States that the foregoing is true and correct.

26  Dated: March 28, 2016

          ANAHI GUTIERREZ
27                                              Petitioner

28

                                   4

1         Attorney Thomas P. Sleisenger is duly authorized to make this petition for

2    relief.

3    Dated: March 30, 2016

                                          THOMAS P. SLEISENGER

4                                              Attorney for Petitioner
                                          ANAHI GUTIERREZ

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit One



This page is part of your document - DO NOT DISCARD



# 20100327779



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/10/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 1,699.60 |
| OTHER: | 0.00 |
| PAID: | 1,724.60 |



**L E A D S H E E T**



201003100140012

00002048455


002578987

**SEQ:**
**11**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T01

6534013

007

RECORDED AT THE REQUEST
OF CHICAGO TITLE COMPANY

· RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Andrew Kramer
11552 Cantlay Street
Los Angeles, California 91605



03/10/2010

*20100327779*

———— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

Assessor's Parcel No. 2316-029-008

# GRANT DEED

The undersigned grantor(s) declare(s):
Documentary transfer tax is $ 333.25 County 1365.75 City
(X) computed on full value of the interest of property conveyed, or
( ) computed on the full value less the value of liens or encumbrances
    remaining thereon at the time of sale.
(X) City of: Los Angeles, and

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST
2006-WMC3, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WMC3

**hereby GRANTS(S) TO**

Andrew Kramer, a single

**the following described real property in the** City of Los Angeles,
County of Los Angeles, **State of California:**

LOT 26 OF TRACT NO. 26674, IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 760, PAGE(S) 81 TO 84 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Also Known as: 11552 Cantlay Street, Los Angeles, California, 91605

SUBJECT TO:

1.) General and Special County and City (if any) Taxes for the current fiscal year,
not due or delinquent, including any special levies, payments for which are
included therein and collected therewith.

2.) Lien of Supplemental Taxs, if any, assessed pursuant to the provisions of
Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the
State of California.

3.) Covenants, Conditions and Restrictions, reservations easements for public
utilities, districts, water companies, alleys and streets, rights and rights of
way of record, if any; also exception of oil, gas, minerals and hydrocarbons,
and/or lease, without the right of surface entry.

GRANT DEED CONTINUED ON NEXT PAGE
Mail Tax Statement to:   SAME AS ABOVE or Address Noted Below

Title Order No. 985098293-S3       Escrow or Loan No. 46956-mm
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

008

3

CONTINUATION OF GRANT DEED

Escrow No.: 46956-mm

**Dated: February 25, 2010**

**STATE OF CALIFORNIA** SEE ATTACHMENT

**COUNTY OF San Diego          SS**
On _____ before me,

_____,
a notary public, personally appeared

_____

who proved to me on the basis of
satisfactory evidence to be the
person(s) whose name(s) is/are
subscribed to the within instrument and
acknowledged to me that he/she/they
executed the same in his/her/their
authorized capacity(ies), and that by
his/her/their signature(s) on the
instrument the person(s), or the entity
upon which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY
under the laws of the State of
California that the foregoing paragraph
is true and correct.

**WITNESS my hand and official seal.**

Signature _____
    SEE ATTACHMENT

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-
WMC3, ASSET BACKED PASS-THROUGH CERTIFICATES,
SERIES 2006-WMC3

By: _____        Tony Huynh
                                Asst. Vice President

By Chase Home Finance, LLC
As Attorney-In-Fact

(This area for official notarial seal)

009

4

## ACKNOWLEDGMENT

State of California
County of _____ San Diego _____ )

On __02/26/2010__ before me, __Christina Odell, Notary Public__ _____
                                          (insert name and title of the officer)
                          Tony Huynh
                          Asst. Vice President
personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

CHRISTINA ODELL
Commission # 1819976
Notary Public - California
San Diego County
My Comm. Expires Oct 27, 2012

010

# Exhibit Two

011



**Los Angeles County Registrar-Recorder/County Clerk**

Dean C. Logan
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RER 2014

**LAvote.net**          P.O. Box 1130, Norwalk, California 90651-0486          **LArecorder.net**

012



This page is part of your document - **DO NOT DISCARD**



# 20100897937



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/30/10 AT 08:00AM**

| FEES: | 19.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 19.00 |



**L E A D S H E E T**



201006300110015

**00002591358**



002758214

**SEQ:**
**06**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T79

013

RECORDING REQUESTED BY:

**The Document Center**
Glendale, CA
When Recorded Mail Document
and Tax Statement To:

**Anahi E. Gutierrez**
**11552 Cantlay St.**
**North Hollywood, CA. 91605**

06/30/2010

*20100897937*

Escrow No.   **6202-C**
Title Order No.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **2316-029-008**

# GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $ _____ **None** _____   City tax $ _____ **None** _____
    [   ] computed on full value of property conveyed, or
    [   ] computed on full value less value of liens or encumbrances remaining at time of sale,
    [   ] Unincorporated area       City of _____

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Andrew Kramer, a single man**

hereby GRANT(S) to
**Anahi E. Gutierrez, an unmarried woman**

the following described real property in the City of _____ **North Hollywood (Los Angeles)** _____
County of _____ **Los Angeles** _____   State of _____ **California** _____ :
Lot 26 of Tract No. 26674, in the City of Los Angeles, County of Los Angeles, State of
California, as per map recorded in Book 760, Pages 81 to 84 of Maps, in the office of the
County Recorder of said County.

Commonly Known As:  **11552 Cantlay St., North Hollywood, CA. 91605**

"THIS IS A BONAFIDE GIFT AND THE GRANTOR RECEIVED NOTHING IN RETURN, R&T 11911."

DATED: **May 10, 2010**

_____
Andrew Kramer

STATE OF   **California**
COUNTY OF   **Los Angeles**
ON  May 26 Th, 2010  before me,
Roohollah Sadighim , notary public,
personally appeared
**Andrew Kramer**
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

ROOHOLLAH SADIGHIM
Commission # 1823789
Notary Public - California
Los Angeles County
My Comm. Expires Nov 21, 2012

RHDC6

GRANT DEED

014

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

SEP 2 5 2014

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

015

# Exhibit Three



**This page is part of your document - DO NOT DISCARD**



# 20100897938



**Pages:**
**0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/30/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 49.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 49.00 |



**L E A D S H E E T**



201006300110015

00002591359



002758214

**SEQ:**
**07**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

T79

017

RECORDING REQUESTED BY:

# The Document Center, Inc.
Glendale, CA
When Recorded Mail Document
and Tax Statement To:

**Private Funding Management, Inc.**
**8464 Santa Monica Blvd..**
**West Hollywood, CA. 90069**

Escrow No.   **6202-C**
Title Order No.

06/30/2010

*20100897938*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST AND ASSIGNMENT OF RENTS (ACCELERATION CLAUSE)

BY THIS DEED OF TRUST, made this       **10th**  day of            **May**    , 2010, between
**Anahi E. Gutierrez, an unmarried woman**

herein called Trustor, whose address is
**11552 Cantlay St., North Hollywood, CA. 91605**
(number and street)                         (city)                    (state)              (zip)
and FOOTHILL CONVEYANCE CORPORATION, a California corporation, herein called trustee, and
**Private Funding Management, Inc., a Nevada Corporation**

hereinafter called  Beneficiary, Trustor grants, transfers, and assigns to Trustee, in trust, with power of sale, that
property in     **Los Angeles**                County,      **California**      , described as:
**Lot 26 of Tract No. 26674, in the City of Los Angeles, County of Los Angeles, State of**
**California, as per map recorded in Book 760, Pages 81 to 84 of Maps, in the office of the**
**County Recorder of said County.**

Assessor's Parcel No.:    **2316-029-008**
Commonly Known As:    **11552 Cantlay St., North Hollywood, CA. 91605**

If the Trustor shall convey or alienate said property or any part thereof or any interest therein or shall be divested of his title in any manner or way,
whether voluntary or involuntary any indebtedness or obligation secured hereby, irrespective of the maturity date expressed in any note evidencing the
same, at the option of the holder hereof and without demand or notice shall become due and payable immediately.
Trustor also assigns to Beneficiary all rents, issues and profits of said realty reserving the right to collect and use the same except during continuance of
default hereunder and during continuance of such default authorizing Beneficiary to collect and enforce the same by any lawful means in the name of any
party hereto.
For purpose of securing:
(1)Payment of the indebtedness evidenced by one promissory note in the principal sum of **$400,000.00**
of even date herewith, payable to Beneficiary, and any extensions or renewals thereof; (2) the payment of any money that may be advanced by the
Beneficiary to Trustor, of his successors, with interest thereon, evidenced by additional notes (indicating they are so secured) or by endorsement on the
original note, executed by Trustor or his successor; (3) performance of each agreement of Trustor incorporated by reference or contained herein.
On June 14, 1985, identical fictitious Deeds of Trust were recorded in the offices of the County Recorders of the Counties of State of

CK TD          page 1 of 4

California, the first page thereof appearing as the following instrument numbers in the records of the respective County Recorder as follows:                                                                      *3*

| COUNTY | Instrument Number | COUNTY | Instrument Number |
|--------|-------------------|--------|-------------------|
| Los Angeles | 85–668576 | Riverside | 85-128546 |
| San Bernardino | 85-143016 | Ventura | 85-062101 |
| Orange | 85-216204 | Imperial | 125 |
| San Diego* | 85-210816 | | |
| *June 13, 1985 | | | |

The provisions contained in Section A, including paragraphs 1 through 5, and the provisions contained in Section B, including paragraphs 1 through 9 of said fictitious Deeds of Trust are incorporated herein as fully as though set forth at length and in full herein.

The undersigned Trustor requests that a copy of any notice of default and any notice of any sale hereunder be mailed to Trustor at the address hereinabove set forth, being the address designated for the purpose of receiving such notice.

Anahi E. Gutierrez

STATE OF   **California**
COUNTY OF   **Los Angeles**
ON   MaY   26Th ,   2010                         before me,
Roohollah Sadighim                         , notary public,
personally appeared
**Anahi E. Gutierrez**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

RUOHOLLAH SADIGHIM
Commission # 1823789
Notary Public - California
Los Angeles County
My Comm. Expires Nov 21, 2012

CK TD          page 2 of 4

019

**DO NOT RECORD** -- Provisions incorporated from Recorded Fictitious Deed of Trust            **4**

**A. TO PROTECT THE SECURITY HEREOF, TRUSTOR AGREES:**
(1) To keep said property in good condition and repair, preserve thereon the buildings, complete construction begun, restore damage or destruction, and pay the cost thereof; to commit or permit no waste, no violation of laws or covenants or conditions relating to use, alterations or improvements; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which the character and use of said property and the estate or interest in said property secured by this Deed of Trust may require to preserve this security.
(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or Beneficiary may release all or any part thereof to Trustor. Such application or release shall not cure or waive any default or Notice of Default hereunder or invalidate any act done pursuant to such notice.
(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.
Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof. Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.
(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the legal rate of interest, and to pay for any statement provided for by law regarding the obligations secured hereby in the amount demanded by Beneficiary, not exceeding the maximum amount permitted by law at the time of the request thereof.

**B. IT IS MUTUALLY AGREED THAT:**
(1) Any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned to Beneficiary, who may apply or release such moneys received by him in the same manner and with the same effect as provided for disposition of proceeds of fire or other insurance.
(2) By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require payment when due of all other sums so secured or to declare default for failure so to pay.
(3) At any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map thereof; join in granting any easement thereon; join in any agreement extending or subordination the lien or charge hereof.
(4) Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."
(5) Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby, immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause said property to be sold, which notice Trustee shall cause to be duly filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby. Trustee shall give Notice of Sale as then required by law, and without demand on Trustor, at least three months having elapsed after recordation of such Notice of Default, shall sell said property at the time and place of sale fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.

Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.
After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the legal rate; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.
(6) This Deed applies to, insures to the benefit of, and binds all parties hereto, their legal representatives and successors in interest. The term Beneficiary shall include any future owner and holder, including pledgees of the note secured hereby. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
(7) Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.
(8) The Trusts created hereby are irrevocable by Trustor.
(9) Beneficiary may substitute a successor Trustee from time to time by recording in the Office of the Recorder or Recorders of the county where the property is located an instrument stating the election by the Beneficiary to make such substitution, which instrument shall identify the Deed of Trust by recording reference, and by the name of the original Trustor, Trustee and Beneficiary, and shall set forth the name and address of the new Trustee, and which instrument shall be signed by the Beneficiary and duly acknowledged.

**Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.**
**Both must be delivered to the Trustee for cancellation before reconveyance will be made.**            _____Initial

**DO NOT RECORD**

*5*

# REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid

Dated:_____

To: **FOOTHILL CONVEYANCE CORPORATION**, Trustee:

The undersigned is the legal owner of all indebtedness secured by this Deed of Trust. All sums secured by said Deed of Trust have been paid, and you are requested, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

Mail Reconveyance to:

By:_____

By:_____

021

Exhibit Four

KeyCite Blue Flag – Appeal Notification

**Appeal Filed by** USA v. MARIN ALLIANCE FOR MEDICAL MAR., ET AL, 9th Cir., December 21, 2015

2015 WL 6123062
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

United States of America, Plaintiff,
v.
Marin Alliance for Medical Marijuana,
and Lynette Shaw, Defendants.

No. C 98-00086 CRB
|
Signed 10/19/2015

### Synopsis

**Background:** Medical marijuana dispensary brought action, seeking to dissolve a permanent injunction prohibiting it from dispensing marijuana.

**[Holding:]** The District Court, Charles R. Breyer, J., held that Department of Justice was precluded from enforcing permanent injunction prohibiting medical marijuana dispensary from distributing marijuana to extent dispensary complied with California law.

Motion denied.

West Headnotes (6)

**[1]** **Injunction**
⬦ Injunctions to enforce laws and regulations in general

When a court of equity exercises its discretion in determining whether an injunction should be means of enforcing a statute, it may not consider the advantages and disadvantages of nonenforcement of the statute, but only the advantages and disadvantages of employing the extraordinary remedy of injunction over the other available methods of enforcement.

Cases that cite this headnote

**[2]** **Injunction**
⬦ Injunctions to enforce laws and regulations in general

In determining whether an injunction should be the means of enforcing a statute instead of another permissible means of enforcement, to the extent a district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms.

Cases that cite this headnote

**[3]** **Injunction**
⬦ Grounds in general; multiple factors

At the initial stage, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief, by demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Cases that cite this headnote

**[4]** **Injunction**
⬦ Specificity, vagueness, overbreadth, and narrowly-tailored relief

**Injunction**
⬦ Scope and duration of relief

Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion.

Cases that cite this headnote

**[5]** **Injunction**
⬦ Grounds in general

023

**Injunction**
↪ Grounds or cause in general

**Injunction**
↪ Evidence and affidavits

Typically, a party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction; that requirement presumes that the moving party could have appealed the grant of the injunction but chose not to do so, and thus that a subsequent challenge to the injunctive relief must rest on grounds that could not have been raised before.

Cases that cite this headnote

**[6]** **Injunction**
↪ Hospitals, pharmacies, and health care professionals

Provision of Appropriations Act prohibiting Department of Justice (DOJ) from using funds to prevent states from implementing their own state laws that authorize the use, distribution, possession, or cultivation of medical marijuana precluded Department of Justice (DOJ) from enforcing permanent inunction, prohibiting medical marijuana dispensary from distributing marijuana, to the extent that the dispensary complied with California law exempting from state criminal prosecution physicians, patients, and primary caregivers who possess or cultivate marijuana for medicinal purpose with a physician's recommendation. Pub. L. 114–53, § 103, 129 Stat. 502 (2015); West's Ann.Cal.Health & Safety Code § 11362.5.

1 Cases that cite this headnote

**Attorneys and Law Firms**

Kathryn L. Wyer, Washington, DC, for Plaintiff

Greg Anton, Lagunitas, CA, for Defendant

**ORDER RE MOTION TO DISSOLVE
PERMANENT INJUNCTION**

CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE

**\*1** The Marin Alliance for Medical Marijuana ("MAMM") asks this Court to dissolve a permanent injunction that this Court entered against it in 2002. See Mot. Dissolve Perm. Inj. (dkt. 262). Having reviewed the filings and accompanying papers, the Court DENIES the motion to dissolve the injunction. However, the enforcement of said injunction must be consistent with the new directive of Congress in Section 538 of the Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. 113–235, 128 Stat. 2130 (2014) ("2015 Appropriations Act"),[1] which prohibits the Department of Justice from expending any funds in connection with the enforcement of any law that interferes with California's ability to "implement [its] own State law[ ] that authorize[s] the use, distribution, possession, or cultivation of medical marijuana." See 2015 Appropriations Act § 538. As long as Congress precludes the Department of Justice from expending funds in this manner, the permanent injunction will only be enforced against MAMM insofar as that organization is in violation of California "State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." See id.; Fed. R. Civ. P. 60(b).

**I. BACKGROUND**
As a matter of federal law, marijuana is prohibited as a Schedule I drug under the Controlled Substances Act ("CSA"). 21 U.S.C. § 812(c). But under state law, California's Compassionate Use Act of 1996 exempted from state criminal prosecution physicians, patients, and primary caregivers who possess or cultivate marijuana for medicinal purpose with a physician's recommendation. See Cal. Health and Safety Code Ann. §§ 11362.5 ("Compassionate Use Act"). The Compassionate Use Act was passed in a state-wide November 1996 referendum with the support of 56% of voters. United States v. Cannabis Cultivators Club, 5 F.Supp.2d 1086, 1091 (N.D.Cal.1998) (dkt. 61).

This Court has a lengthy history with this defendant on these issues. In 1998, the Government filed an action seeking declaratory and injunctive relief against MAMM (and five other medical marijuana dispensaries, all of which were deemed related and reassigned to this Court) on the grounds

024

that it was engaged in the distribution of marijuana in violation of the CSA. See 21 U.S.C. §§ 801 et seq. At that time, the City and County of San Francisco and other cities in which the related defendants are located, acting as amici curiae, "urge[d] the Court not to adopt the injunctive relief sought by the federal government because of the adverse consequences an injunction would have on the public health of their citizens." Cannabis Cultivators Club, 5 F.Supp.2d at 1094. But this Court determined that the preliminary injunction "must be granted" on the grounds of there being "a strong likelihood that defendants' conduct violates the Controlled Substances Act, [and thus] the Supremacy Clause of the United States Constitution requires that the Court enjoin further violations of the Act." Cannabis Cultivators Club, 5 F.Supp.2d at 1091, 1105.

*2  [1]   [2] Thereafter, defendants openly violated this Court's preliminary injunction, which prompted the Government to initiate contempt proceedings. In the litigation that ensued, defendants sought to modify the preliminary injunction to exclude distributions of marijuana that were medically necessary, which this Court denied on October 16, 1998. See Order (dkt. 174). The Ninth Circuit reversed this Court in an interlocutory appeal of that decision, United States v. Oakland Cannabis Buyers' Co–Op ("OCBC"), 190 F.3d 1109, 1115 (9th Cir.1999), and in turn were reversed by the Supreme Court, United States v. OCBC, 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). There, the Supreme Court held that there is no medical necessity exception to the CSA's prohibition on the manufacture and distribution of marijuana. OCBC, 532 U.S. at 486, 121 S.Ct. 1711. In so doing, the Supreme Court explained that even when a district court is exercising its equity jurisdiction in the course of fashioning an injunction, its usual discretion to "consider the necessities of the public interest" was "displaced" by the "judgment of Congress, deliberately expressed in legislation." Id. at 496–98, 121 S.Ct. 1711. As applied here, then, the district court may weigh whether an injunction should be the means of enforcing the statute instead of another permissible means of enforcement —"not whether enforcement is preferable to no enforcement at all." Id. at 497–98, 121 S.Ct. 1711. "Consequently, when a court of equity exercises its discretion, it may not consider the advantages and disadvantages of nonenforcement of the statute, but only the advantages and disadvantages of 'employing the extraordinary remedy of injunction' over the other available methods of enforcement." Id. at 498, 121 S.Ct. 1711 (quoting Weinberger v. Romero–Barcelo, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). "To

the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms." Id.

Following the Supreme Court's ruling, the OCBC defendants moved to dissolve their preliminary injunctions in this Court and the Government moved for summary judgment and for a permanent injunction. See Mem. and Order May 3, 2002 (dkt. 229). This Court granted the Government's motion for summary judgment and, after the defendants declined to reassure this Court that they would not resume their distribution activity, entered a permanent injunction on June 10, 2002. See United States v. Cannabis Cultivator's Club, No. 98–85 et al., 2002 WL 1310460 (June 10, 2002); Mem. and Order June 20, 2002 (dkt. 247); Permanent Injunction (dkt. 248).

For the next near-decade, defendant MAMM continued to operate a medical marijuana dispensary out of its same location. The United States Attorney's Office waited until September 2011 to send cease and desist letters to MAMM and other medical marijuana dispensaries in the area. The Mayor of the Town of Fairfax responded with a series of letters to United States Attorney Melinda Haag stating that MAMM was operating as a model business in careful compliance with its local Use Permit in a "cooperative and collaborative relationship" with the community. See Bragman Letter October 2011, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 2. The Mayor explained that Marin has "the highest documented rate of breast cancer in the United States," and Marin's breast cancer patients have especially benefitted from MAMM. Id. He asserted that "elimination of this vital community access facility would effectively prevent [patients] from obtaining medical marijuana," with the "paradoxical impact of increasing public safety concerns for local law enforcement" if the market were pushed underground. Id. According to the letter, the "record clearly establishes that [MAMM] has been in clear and unambiguous compliance with existing state and local laws providing for the medical use of marijuana." Id. To avoid "needlessly increas[ing] the suffering of hundreds of patients who have come to rely on [MAMM] as a safe access point for medical marijuana," he urged Haag "to exercise [her] discretion to reconsider [her] office's evaluation of the legal viability of [MAMM] in light of its documented record of lawful operation and benefit to the community." Id.[2]

O25

**\*3** The U.S. Attorney's Office nevertheless pressed its forfeiture action. In response, MAMM and three other dispensaries filed suit seeking to enjoin the Government from taking any enforcement action against them. See Am. Compl. (dkt. 21), Marin Alliance For Med. Marijuana v. Holder, 866 F.Supp.2d 1142 (N.D.Cal.2011) (No. 11–5349 SBA). The court denied the Plaintiffs' motion for a temporary restraining order, denied their motion for a preliminary injunction, and granted the Government's motion to dismiss. See Marin Alliance, 866 F.Supp.2d 1142 (N.D.Cal.2011); Marin Alliance, No. 11–5349, 2012 WL 2862608 (N.D.Cal.July 11, 2012).

Seven days after the initial complaint in that litigation was filed, the Government initiated a forfeiture action against the property on which MAMM operated. See Compl., United States v. Real Property Located at 6 School Street, Fairfax, California, No. 11–cv–5596 (filed Nov. 18, 2011). The forfeiture complaint cited this Court's permanent injunction and MAMM's violation of the CSA given that it was operating a medical marijuana dispensary. See id. The litigation was resolved in a settlement with the property owner, who agreed no longer to rent the property to MAMM in exchange for the Government's agreement not to seize the property. See Stipulation and Order ¶ 4 (dkt. 18), No. 11–5596.

Then the legal and factual circumstances changed. Section 538 of the 2015 Appropriations Act—which governed Treasury Funds for the fiscal year ending September 30, 2015, and which has now been extended until December 11, 2015, by the 2016 Appropriations Act, Pub. L. 114–53, § 103, 129 Stat. 502 (2015)—states as follows:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of...California [and 32 other states], to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

2015 Appropriations Act § 538. MAMM argues that the injunction is now unenforceable under Section 538 and should therefore be dissolved.

## II. LEGAL STANDARD

**[3]   [4]** Federal Rule of Civil Procedure 60 provides for relief from a judgment or order under the following circumstances, as relevant here:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> ...
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

**[5]** Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is counterbalanced against "the strong public interest in the timeliness and finality of judgments." See Phelps v. Alameida, 569 F.3d 1120, 1135 (9th Cir.2009). Typically, "[a] party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." Alto v. Black, 738 F.3d 1111, 1120 (9th Cir.2013) (quoting Sharp v. Weston, 233 F.3d 1166, 1170 (9th Cir.2000)). "That requirement presumes that the moving party could have appealed the grant of the injunction but chose not to do so, and thus that a subsequent challenge to the injunctive relief must rest on grounds that could not have been raised before." Id. (citing Transgo, Inc. v. Ajac Transmission Parts Corp., 911 F.2d 363, 365 (9th Cir.1990)). In order to meet their burden under Rule 60(b), MAMM would have to establish that Section 538 represents a significant change in the law that "renders continued enforcement [of the injunction] detrimental to the public interest." Horne v. Flores, 557 U.S. 433, 447, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (as cited and characterized by the Government's supplemental brief (dkt. 272) at 12).[3]

## III. DISCUSSION

**\*4   [6]** The plain reading of the text of Section 538 forbids the Department of Justice from enforcing this injunction against MAMM to the extent that MAMM operates in compliance with California law. Although the parties argued at length whether equitable concerns—namely the harmful effects engendered by MAMM's closure and the demonstrable lack of harm that resulted from the 14 years in

026

United States of America v. Marin Alliance for Medical Marijuana, --- F.Supp.3d ---- (2015)

which it operated—support the dissolution or modification of the injunction, these arguments can be dismissed out of hand. MAMM's approach stems from Rule 60(b)(5)'s provision that the court may grant relief from a final judgment when "applying it prospectively is no longer equitable." See Fed. R. Civ. P. 60(b)(5). But this Court continues to be bound by OCBC's prohibition on conducting public policy balancing in determining whether to enjoin behavior that violates the CSA. See OCBC, 532 U.S. at 496–98, 121 S.Ct. 1711. "To the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms." Id. at 498, 121 S.Ct. 1711.

In other words, this Court is not in a position to "override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." See id. at 497, 121 S.Ct. 1711. On the contrary: This Court's only task is to interpret and apply Congress's policy choices, as articulated in its legislation. And in this instance, Congress dictated in Section 538 that it intended to prohibit the Department of Justice from expending any funds in connection with the enforcement of any law that interferes with California's ability to "implement [its] own State law[ ] that authorize[s] the use, distribution, possession, or cultivation of medical marijuana." 2015 Appropriations Act § 538. The CSA remains in place, and this Court intends to enforce it to the full extent that Congress has allowed in Section 538, that is, with regard to any medical marijuana not in full compliance with "State law [ ] that authorize[s] the use, distribution, possession, or cultivation of medical marijuana." Id.

The Government's contrary reading so tortures the plain meaning of the statute that it must be quoted to ensure credible articulation. Specifically, the Government contends that Section 538 proscribes

> "the use of appropriated funds to 'prevent' states from 'implementing their own' medical marijuana laws. Such prohibited uses could include, for example, federal actions that interfered with a state's promulgation of regulations implementing its statutory provisions, or with its establishment of a state licensing scheme. However, such uses do not include CSA enforcement actions against individuals or private

businesses because such actions do not prevent a State from implementing its own laws....[T]here is no evidence in the record that California has been impeded in any way in implementing its own State laws during the thirteen years the permanent injunction at issue has been in effect."

Gov't Supp. Brief (dkt. 272) at 6 & n.2. Where to start? An initial matter, perhaps, is the contradiction inherent in the Government's assertion that enjoining any one medical marijuana dispensary—here, MAMM—does not impede California's implementation of its medical marijuana laws. The Government appears to mean that, in the grand scheme of things, shutting down any given dispensary may be presumed to have such a minimal effect on California's medical marijuana regime that it does not "prevent" California from "implementing" its State law. But if anything, the Government's reliance on the operation of other medical marijuana dispensaries to justify enjoining this dispensary is an a fortiori reason why the injunction is inappropriate in its present form.

Moreover, this drop-in-the-bucket argument is at odds with fundamental notions of the rule of law. It has never been a legal principle than an otherwise impermissible government intrusion can be countenanced because any one defendant is a small piece of the legal landscape. Section 538 either allows the DOJ to shut down medical marijuana dispensaries for violating the CSA, or it does not. It contains no limitation that requires a State to implement its medical marijuana laws in one way or not another—via a centralized state dispensary, for example, or through highly regulated local private dispensaries—before Section 538's prohibition is triggered. Rather, Section 538 takes as a given that States implement their medical marijuana laws in the ways they see fit. California has chosen its way: allowing private dispensaries to operate under strict state and local regulation. California's Compassionate Use Act states that its purpose is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician..." Cal. Health & Safety Code § 11362.5(A). In the years following the passage of the Compassionate Use Act, the California Legislature enacted extensive legislation implementing and regulating the medical marijuana regime. The legislature established a detailed process through which patients receive permits from county health departments. See Cal. Health & Safety

027

Code Ann. §§ 11362.7–11362.83 (West 2015). California law specifies that medical marijuana dispensaries must be located outside a 600-foot radius of any school and empowers local authorities to adopt additional restrictions. See id. at § 11362.768. It also requires the State Attorney General to "develop and adopt appropriate guidelines to ensure the security and nondiversion of marijuana grown for medical use" by qualified patients. Id. at § 11362.81. These extensive Guidelines explain a detailed regime in which qualified, licensed patients may obtain medical marijuana from private dispensaries operating as nonprofit collectives or cooperatives under extensive licensing requirements for business incorporation, record keeping, taxation, verification, security, and the like. See Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use at Part IV (2008), http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf. The Town of Fairfax, operating under its authority in Cal. Health & Safety Code § 11362.768, added its own extensive local permitting requirements, which mandate that a medical marijuana dispensary comply with 72 conditions regulating every conceivable aspect of the time, place, and manner of the dispensary's operation. See Amended Conditions of Approval for the Marin Alliance Medicinal Marijuana Dispensary Use Permit Number 97-UP-2, Approved on August 15, 2002, MAMM Supplemental Brief (dkt. 271) at Ex. 11.

*5  In sum, this intricate legal framework "implements" California's medical marijuana laws by allowing licensed patients to obtain medical marijuana from highly regulated non-profit cooperative dispensaries. Against this backdrop, Section 538 states that "None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of...California [and 32 other states], to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." 2015 Appropriations Act § 538. To "implement," of course, means to "carry out, accomplish, to give practical effect to and ensure of actual fulfillment by concrete measures." Merriam-Webster Dictionary (2015). It defies language and logic for the Government to argue that it does not "prevent" California from "implementing" its medical marijuana laws by shutting down these same heavily-regulated medical marijuana dispensaries; whether it shuts down one, some, or all, the difference is of degree, not of kind. And, contrary to the Government's representation, the record here does support a finding that Californians' access to legal medical marijuana has been substantively impeded by the closing of dispensaries, and the closing of MAMM in

particular. See Bragman Letter December 2014, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 3 ("Since the departure of the Marin Alliance, the County of Marin, with a population of over 250,000, has not had a legal medical cannabis dispensary to serve the local patient population. Marin County has exceptionally high rates of breast and prostate cancer. Those patient groups both benefit from proven medical benefits of cannabis but now are unable to have safe access in their local community.").

Given that the statutory language of Section 538 is plain on its face, the Court "must enforce it according to its terms," see King v. Burwell, ——U.S. ——, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015), and need not consider the legislative history. But it comes as no surprise to the Court that the legislative history of Section 538 points in only one direction: away from the counterintuitive and opportunistic meaning that the DOJ seeks to ascribe to it now. Without exception, it appears that both the supporters and opponents of Section 538 in Congress at least agreed that the words mean what they appear to mean. See, e.g., 60 Cong. Rec. 82, H4914, H4984 (daily ed. May 29, 2014) (statement of Cosponsor Rep. Dina Titus) ("[T]his commonsense amendment simply ensures that patients do not have to live in fear when following the laws of their States and the recommendations of their doctors. Physicians in those States will not be prosecuted for prescribing the substance, and local businesses will not be shut down for dispensing the same.") (emphasis added); 160 Cong. Rec. 82, H4914, H4984 (daily ed. May 29, 2014) (statement of Rep. Alcee Hastings) ("Specifically, the bill is a bipartisan appropriations measure that looks to prohibit the DEA from spending funds to arrest state-licensed medical marijuana patients and providers. Many of my colleagues and their constituencies agree that patients who are allowed to purchase and consume medical marijuana in their respective states should not be punished by the federal government.") (emphasis added); 160 Cong. Rec. 82, H4914, H4984 (daily ed. May 29, 2014) (statement of Lead Sponsor Rep. Sam Farr) ("This is essentially saying, look, if you are following State law, you are a legal resident doing your business under State law, the Feds just can't come in and bust you."); 160 Cong. Rec. 70, H4020, H4053–55 (daily ed. May 9, 2014) (statement of Lead Sponsor Dana Rohrabacher) ("The harassment from the [DEA] is something that should not be tolerated in the land of the free. Businesspeople who are licensed and certified to provide doctor recommended medicine within their own States have seen their businesses locked down, their assets seized, their customers driven away,

028

and their financial lives ruined by very, very aggressive and energetic Federal law enforcers enforcing a law...Instead of continuing to finance this repressive and expensive approach, we should be willing to allow patients and small businesses to follow their doctors' advice under the watchful eye of State law enforcement and regulators...") (emphasis added); 160 Cong. Rec. 82, H4914, H4983–84 (daily ed. May 29, 2014) (statement of Rep. John Fleming in opposition) ("What this amendment would do is, it wouldn't change the law, it would just make it difficult, if not impossible, for the DEA and [DOJ] to enforce the law.").

In fact, the members of Congress who drafted Section 538 had the opportunity to respond to the very same argument that the DOJ advances here. In a letter to Attorney General Eric Holder on April 8, 2015, Congressmen Dana Rohrabacher and Sam Farr responded as follows to "recent statements indicating that the [DOJ] does not believe a spending restriction designed to protect [the medical marijuana laws of 35 states] applies to specific ongoing cases against individuals and businesses engaged in medical marijuana activity":

> *6 As the authors of the provision in question, we write to inform you that this interpretation of our amendment is emphatically wrong. Rest assured, the purpose of our amendment was to prevent the Department from wasting its limited law enforcement resources on prosecutions and asset forfeiture actions against medical marijuana patients and providers, including businesses that operate legally under state law. In fact, a close look at the Congressional Record of the floor debate of the amendment clearly illustrates the intent of those who sponsored and supported this measure. Even those who argued against the amendment agreed with the proponents' interpretation of their amendment.

Letter to Attorney General Holder, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 7. Having no substantive response or evidence, the Government simply asserts that it "need not delve into the legislative history here" because the meaning of the statute is clearly in its favor. The Court disagrees.

To the extent the Government cites a few cases addressing Section 538, none are analogous or even particularly favorable to the Government's position. In each one of the cases that the Government cites, the individual or organization at issue was not operating in compliance with State law—in which case this Court agrees that Section 538 does not apply by its own terms. See, e.g., United States v. Tote, No. 1:14–mj–212, 2015 WL 3732010 (E.D.Cal. June 12, 2015) (rejecting a criminal defendant's argument that his criminal prosecution for driving under the influence of marijuana on federal land should be dismissed under Section 538 because Section 538 did not repeal federal laws criminalizing the possession of marijuana and "Defendant was using marijuana in a manner that violates California law"); United States v. Firestack–Harvey, No. 13–cr–24, 2015 WL 3533222 (E.D.Wash. June 4, 2015) (rejecting the applicability of Section 538 to a criminal prosecution of three individuals because the conduct at issue involved operating a for-profit marijuana business that was not authorized by Washington state law); United States v. Silkeutsabay, No. 13–cr–140, 2015 WL 2376170 (E.D.Wash. May 18, 2015) (concluding that Section 538 was "inapplicable to prosecution of Defendants' case where over 1000 marijuana plants were seized—a number far in excess of that authorized under Washington's medical marijuana law"). A single Ninth Circuit case held that a prohibition on the deduction of expenses in connection with illegal drug trafficking applied to bar a medical marijuana dispensary from deducting its business expenses to eliminate a tax deficiency. See Olive v. Commissioner of Internal Revenue, 792 F.3d 1146 (9th Cir.2015). In that separate context, the Ninth Circuit explained that "Section 538 does not apply" because the government was "enforcing only a tax, which does not prevent people from using, distributing, possessing, or cultivating marijuana in California. Enforcing these laws might make it more costly to run a dispensary, but it does not change whether these activities are authorized in the state." See id. at 1150.

## IV. CONCLUSION

For the foregoing reasons, as long as Congress precludes the Department of Justice from expending funds in the manner proscribed by Section 538, the permanent injunction will only be enforced against MAMM insofar as that organization is in violation of California "State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." [4] See 2015 Appropriations Act § 538; Fed. R. Civ. P. 60(b).

029

United States of America v. Marin Alliance for Medical Marijuana, --- F.Supp.3d ---- (2015)

**\*7 IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2015 WL 6123062

**Footnotes**

1  Congress extended the force of Section 538 by passing the Continuing Appropriations Act of 2016 ("2016 Appropriations Act"), Pub. L. 114–53, § 103, 129 Stat. 502 (2015).

2  A follow-up letter from the Mayor in December 2014 stated his belief that "changed circumstances justify reconsideration of the District Court's injunction," particularly the struggles of Marin patients who were left without a legal medical cannabis dispensary, the loss of tax revenues to the town, the uptick of drug-related arrests, and the change in the social and legal perception of medical marijuana. See Bragman Letter Dec. 2014, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 3.

3  At the initial stage, " 'a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.' " Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156–57, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). "An injunction should issue only if the traditional four-factor test is satisfied." Id. at 157, 130 S.Ct. 2743 (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 380–82, 172 L.Ed.2d 249 (2008)). "It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should not issue; rather, a court must determine that an injunction should issue under the traditional four-factor test set out above." Id. at 158, 130 S.Ct. 2743.

   Even if a Plaintiff survives this inquiry, "[i]njunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion." Natural Resources Defense Coun cil, Inc. v. Winter, 508 F.3d 885, 886 (9th Cir.2007) (later litigation reversed on other grounds by Winter, 555 U.S. at 12, 129 S.Ct. 365).

4  To the Court's recollection, the Government has yet to allege or even suggest that MAMM was at any time operating in violation of state law. The only evidence in the record on this point is to the contrary: a letter from the Mayor of Fairfax to United States Attorney Melinda Haag states that "Based upon its satisfaction of the scores of conditions in the Use Permit issued by the Town of Fairfax, the record clearly establishes that the Marin Alliance has been in clear and unambiguous compliance with existing state and local laws providing for the medical use of marijuana." See Bragman Letter October 2011, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 2; see also Bragman Letter December 2014, id. at Ex. 3 (same). Rather, the Government has taken the position that the injunction is justified solely because MAMM operates in contravention of the CSA. Whether MAMM in fact operates in compliance with California state law is not before the Court at this time.

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

030

| | | |
|---|---|---|
| 1 | UNITED STATES OF AMERICA, ) | CASE NO.: CR 15-606-RGK |
| 2 | Plaintiff, ) | Declaration of Service |
| 3 | vs. ) | |
| 4 | ) | |
| 5 | ANDREW KRAMER, ) | |
| 6 | Defendant. ) | |
| 7 | _____ ) | |
| 8 | ANAHI GUTIERREZ, ) | |
| 9 | Petitioner. ) | |

10    I, Thomas P. Sleisenger, am over the age of 18 and not a part to the within action.
11 My business address is 1901 Avenue of the Stars, Suite 615, Los Angeles, California
90067.
12    On March 30, 2016, I served the foregoing documents described as **Petition For
Ancillary Hearing** on the interested parties in the above entitled action by CM/ECF
13 filing, electronic mail, U.S. mail and/or personal delivery as follows:

14 Jonathan Galatzan
Assistant United States Attorney
15 Asset Forfeiture Section
United States Attorney's Office
16 312 North Spring Street, 14th Floor
Los Angeles, California 90012

17

18    I declare under penalty of perjury that the foregoing is true and correct.

19    Executed on March 30, 2016, at Los Angeles, California.

20

21                    THOMAS P. SLEISENGER

22

23

24

25

26

27

28