THOMAS P. SLEISENGER
Law Offices of Thomas P. Sleisenger
1901 Avenue of the Stars, Suite 615
Los Angeles, California 90067
California State Bar #100254
Telephone: (310) 300-1314
Facsimile: (310) 861-0152
email: sleisengerlaw@yahoo.com

Counsel for Petitioners
Rosalinda Kramer, Stuart Kramer, M.D.
Blue Mountain Management & Marketing, Inc.
Private Funding Management, Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 15-606-RGK |
| Plaintiff, ) | |
| vs. ) | **EXHIBITS IN SUPPORT OF PETITION FOR ANCILLARY HEARING** |
| ANDREW KRAMER, ) | |
| Defendant. ) | |
| ROSALINDA KRAMER, ) STUART KRAMER, M.D., BLUE ) MOUNTAIN MANAGEMENT ) AND MARKETING, INC., ) PRIVATE FUNDING ) MANAGEMENT, INC., ) | |
| Petitioners. ) | |

FILED
2016 MAR 30 PM 3:16
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# TABLE OF CONTENTS

EXHIBIT ONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

EXHIBIT TWO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

EXHIBIT THREE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

EXHIBIT FOUR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

EXHIBIT FIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

EXHIBIT SIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

EXHIBIT SEVEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

# Exhibit One

Consumer Deposit Account

# Relationship Change Application


WELLS FARGO

Host Status

| Host Update Successful | | | |
|---|---|---|---|
| Banker Name | Officer/Portfolio Number | Date | |
| TANYA URITSKAYA | CE583 | 12/09/2009 | |
| Banker Phone | Store Number | Banker AU | Banker MAC |
| 818/993-7251 | 04436 | 00691 | E2168-011 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## Account Information

| Product Name | Minor | COID | Product | Account Number |
|---|---|---|---|---|
| CUSTOM MANAGEMENT CHECKING | | 114 | DDA | 7090440202 |

## Related Customers

| Customer 1 Name | Customer Number (ECN) | Account Relationship Status |
|---|---|---|
| ANDREW H KRAMER | 26463770120216 | CHANGED |
| Current Account Relationship | NEW Account Relationship | |
| Sole Owner | Primary Joint Owner (or) | |
| Customer 2 Name | Customer Number (ECN) | Account Relationship Status |
| ROSALINDA L KRAMER | 7031807329 | NEW |
| Current Account Relationship | NEW Account Relationship | |
| None | Secondary Joint Owner (or) | |

## Checking/Savings Statement Mailing Information

| Customer(s) Listen on Statement | Statement Mailing Address | |
|---|---|---|
| ANDREW H KRAMER | 11751 ZELZAH AVE | |
| | Address Line 2 | |
| ROSALINDA L KRAMER | | |
| | City | State |
| | GRANADA HILLS | CA |
| | ZIP/Postal Code | Country |
| | 91344-2012 | US |



DSGR770 (2 09 SVP)
© 2009 Wells Fargo Bank N.A. All rights reserved     2W02-000048496477-01

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

002

Consumer Deposit Account Relationship Change Application

## Customer 1 Information

| Customer Name | | | Street Address | |
|---|---|---|---|---|
| ANDREW H KRAMER | | | 11751 ZELZAH AVE | |
| Account Relationship | | | Address Line 2 | |
| Primary Joint Owner (or) | | | | |
| Taxpayer Identification Number (TIN) | Date of Birth | | Address Line 3 | |
| 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 | 11/06/1974 | | | |
| Primary ID Type | Primary ID Description | | City | State |
| DLIC | A6687649 | | GRANADA HILLS | CA |
| Primary ID State/Country | Primary ID Issue Date | Primary ID Expiration Date | ZIP/Postal Code | Country |
| CA | 11/01/2008 | 11/06/2013 | 91344-2012 | US |
| Secondary ID Type | Secondary ID Description | | Directional Address | |
| OTHR DC | BOFA VISA 0508 | | *(Document when no physical residence business or alternate street address)* | |
| Secondary ID State/Country | Secondary ID Issue Date | Secondary ID Expiration Date | | |
| | 10/01/2007 | 10/01/2012 | | |
| Check Reporting | | | Home Phone | Business Phone |
| | | | 818/360-0790 | 818/723-6702 |

## Customer 2 Information

| Customer Name | | | Street Address | |
|---|---|---|---|---|
| ROSALINDA L KRAMER | | | 11751 ZELZAH AVE | |
| Account Relationship | | | Address Line 2 | |
| Secondary Joint Owner (or) | | | | |
| Taxpayer Identification Number (TIN) | Date of Birth | | Address Line 3 | |
| 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 | 07/09/1945 | | | |
| Primary ID Type | Primary ID Description | | City | State |
| DLIC | E0430545 | | GRANADA HILLS | CA |
| Primary ID State/Country | Primary ID Issue Date | Primary ID Expiration Date | ZIP/Postal Code | Country |
| CA | 06/07/2007 | 07/09/2012 | 91344-2012 | US |
| Secondary ID Type | Secondary ID Description | | Directional Address | |
| OTHR DC | DC WAMU VISA | | *(Document when no physical residence, business or alternate street address)* | |
| Secondary ID State/Country | Secondary ID Issue Date | Secondary ID Expiration Date | | |
| | | 10/01/2010 | | |
| Check Reporting | | | Home Phone | Business Phone |
| | | | 818/360-6742 | |



2W02-000048496477-02

DSGR720 (2-09 SVP)
© 2009 Wells Fargo Bank N.A. All rights reserved

Page 2 of 3
Wells Fargo Confidential
006734

**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**
**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**

003

Consumer Deposit Account Relationship Change Application

**Customer Signatures - New/Remaining Account Owner Relationships**

Everything I have stated in this application is correct. You are authorized to make any inquiries that you consider appropriate to determine if you should open the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. I have received a copy of the applicable account agreement and privacy brochure and agree to be bound by them. including the terms of the Direct Deposit Advance Service® and Deposit Advance℠ Service (Deposit Advance Service not available in all states) described in the account agreement and Service Agreement and Product Guide. I also agree to the terms of the dispute resolution program described in the account agreement Service Agreement and Product Guide. Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge

| New/Remaining Customer 1 Name | Customer Number (ECN) |
|---|---|
| ROSALINDA L KRAMER | 7031807329 |

New/Remaining Customer 1 Signature

☐ Submit manually
☐ Signature not required

Date: 12/09/2009

| New/Remaining Customer 2 Name | Customer Number (ECN) |
|---|---|
| ANDREW H KRAMER | 26463770120216 |

New/Remaining Customer 2 Signature

☒ Submit manually
☐ Signature not required

Date: 12/09/2009



DSC8720 (2 09 SVP)
© 2009 Wells Fargo Bank N.A. All rights reserved

2W02-000048496477-03

Page 3 of 3
Wells Fargo Confidential

006735

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

004

# Consumer Account Application



**WELLS FARGO**

| Bank Name: | | Store Name: | |
|---|---|---|---|
| Wells Fargo Bank, N.A. | | BEVERLY-FAIRFAX | |
| **Banker Name:** | | **Officer/Port/oGo Number:** | **Date:** |
| CRISTHIANE BEATIE | | L4526 | 01/15/2009 |
| **Banker Phone:** | **Store Number:** | **Banker AU:** | **Banker MAC:** |
| 323/634-1600 | 04526 | 00863 | E2187-011 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

| Product Name: | Minor: | COID: | Product: | Account Number: |
|---|---|---|---|---|
| Custom Management Checking | | 114 | DDA | 7090440202 |
| Money Market Savings | | 114 | DDA | 9372604661 |
| | | | | |
| | | | | |

## Related Customers

| Customer Name: | Account Relationship: |
|---|---|
| ANDREW H KRAMER | Sole Owner |
| | |
| | |
| | |
| | |
| | |

## Checking/Savings Statement Mailing Information

| Customer(s) Listed on Statement: | Statement Mailing Address: | |
|---|---|---|
| ANDREW H KRAMER | 11751 ZELZAH AVE | |
| | **Address Line 2:** | |
| | | |
| | **City:** | **State:** |
| | GRANADA HILLS | CA |
| | **ZIP/Postal Code:** | **Country:** |
| | 91344-2012 | US |



2W02-000029147297-01

DSG8921 (5-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.

Page 1 of 3
Wells Fargo Confidential

006736

**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**
**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**



## Customer 1 Information

| Customer Name: | Street Address: |
|---|---|
| ANDREW H KRAMER | 11751 ZELZAH AVE |
| Account Relationship: | Address Line 2: |
| Sole Owner | |
| Taxpayer Identification Number (TIN):   Date of Birth: | Address Line 3: |
| 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   11/06/1974 | |
| Primary ID Type:   Primary ID Description: | City:   State: |
| DLIC   A6687649 | GRANADA HILLS   CA |
| Primary ID State/Country:   Primary ID Issue Date:   Primary ID Expiration Date: | ZIP/Postal Code:   Country:   Time at this address: |
| CA   11/01/2008   11/06/2013 | 91344-2012   US   34 Year(s)  0  Month(s) |
| Secondary ID Type:   Secondary ID Description: | Directional Address: |
| OTHR   BOFA VISA 0508 | (Document when no physical residence, business or alternate street address) |
| Secondary ID State/Country:   Secondary ID Issue Date:   Secondary ID Expiration Date: | |
|    10/01/2007   10/01/2012 | |
| Home Phone:   Business Phone: | Previous Street Address: |
| 818/360-0790   818/723-6702 | |
| Current Employer: | City:   State: |
| IFINITY HEALTH CARE | |
| Check Reporting: | ZIP/Postal Code:   Country:   Time at this address: |
| NORECORD | Year(s)   Month(s) |

### Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payment other than interest and dividends).
3. I am a U.S. person (including a U.S. resident alien).    ☐ I am subject to backup withholding    ☐ I am exempt from backup withholding

| Tax Responsible Customer Name: | Taxpayer Identification Number (TIN): |
|---|---|
| ANDREW H KRAMER | 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 |

TIN Certification Signature



☒ Submit manually    Date:
☐ Signature not required    01/15/2009

### Customer Signatures

Everything I have stated in this application is correct. You are authorized to make any inquires that you consider appropriate to determine if you should open the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. I have received a copy of the applicable account agreement and privacy brochure and agree to be bound by them, including the terms of the Direct Deposit Advance Service® and Deposit Advance℠ Service (Deposit Advance Service not available in all states) described in the account agreement and Service Agreement and Product Guide. I also agree to the terms of the dispute resolution program described in the account agreement Service Agreement and Product Guide. Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.

DSG8921 (5-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.    2W02-000029147297-02

Page 2 of 3
Wells Fargo Confidential

006737

**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**
**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**

Customer 1 Name
ANDREW H KRAMER

Customer 1 Signature

[X] Submit manually
[ ] Signature not required

Date:
01/15/2009

DSG8921 (5-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.

2W02-000029147297-03

Page 3 of 3
Wells Fargo Confidential

006738

**PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT**

007

# Consumer Account Application



**WELLS FARGO**

| Bank Name: | Store Name: | |
|---|---|---|
| Wells Fargo Bank, N.A. | BEVERLY-FAIRFAX | |
| Banker Name: | Officer/Portfolio Number: | Date: |
| CRISTHIANE BEATIE | L4526 | 01/15/2009 |
| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
| 323/634-1600 | 04526 | 00863 | E2187-011 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

| Product Name: | Minor: | CCID: | Product: | Account Number: |
|---|---|---|---|---|
| Custom Management Checking | | 114 | DDA | 7090440202 |
| Money Market Savings | | 114 | DDA | 9372604661 |
| | | | | |
| | | | | |

## Related Customers

| Customer Name: | Account Relationship: |
|---|---|
| ANDREW H KRAMER | Sole Owner |
| | |
| | |
| | |
| | |
| | |

## Checking/Savings Statement Mailing Information

| Customer(s) Listed on Statement: | Statement Mailing Address |
|---|---|
| ANDREW H KRAMER | 11751 ZELZAH AVE |
| | Address Line 2: |
| | |

| | City: | State: |
|---|---|---|
| | GRANADA HILLS | CA |
| | ZIP/Postal Code: | Country: |
| | 91344-2012 | US |



2W02-000029147297-01

DSG8921 (5-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.

Page 1 of 3
Wells Fargo Confidential

006739

**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**
**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**

008

## Customer 1 Information

| Customer Name: ANDREW H KRAMER | | | | Street Address: 11751 ZELZAH AVE | | | |
|---|---|---|---|---|---|---|---|
| Account Relationship: Sole Owner | | | | Address Line 2: | | | |
| Taxpayer Identification Number (TIN): 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 | | Date of Birth: 11/06/1974 | | Address Line 3: | | | |
| Primary ID Type: DLIC | Primary ID Description: A6687649 | | | City: GRANADA HILLS | | | State: CA |
| Primary ID State/Country: CA | Primary ID Issue Date: 11/01/2008 | | Primary ID Expiration Date: 11/06/2013 | ZIP/Postal Code: 91344-2012 | Country: US | Time at this address: 34 Year(s) 0 Month(s) | |
| Secondary ID Type: OTHR | Secondary ID Description: BOFA VISA 0508 | | | Directional Address: (Document when no physical residence, business or alternate street address) | | | |
| Secondary ID State/Country: | Secondary ID Issue Date: 10/01/2007 | Secondary ID Expiration Date: 10/01/2012 | | | | | |
| Home Phone: 818/360-0790 | | Business Phone: 818/723-6702 | | Previous Street Address: | | | |
| Current Employer: IFINITITY HEALTH CARE | | | | City: | | State: | |
| Check Reporting: NORECORD | | | | ZIP/Postal Code: | Country: | Time at this address: Year(s) Month(s) | |

## Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payment other than interest and dividends).

3. I am a US person (including a U.S. resident alien). ☐ I am subject to backup withholding ☐ I am exempt from backup withholding

| Tax Responsible Customer Name: ANDREW H KRAMER | Taxpayer Identification Number (TIN): 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 |
|---|---|

TIN Certification Signature

| | ☒ Submit manually | |
|---|---|---|
| | ☐ Signature not required | Date: 01/15/2009 |

## Customer Signatures

Everything I have stated in this application is correct. You are authorized to make any inquiries that you consider appropriate to determine if you should open the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. I have received a copy of the applicable account agreement and privacy brochure and agree to be bound by them, **including the terms of the Direct Deposit Advance Service℠ and Deposit Advance℠ Service (Deposit Advance Service not available in all states) described in the account agreement and Service Agreement and Product Guide.** I also agree to the terms of the dispute resolution program described in the account agreement Service Agreement and Product Guide. Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.



2W02-000029147297-02

DSG8921 (5-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.

006740

**PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT**

009

Customer 1 Name
|ANDREW H KRAMER

Customer 1 Signature

[X] Submit manually
[ ] Signature not required

Date:
|01/15/2009

DSG8921 (5-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.    2W02-000029147297-03

006741

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

010

## Checking/Savings Statement Mailing Information

| Name(s) and Information Listed on Statement | Statement Mailing Address |
|---|---|
| THE SUNSET SHOP INCORPORATED | 8464 SANTA MONICA BLVD |
| | Address Line 2 |

| City | State |
|---|---|
| LOS ANGELES | CA |

| ZIP/Postal Code | Country |
|---|---|
| 90069-4219 | US |

## Business Information

| Business Name | Street Address |
|---|---|
| THE SUNSET SHOP INCORPORATED | 8464 SANTA MONICA BLVD |

| Business Type | Address Line 2 |
|---|---|
| Corporation Type S | |

| Business Sub-Type | Non-Profit | Address Line 3 |
|---|---|---|
| Corporation | No | |

| Date Originally Established | Current Ownership Since | Number of Employees | City | State |
|---|---|---|---|---|
| 05/20/2006 | | 5 | LOS ANGELES | CA |

| Annual Gross Sales | Year Sales Reported | Fiscal Year End | ZIP/Postal Code | Country |
|---|---|---|---|---|
| $500,000 00 | 12/31/2008 | 12/31 | 90069-4219 | US |

| Primary Financial Institution | Number of Locations | Business Phone | Fax |
|---|---|---|---|
| OTHER | 1 | (310) 406-9608 | |

| Sales Market | Cellular Phone | Pager |
|---|---|---|
| LOCAL | (310) 406-9608 | |

| Primary State 1 | Primary State 2 | Primary State 3 | e-Mail Address |
|---|---|---|---|
| | | | |

| Primary Country 1 | Primary Country 2 | Primary Country 3 | Website |
|---|---|---|---|
| | | | |

| Industry |
|---|
| Retail Trade |

| Description of Business |
|---|
| RETAIL TRADE |

| Major Suppliers/Customers |
|---|
| |

## Bank Use Only

| Name/Entity Verification | Address Verification | BACC Reference Number |
|---|---|---|
| Articles of Incorporation | NONE | 609BAC1431119 |

| Document Filing Number/Description | Filing Country | Filing State | Filing Date | Expiration Date |
|---|---|---|---|---|
| 2879238 | US | CA | 05/12/2006 | |

| Country of Registration | State of Registration | International Transactions | | Check Reporting |
|---|---|---|---|---|
| US | CA | | | NORECORD |



2W02-000035291741-02

BBG2307 (11-08 SVP)
© 2008 Wells Fargo Bank N.A. All rights reserved

007748

**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**
**PRODUCED UNDER PROTECTIVE ORDER**
**DO NOT LEAVE ANY COPIES WITH CLIENT**

011

## Owner/Key Individual 1 Information

| Customer Name | Primary ID Type | Primary ID Description | | |
|---|---|---|---|---|
| ANDREW H KRAMER | DLIC | | | |
| Position/Title | Primary ID State/Country | Primary ID Issue Date | | Primary ID Expiration Date |
| MEDICAL ASST. | CA | 11/01/2008 | | 2013 |
| Check Reporting | Secondary ID Type | Secondary ID Description | | |
| None | OTHR | BOFA VISA 0508 | | |
| | Secondary ID State/Country | Secondary ID Issue Date | | Secondary ID Expiration Date |
| | | 10/01/2007 | | 10/01/2012 |

## Certificate of Authority

Each person who signs the "Certified/Agreed To" section of this Application certifies that

A  The Customer's use of any Bank deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial

B  Each person who signs the "Certified/Agreed To" section of this Application or whose name, any applicable title and specimen signature appears in the Authorized Signers-Signature Capture" section of this Application is authorized on such terms as the Bank may require to

  (1) Enter into, modify, terminate and otherwise in any manner act to account set the Bank and agreement s with the Bank or its affiliates for account sand/or services offered by the Bank or its affiliates (other than letters of credit or loan agreements)

  (2) Authorize (by signing or otherwise) the payment of items from the Customer's account(s) listed on this Business Account Application (including without limitation any item payable to (a) the individual order of the person who authorized the item or (b) the Bank or any other person for the benefit of the person who authorized the item) and the endorsement of Deposited items for deposit, cashing or collection (see the Bank's applicable account agreement for the definitions of "item" and "Deposited item")

  (3) Give instructions to the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer as the Customer's authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by any electronic means in regard to any item and the transaction of any business relating to the Customer's account(s), agreements or services, and the Customer shall indemnify and hold the Bank harmless for acting in accordance with such instructions and

  (4) Delegate the person's authority to another person(s) or revoke such delegation, in a separate signed writing delivered to the Bank

C  If a code must be communicated to the Bank in order to authorize an item, and the code is communicated the item will be binding on the Customer regardless of who communicated the code.

D  Each transaction described in this Certificate of Authority conducted by or on behalf of the Customer prior to delivery of this Certificate is in all respect satisfied

E  If the Customer is a tribal government or tribal government agency the Customer waives sovereign immunity from suit with respect to the Customer's use of any Bank account, product or service referred to in this Certificate.

F  The information provided in this Application is correct and complete, each person who signs the "Certified/Agreed To" section of this Application and each person whose name appears in the "Authorized Signers-Signature Capture" section of this Application holds any position indicated, and the signature appearing opposite the person's name is authentic.

G  The Customer has approved this Certificate of Authority or granted each person who signs the "Certified/Agreed To" section of this Application the authority to do so on the Customer's behalf by

  (1) resolution, agreement or other legally sufficient action of the governing body of the Customer, if the Customer is not a trust or a sole proprietor;

  (2) the signature of each of the Customer's trustee(s), if the Customer is a trust, or

  (3) the signature of the Customer, if the Customer is a sole proprietor

## Certified/Agreed To

| Owner/Key Individual 1 Name | Position/Title |
|---|---|
| ANDREW H KRAMER | MEDICAL ASST |

Owner/Key Individual 1 Signature



☒ Submit manually
☐ Signature not required

Date
04/29/2009

2W02-000035291741-03

007749

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

012

Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)

· Under penalties of perjury I certify that

1  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me) and

2  UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payment other than interest and dividends)

3  I am a U.S. person (including a U.S. resident alien)    ☐ I am subject to backup withholding    ☒ I am exempt from backup withholding.

Note  The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding

| Business Name: | Taxpayer Identification Number (TIN) |
|---|---|
| THE SUNSET SHOP INCORPORATED | 20-5197479 |

TIN Certification Signature

| | |
|---|---|
| *[signature]* | ☒ Submit manually  ☐ Signature not required   Date  04/29/2009 |

**Authorized Signers - Signature Capture**

| Authorized Signer 1 Name | Position/Title |
|---|---|
| ANDREW H KRAMER | MEDICAL ASST. |

Authorized Signer 1 Signature

| | |
|---|---|
| *[signature]* | ☒ Submit manually  ☐ Signature not required   Date  04/29/2009 |

007750

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

013

# Addendum To Certificate Of Authority
For Changes To Authorized Signers On Business Deposit Accounts



**Host Status:**
Host Update Successful

| Bank Name: | Store Name: |
|---|---|
| Wells Fargo Bank, N.A. | West Hollywood |

| Banker Name: | Officer/Portfolio Number: | Date: |
|---|---|---|
| DAVID PATTON | CS457 | 06/04/2009 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| 310/855-7140 | 04232 | 00378 | E2162-011 |

Use this Addendum when Authorized Signers are being added or deleted to a Certificate of Authority currently on file for a business customer and a new, signed Certificate of Authority hasn't been obtained.

## Business/Account Information

| Business Name: | CCID | Product: | Account Number: |
|---|---|---|---|
| THE SUNSET SHOP INCORPORATED | 114 | DDA | 5205457418 |

## Authorized Signers

| Authorized Signer Name(s): | Relationship Status: | | |
|---|---|---|---|
| ANDREW H KRAMER | ☒ Existing/Remaining | ☐ New | ☐ Delete |
| CRISTHIANE BEATIE | ☐ Existing/Remaining | ☒ New | ☐ Delete |

## Addendum to Certificate of Authority

| Original Certificate of Authority Dated: | Addendum to Certificate of Authority Dated: |
|---|---|
| 04/29/2009 | 06/04/2009 |

Each person signing in the "Certified/Agreed To" section below:

- directs the Bank that the additional Authorized Signers shall have all of the authority granted to the persons identified as Authorized Signers on the Certificate of Authority, including without limitation the authority to instruct the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer as the Customer's authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by electronic means in regard to any item and the transaction of any business relating to the Customer's account(s), agreements or services;
- directs the Bank to discontinue acting on the instructions of any person who has been deleted as an Authorized Signer;
- acknowledges that these modifications become effective only after this Addendum has been received by the Bank and the Bank has had a reasonable opportunity to act on it; and
- certifies that the account owner has taken all action under its organizational documents, if any, including passage of resolutions by its board of directors, trustees, or other governing body, required to make these modifications and to authorize the undersigned to execute and deliver this Addendum.

BB35351 (8-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.   2W02-000037401987-01

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

014

Certified/Agreed To
_____

Owner/Key Individual 1 Name
|ANDREW H KRAMER

Position/Title:
|MEDICAL ASST.

Owner/Key Individual 1 Signature

☐ Submit manually
☐ Signature not required

Date:
|06/04/2009

Signature Capture - New Authorized Signers
_____

New Authorized Signer 1 Name
|CRISTHIANE BEATIE

Position/Title:
|MGR

New Authorized Signer 1 Signature

☐ Submit manually
☐ Signature not required

Date:
|06/04/2009

BBG5351 (8-07 SVP)
© 2007 Wells Fargo Bank, N.A. All rights reserved.

2W02-000037401987-02

Page 2 of 2
Wells Fargo Confidential

007752

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

015



# Addendum To Certificate Of Authority
For Changes To Authorized Signers On Business Deposit Accounts



**Host Status**

| Host Update Successful |

| **Bank Name** | | **Store Name** | |
|---|---|---|---|
| Wells Fargo Bank, N A. | | BALBOA-DEVONSHIRE | |
| **Banker Name** | | **Officer/Portfolio Number** | **Date** |
| TANYA URITSKAYA | | CE583 | 11/24/2009 |
| **Banker Phone** | **Store Number** | **Banker AU** | **Banker MAC** |
| 818/993-7251 | 04436 | 00691 | E2168-011 |

Use this Addendum when Authorized Signers are being added or deleted to a Certificate of Authority currently on file for a business customer and a new, signed Certificate of Authority has not been obtained

## Business/Account Information

| **Business Name** | | **COID** | **Product** | **Account Number** |
|---|---|---|---|---|
| THE SUNSET SHOP INCORPORATED | | 114 | DDA | 5205457418 |

## Authorized Signers

| **Authorized Signer Name(s)** | **Relationship Status** | | | | | |
|---|---|---|---|---|---|---|
| CRISTHIANE BEATIE | ☒ Existing/Remaining | ☐ New | ☐ Delete |
| ANDREW H KRAMER | ☒ Existing/Remaining | ☐ New | ☐ Delete |
| ROSALINDA L KRAMER | ☐ Existing/Remaining | ☒ New | ☐ Delete |

## Addendum to Certificate of Authority

| **Original Certificate of Authority Dated** | **Addendum to Certificate of Authority Dated** |
|---|---|
| 11/24/2009 | 11/24/2009 |

Each person signing in the "Certified/Agreed To" section below

- directs the Bank that the additional Authorized Signers shall have all of the authority granted to the persons identified as Authorized Signers on the Certificate of Authority, including without limitation the authority to instruct the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer are the Customer s authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by electronic means in regard to any item and the transaction of any business relating to the Customer s account(s), agreements or services.
- directs the Bank to discontinue acting on the instructions of any person who has been deleted as an Authorized Signer.
- acknowledges that these modifications become effective only after this Addendum has been received by the Bank and the Bank has had a reasonable opportunity to act on it, and
- certifies that the account owner has taken all action under its organizational documents, if any, including passage of resolutions by its board of directors, trustees, or other governing body, required to make these modifications and to authorize the undersigned to execute and deliver this Addendum

*Best Image Possible*

2W02-000047680521-01

PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT

016

**...ed/Agreed To**

| ...r/Key Individual 1 Name | Position/Title |
|---|---|
| CRISTHIANE BEATIE | MGR |

Owner/Key Individual 1 Signature

*Cristhiane Beatie*

☐ Submit manually
☐ Signature not required

Date 11/24/2009

**Certified/Agreed To**

| Owner/Key Individual 2 Name | Position/Title |
|---|---|
| ANDREW H KRAMER | MEDICAL ASST. |

Owner/Key Individual 2 Signature

*A. Kramer*

☒ Submit manually
☐ Signature not required

Date 11/24/2009

**Signature Capture - New Authorized Signers**

| New Authorized Signer 1 Name | Position/Title |
|---|---|
| ROSALINDA L KRAMER | MANAGER |

New Authorized Signer 1 Signature



☐ Submit manually
☐ Signature not required

Date 11/24/2009

BBG5351 (8 07 SVP)
© 2007 Wells Fargo Bank, N A  All rights reserved

2W02-000047680521-02

Page 2 of 2
Wells Fargo Confidential

007754

**PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT
PRODUCED UNDER PROTECTIVE ORDER
DO NOT LEAVE ANY COPIES WITH CLIENT**

017

6:42 PM
03/24/16
Accrual Basis

# Find Report
## All Transactions

| Type | Date | Num | Name | Memo | Account | Clr |
|------|------|-----|------|------|---------|-----|
| Check | 12/07/2015 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 12/07/2015 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 11/05/2015 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 11/05/2015 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 10/05/2015 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 10/05/2015 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 09/08/2015 | | Wells Fargo Home Mortgage | Sept pmt | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 09/08/2015 | | Wells Fargo Home Mortgage | Sept pmt | Wells Fargo Home Mortgage | |
| Check | 08/05/2015 | | Wells Fargo Home Mortgage | Aug pmt | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 08/05/2015 | | Wells Fargo Home Mortgage | Aug pmt | Wells Fargo Home Mortgage | |
| Check | 07/07/2015 | 7523 | Wells Fargo Home Mortgage | for July 2015 | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 07/07/2015 | 7523 | Wells Fargo Home Mortgage | for July 2015 | Wells Fargo Home Mortgage | |
| Check | 07/07/2015 | 7524 | Wells Fargo Home Mortgage | for Aug 2015 | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 07/07/2015 | 7524 | Wells Fargo Home Mortgage | for Aug 2015 | Wells Fargo Home Mortgage | |
| Check | 04/06/2015 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 04/06/2015 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 03/04/2015 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 03/04/2015 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 02/04/2015 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 02/04/2015 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 01/06/2015 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 01/06/2015 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 12/04/2014 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 12/04/2014 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 11/04/2014 | | Wells Fargo Home Mortgage | bill pay | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 11/04/2014 | | Wells Fargo Home Mortgage | bill pay | Wells Fargo Home Mortgage | |
| Check | 10/09/2014 | | Wells Fargo Home Mortgage | transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 10/09/2014 | | Wells Fargo Home Mortgage | transfer | Wells Fargo Home Mortgage | |
| Check | 09/16/2014 | | Wells Fargo Home Mortgage | transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 09/16/2014 | | Wells Fargo Home Mortgage | transfer | Wells Fargo Home Mortgage | |
| Check | 08/12/2014 | | Wells Fargo Home Mortgage | transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 08/12/2014 | | Wells Fargo Home Mortgage | transfer | Wells Fargo Home Mortgage | |
| Check | 07/22/2014 | | Wells Fargo Home Mortgage | transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 07/22/2014 | | Wells Fargo Home Mortgage | transfer | Wells Fargo Home Mortgage | |
| Check | 07/01/2014 | | Wells Fargo Home Mortgage | transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 07/01/2014 | | Wells Fargo Home Mortgage | transfer | Wells Fargo Home Mortgage | |
| Check | 05/02/2014 | | Wells Fargo Home Mortgage | transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 05/02/2014 | | Wells Fargo Home Mortgage | transfer | Wells Fargo Home Mortgage | |
| Check | 04/01/2014 | | Wells Fargo Home Mortgage | transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 04/01/2014 | | Wells Fargo Home Mortgage | transfer | Wells Fargo Home Mortgage | |
| Check | 03/13/2014 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 03/13/2014 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 02/04/2014 | 7543 | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 02/04/2014 | 7543 | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |

Ø18

6:49 PM
03/24/16
Accrual Basis

# Find Report
## All Transactions

| Type | Date | Num | Name | Memo | Account | Clr |
|------|------|-----|------|------|---------|-----|
| Check | 01/06/2014 | 7541 | Wells Fargo Home Mortgage | Loan#0267308088 | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 01/06/2014 | 7541 | Wells Fargo Home Mortgage | Loan#0267308088 | Wells Fargo Home Mortgage | |
| Check | 11/19/2013 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 11/19/2013 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Transfer | 09/03/2013 | | | Funds Transfer | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Transfer | 09/03/2013 | | | Funds Transfer | Wells Fargo Home Mortgage | |
| Check | 07/16/2013 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 07/16/2013 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 07/16/2013 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 07/16/2013 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 04/17/2013 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 04/17/2013 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| Check | 04/17/2013 | | Wells Fargo Home Mortgage | | WFB Custom Mgt. (RM)xxxx0202 | √ |
| Check | 04/17/2013 | | Wells Fargo Home Mortgage | | Wells Fargo Home Mortgage | |
| | | | | | | |
| Check | 02/17/2016 | #### | Wells Fargo Home Mortgage | Loan# 0267308088 11266 Chimineas Ave | Feb 2016 pmt | |
| Check | 02/17/2016 | #### | Wells Fargo Home Mortgage | Loan# 0267308088 11266 Chimineas Ave | March 2016 pmt | |

### INSURANCE

| Type | Date | | | | Account | Clr |
|------|------|---|---|---|---------|-----|
| Check | 12/11/2013 | | | | Chimineas- 71-BW-G932-8 | 0 |
| Check | 01/06/2014 | | | | 71-BT-C250-0   11266 Chimineas | 0 |
| Check | 12/12/2014 | | | | Policy # 71-BT-250-0 1/26/15-1/26 | 0 |
| Check | 12/12/2014 | | | | Policy# 71-BW-G932-8 1/26/15-1/2 | 0 |
| Check | 02/16/2015 | | | | Policy# 71-BW-G932-8 Chimineas | 0 |
| Check | 12/09/2015 | | | | Policy# 71-BW-G932-8 11266 Chi | 0 |
| Check | 12/14/2015 | | | | Policy # 71-BT-250-0 1/26/16-1/26 | 0 |
| Check | 02/29/2016 | | | | Policy # 71-BW-G932-8 11266 Ch | 0 |

Check                                                                              ##

6:43 PM
03/24/16
Accrual Basis

# Find Report
## All Transactions

| Split | Credit |
|---|---|
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |

020

6:48 PM
03/24/16
Accrual Basis

# Find Report
## All Transactions

| Split | Credit |
| --- | --- |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| Wells Fargo Home Mortgage | 2,297.17 |
| WFB Custom Mgt. (RM)xxxx0202 | |
| | |
| Mortgage | 2,297.17 |
| Mortgage | 2,297.17 |

1435
1077
1145
1299
218
0
0
505.66

5679.66

1296                                        Professional Best Service    Valve Repair:

O2-1

# Exhibit Two

ANDREW H. KRAMER
11751 ZELZAH AVE.
GRANADA HILLS CA 91344-2012

52
64-1278/611

DATE 4/16/2010

PAY TO THE
ORDER OF _Glen Oaks Escrow_____ | $ 44,000

_Forty four Thousand_____ DOLLARS

FRANKLIN MONEY FUND
PAYABLE THROUGH BANK OF AMERICA, N.A.
ATLANTA, DEKALB COUNTY, GEORGIA

NOT VALID FOR LESS THAN $500.00

13250 - 13252 Foothill 91352          1X OR

MEMO _Escrow # 081332-ER_           _Andy Kramer_

⑈1889716952⑈ ⑆0611127886⑆ 329 901 8111⑈

---

ROSALINDA L. KRAMER
11751 ZELZAH AVE.
GRANADA HILLS CA 91344-2012

64
64-1278/611

DATE 4/16/2010

PAY TO THE
ORDER OF _Glen Oaks Escrow_____ | $ 44,000

_Forty four Thousand_____ DOLLARS

FRANKLIN MONEY FUND
PAYABLE THROUGH BANK OF AMERICA, N.A.
ATLANTA, DEKALB COUNTY, GEORGIA

NOT VALID FOR LESS THAN $500.00

13250 - 13252 Foothill 91352          1X OR

MEMO _Escrow # 081332-ER_           _Rosalinda L Kramer_

⑈1932607164⑈ ⑆0611127886⑆ 329 901 8111⑈

---

For Escrow #
081332-ER
13250 - 13252 Foothill
91352

OFFICIAL CHECK

M16779 59655070

5002507752

ISSUING BRANCH _51-707-21 WM_

DATE _April.13, 2010_

88-236/514

PAY TO THE
ORDER OF _Glen Oaks Escrow_____ | $ 50,000.00

_B B & T 50,000 DOLS 00 CTS_____ DOLLARS

BB&T

O23

081332 ER
13250-13252 foothill
91352

**OFFICIAL CHECK**

M16779 09855070

5002507751

ISSUING BRANCH 51-707-21 WM

DATE April 13, 2010

68-238/514

PAY TO THE
ORDER OF Glen Oaks Escrow

$ 50,000.00

BB&T 50,000 DOLS 00 CTS

DOLLARS

**BB&T**

AUTHORIZED SIGNATURE

Cathy Sellaro

MEMO/PURCHASER Rosalinda Kramer
Blue Mountain Management

⑆5002507751⑆ ⑇051402369⑇000101901009⑆7⑈

---

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW

FOR
ESCROW
# 081332-ER
13250-13252 Foothill
91352

**OFFICIAL CHECK**

M16779 09855070

5002507753

ISSUING BRANCH 51-707-21 WM

DATE April 13, 2010

68-238/514

PAY TO THE
ORDER OF Glen Oaks Escrow

$ 50,000.00

BB&T 50,000 DOLS 00 CTS

DOLLARS

**BB&T**

AUTHORIZED SIGNATURE

Cathy Sellaro

MEMO/PURCHASER Rosalinda Kramer
Blue Mountain Management

⑆5002507753⑆ ⑇051402369⑇000101901009⑆7⑈

Glen Oaks Escrow

APR 16 2010

RECEIVED

LBLAIR

018332-ER

024

## FOOTHILL EXPENSES          TOTAL = $29, 209.97

1,784.24

| Type | Date | Num | Name | Memo | Account/Class | Amount | Total |
|---|---|---|---|---|---|---|---|
| Check | 06/04/2014 | 1292 | City of Los Angeles-HCIDLA | RE: APN2513026020 13250 Foothill Blvd, LA, CA 91342 | PPMC - 0168 | 382.48 | 8354.54 |
| Check | 06/28/2013 | 1092 | LA County Tax Collector | 2513 026 020 12 000 5 | PPMC - 0171 | 4,070.65 | 5979.87 |
| Check | 12/13/2013 | 1196 | LA County Tax Collector | Foothill- Assessor ID #2513-026-020 2012 default | PPMC - 0171 | 75.54 | 14875.56 |
| Check | 12/13/2013 | 1197 | LA County Tax Collector | Foothill- Assessor ID #2513-026-020 2013 installment 1 | PPMC - 0171 | 2,003.98 | 29209.97 |
| Check | 12/13/2013 | 1180 | LA County Tax Collector | Foothill- Assessor ID #2513-026-020 2013 installment 2 due | PPMC - 0171 | 1,821.29 | |
| | | | | | | 8354.54 | |

Check

| Type | Date | Num | Name | Memo | Account/Class | Amount |
|---|---|---|---|---|---|---|
| Check | 10/17/2013 | 1225 | LA Municipal Services | | Henhouse | 83.44 |
| Check | 10/17/2013 | 1145 | LA DWP | | PPMC - 0171 | 413.16 |
| Check | 08/22/2013 | 1090 | LA DWP | | PPMC - 0171 | 122.01 |
| Check | 04/18/2014 | 1255 | LA DWP | 3-28-34888-13250-00-0000-9-01 | PPMC - 0168 | 257.74 |
| Check | 06/30/2014 | 1304 | LA DWP | due 6/30/14 | PPMC - 0171 | 111.73 |
| Check | 08/22/2013 | 1090 | LA DWP | RE: 13250 Foothill Blvd. | PPMC - 0171 | 257.88 |
| Check | 06/30/2014 | 1304 | LA DWP | due 6/30/14 | PPMC - 0171 | 227.29 |
| Check | 07/15/2014 | 1284 | LA Municipal Services | VOID: GJE. RGJE created ✓ | PPMC - 0168 | 0.00 |
| General Journal | 07/15/2014 | 4 | LA Municipal Services | For CHK 1284 voided on 08/19/2014 | PPMC - 0168 | 339.02 |
| Check | 01/06/2014 | 1155 | LA DWP | | PPMC - 0171 | 129.39 |
| Check | 06/21/2013 | 1108 | LA DWP | 3-28-34888-13250-00-0000-9-01 PH | PPMC - 0171 | 332.00 |
| Check | 08/19/2014 | 1276 | LA Municipal Services | Acct# 868 279 0000 13250 Foothill Blvd Due 8/27/2014 | PPMC - 0168 | 341.76 |
| General Journal | 08/19/2014 | 4R | | Reverse of GJE 4 -- For CHK 1284 voided on 08/19/2014 | PPMC - 0168 | 339.02 |
| Check | 10/15/2014 | 1258 | LA Municipal Services | 13250 Foothill Blvd due 10/27/2014 | PPMC - 0168 | 316.02 |
| Check | 12/16/2014 | 1260 | LA Municipal Services | 13250 Foothill Blv Acct# 868 279 0000 Due 12/29/14 | PPMC - 0168 | 308.84 |
| Check | 02/17/2016 | 1701 | LA Municipal Services | 13250 Foothill Blvd Due 05/01/2016 | PPMC - 0171 | 364.12 |
| Check | 02/16/2015 | 1289 | LA Municipal Services | Acct# 868 279 0000   13250 Foothill Blvd, Sylmar | PPMC - 0168 | 297.79 |
| Check | 04/20/2015 | 1454 | LA Municipal Services | 13250 Foothill Blvd Due 4/28/2015 | PPMC - 0171 | 288.95 |
| Check | 06/22/2015 | 1506 | LA Municipal Services | 13250 Foothill Blvd Due 6/28/2015 | PPMC - 0168 | 288.68 |
| Check | 08/17/2015 | 1536 | LA Municipal Services | 13250 Foothill Blvd Due 8/31/2015 | PPMC - 0171 | 316.16 |
| Check | 10/16/2015 | 1602 | LA Municipal Services | 13250 Foothill Blvd Due 10/27/2015 | PPMC - 0171 | 314.67 |
| Check | 12/23/2015 | 1624 | LA Municipal Services | 13250 Foothill Blvd Due 12/29/2015 | PPMC - 0171 | 351.81 |
| Check | 03/11/2014 | 1631 | Los Angeles Municipal Serv | 3-28-34888-13250-00-0000-4-01 | 1000-00 - B of A - Blue Mtr | 305.51 |
| | | | | | | 5,979.87 |

339.02

Gardening, Maintenance & Security          413.21 AVERAGE PER MONTH PER PROPERTY

| | | |
|---|---|---|
| | 2013 | 3718.89 |
| | 2014 | 4958.52 |
| | 2015 | 4958.52 |
| | 2016 | 1239.63 |
| | | 14,875.56 |

025

| Date | Description |
|------|-------------|
| 3/17/2010 | Purchase Agreement and Joint Escrow Instructions - Andrew Kramer, Buyer<br>- Purchase Price $262,000<br>- Initial Deposit $24,000 |
| 4/6/2010 | Vesting Form - Andrew Kramer, A Single Man |
| 4/10/2010 | $24,000 Cashier's Check #0037804488 Payable to Glen Oaks Escrow/Escrow #081332-ER |
| 4/13/2010 | $24,000 Glen Oaks Trust Receipt #117198 Received from Andrew Kramer |
| 4/13/2010 | $50,000.00 Official BB&T Check #5002507751 Payable to Glen Oaks Escrow - Memo: Rosalinda Kramer / Blue Mountain Management |
| 4/13/2010 | $50,000.00 Official BB&T Check #5002507753 Payable to Glen Oaks Escrow - Memo: Rosalinda Kramer / Blue Mountain Management |
| 4/13/2010 | $50,000.00 Official BB&T Check #5002507752 Payable to Glen Oaks Escrow - Memo: Rosalinda Kramer / Blue Mountain Management |
| 4/16/2010 | $50,000.00 Glen Oaks Trust Receipt #117283 Received From Rosalinda Kramer FBO Andrew Kramer |
| 4/16/2010 | $50,000 Glen Oaks Trust Receipt #117281 Received from Rosalinda Kramer FBO Andrew Kramer |
| 4/16/2010 | $50,000 Glen Oaks Trust Receipt #117280 Received from Rosalinda Kramer FBO Andrew Kramer |
| 4/16/2010 | $44,000 Check #64 Payable to Glen Oaks Escrow from Rosalinda Kramer [Franklin Money Fund Acct.] |
| 4/16/2010 | $44,000 Glen Oaks Trust Receipt #117279 Received from Andrew Kramer |
| 4/16/2010 | $44,000 Check #52 Payable to Glen Oaks Escrow from Andrew Kramer [Franklin Money Fund] |
| 4/16/2010 | $44,000 Glen Oaks Trust Receipt #117278 Received from Andrew Kramer |
| 4/19/2010 | $3514.05 Official Check #0037807844 Payable to Glen Oaks Escrow Re Escrow #081332-ER |
| 4/20/2010 | $3,514.05 Glen Oaks Trust Receipt #117334 Received From Andrew Kramer |
| 4/21/2010 | Addendum - Buyer Name Will Change from Andrew Kramer to Private Funding Management Corporation |
|  | TOTAL |

| Payments to Escrow | BS# |
|---|---|
| | GOE0093-0100 |
| | GOE0113 |
| $24,000.00 | GOE0068 |
| | GOE0068 |
| $50,000.00 | GOE0056 |
| $50,000.00 | GOE0060 |
| $50,000.00 | GOE0062 |
| | GOE0056 |
| | GOE0060 |
| | GOE0062 |
| $44,000.00 | GOE0064 |
| | GOE0064 |
| $44,000.00 | GOE0066 |
| | GOE0066 |
| $3,514.05 | GOE0054 |
| | GOE0054 |
| | GOE0088 |
| $265,514.05 | |

# Exhibit Three

**This page is part of your document - DO NOT DISCARD**



# 20100559221



**Pages:**
**0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/26/10 AT 08:00AM**

| | |
|---|---:|
| FEES: | 19.00 |
| TAXES: | 1,467.20 |
| OTHER: | 0.00 |
| PAID: | 1,486.20 |



**L E A D S H E E T**



201004260170004

00002267171



002651071

**SEQ:
04**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

029

**LSI Title Agency**

**RECORDING REQUESTED BY:**
LSI Title Company (CA)

**AND WHEN RECORDED MAIL TO:**

Andrew Kramer
11751 Zelzah Avenue
Granada Hills, CA 91344



04/26/2010

*20100559221*

2

THIS SPACE FOR RECORDER'S USE ONLY:

| Title Order No.: 090369122-1 | | Escrow No.: 081332-ER |
| --- | --- | --- |

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $288.20   CITY TRANSFER TAX $1,179.00**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Los Angeles AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Deutsche Bank National Trust Company in its capacity as indenture trustee for the noteholders of Aames Mortgage Investment Trust 2005-2, a Delaware statutory trust**

hereby GRANT(s) to:

**Andrew Kramer**, A Single Man

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as:
The Northwesterly 58 feet of Lot 7 of Tract No. 5481, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 71, Page 86 of Maps, in the Office of the County Recorder of said County.
Also Known as: 13250 - 13252 Foothill Blvd., Los Angeles (Sylmar area), CA 91352
AP#: 2513-026-020

DATED April 6, 2010
STATE OF Pennsylvania
COUNTY OF Washington
On April 13, 2010
before me, Rachel Demase
A Notary Public in and for said State personally appeared
Jenifer Dino

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

Deutsche Bank National Trust Company in its capacity as indenture trustee for the noteholders of Aames Mortgage Investment Trust 2005-2, a Delaware statutory trust

By: _____
Jenifer Dino, Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Rachel Demase, Notary Public
Ross Twp., Allegheny County
My Commission Expires May 25, 2011
Member, Pennsylvania Association of Notaries

(Seal)

4

030



**This page is part of your document - DO NOT DISCARD**



## 20100897936



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/30/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 19.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 19.00 |



**L E A D S H E E T**



201006300110015

00002591357



002758214

**SEQ:**
**05**

**DAR - Title Company  (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T79

O31

2

RECORDING REQUESTED BY:

## The Document Center, Inc.
Glendale, CA

When Recorded Mail Document
and Tax Statement To:

**Private Funding Management, Inc.**
**8464 Santa Monica Blvd..**
**West Hollywood, CA. 90069**

06/30/2010

*20100897936*

Escrow No.   **6202-C**
Title Order No.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **2513-026-020**

# QUITCLAIM DEED

The undersigned grantor(s) declare(s)

Documentary transfer tax is $ _____ **None** _____   City tax $ _____ **None** _____

  [  ] computed on full value of property conveyed, or
  [  ] computed on full value less value of liens or encumbrances remaining at time of sale,
  [  ] Unincorporated area    City of _____

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Andrew Kramer, a single man**

hereby remises, releases and quitclaims to
**Private Funding Management, Inc., a Nevada Corporation**

the following described real property in the City of _____ **North Hollywood (Los Angeles)** _____
County of _____ **Los Angeles** _____   State of _____ **California** _____ :
**The Northwesterly 58 feet of Lot 7 of Tract No. 5481, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 71, Pages 86 of Maps, in the office of the County Recorder of said County.**

Commonly Known As: **13250-13252 Foothill Blvd., Sylmar, CA. 91352**

**"THE GRANTORS AND THE GRANTEES IN THIS CONVEYANCE ARE COMPRISED OF THE SAME PARTIES WHO CONTINUE TO HOLD THE SAME PROPORTIONATE INTEREST IN THE PROPERTY, R&T 11923(D)."**

DATED: **May 10, 2010** _____

STATE OF **California** _____

COUNTY OF **Los Angeles** _____

ON **May 26, 2010** _____ before me,
**Roohollah Sadighim** _____ , notary public,

personally appeared **Andrew Kramer** _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

**Andrew Kramer**

RUOHOLLAH SADIGHIM
Commission # 1823789
Notary Public - California
Los Angeles County
My Comm. Expires Nov 21, 2012

RHDC2

QUITCLAIM DEED



# Exhibit Four

**This page is part of your document - DO NOT DISCARD**



## 20100327779



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/10/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 1,699.60 |
| OTHER: | 0.00 |
| PAID: | 1,724.60 |



**L E A D S H E E T**



201003100140012

00002048455



002578987

**SEQ:**
**11**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T01

E534013

034

RECORDED AT THE REQUEST
OF CHICAGO TITLE COMPANY

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Andrew Kramer
11552 Cantlay Street
Los Angeles, California 91605



03/10/2010

*20100327779*

Assessor's Parcel No. 2316-029-008 ———— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

# GRANT DEED

**The undersigned grantor(s) declare(s):**
Documentary transfer tax is $ 333.25 County 1365.8 City
(X) computed on full value of the interest of property conveyed, or
( ) computed on the full value less the value of liens or encumbrances
remaining thereon at the time of sale.
(X) City of: Los Angeles, and

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST
2006-WMC3, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WMC3

**hereby GRANTS(S) TO**

Andrew Kramer, a single

**the following described real property in the** City of Los Angeles,
County of Los Angeles, **State of California:**

LOT 26 OF TRACT NO. 26674, IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 760, PAGE(S) 81 TO 84 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Also Known as: 11552 Cantlay Street, Los Angeles, California, 91605

**SUBJECT TO:**

1.) General and Special County and City (if any) Taxes for the current fiscal year,
not due or delinquent, including any special levies, payments for which are
included therein and collected therewith.

2.) Lien of Supplemental Taxs, if any, assessed pursuant to the provisions of
Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the
State of California.

3.) Covenants, Conditions and Restrictions, reservations easements for public
utilities, districts, water companies, alleys and streets, rights and rights of
way of record, if any; also exception of oil, gas, minerals and hydrocarbons,
and/or lease, without the right of surface entry.

GRANT DEED CONTINUED ON NEXT PAGE
Mail Tax Statement to:   SAME AS ABOVE or Address Noted Below

Title Order No.  985098293-SS•         Escrow or Loan No.    46956-mm
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

035 115

3

CONTINUATION OF GRANT DEED

Escrow No.: 46956-mm

Dated: February 25, 2010

STATE OF CALIFORNIA SEE ATTACHMENT

**COUNTY OF San Diego**      **SS**

On _____ before me,
_____,
a notary public, personally appeared
_____

who proved to me on the basis of
satisfactory evidence to be the
person(s) whose name(s) is/are
subscribed to the within instrument and
acknowledged to me that he/she/they
executed the same in his/her/their
authorized capacity(ies), and that by
his/her/their signature(s) on the
instrument the person(s), or the entity
upon which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY
under the laws of the State of
California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

Signature _____
SEE ATTACHMENT

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-
WMC3, ASSET BACKED PASS-THROUGH CERTIFICATES,
SERIES 2006-WMC3

By: _____    Tony Huynh
                         Asst. Vice President



By Chase Home Finance, LLC
As Attorney-In-Fact

(This area for official notarial seal)

4

## ACKNOWLEDGMENT

State of California
County of _____ San Diego _____ )

On _02/26/2010_ before me, Christina Odell, Notary Public
                                          (insert name and title of the officer)

                              Tony Huynh
                              Asst. Vice President
personally appeared _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

CHRISTINA ODELL
Commission # 1819976
Notary Public - California
San Diego County
My Comm. Expires Oct 27, 2012

O37

This page is part of your document - DO NOT DISCARD

## 20100897937





Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/30/10 AT 08:00AM**

**Pages:
0002**

| | |
|---|---|
| FEES: | 19.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 19.00 |



**LEADSHEET**



201006300110015

00002591358



002758214

**SEQ:
06**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

T79

038

RECORDING REQUESTED BY:

**The Document Center**
Glendale, CA

When Recorded Mail Document
and Tax Statement To:

**Anahi E. Gutierrez
11552 Cantlay St.
North Hollywood, CA. 91605**

06/30/2010

*20100897937*

Escrow No.   **6202-C**
Title Order No.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **2316-029-008**

# GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $          **None**          City tax $          **None**

   [   ] computed on full value of property conveyed, or
   [   ] computed on full value less value of liens or encumbrances remaining at time of sale,
   [   ] Unincorporated area          City of

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Andrew Kramer, a single man**

hereby GRANT(S) to
**Anahi E. Gutierrez, an unmarried woman**

the following described real property in the City of          **North Hollywood (Los Angeles)**
County of          **Los Angeles**          State of          **California**
**Lot 26 of Tract No. 26674, in the City of Los Angeles, County of Los Angeles, State of
California, as per map recorded in Book 760, Pages 81 to 84 of Maps, in the office of the
County Recorder of said County.**

Commonly Known As:  **11552 Cantlay St., North Hollywood, CA. 91605**

**"THIS IS A BONAFIDE GIFT AND THE GRANTOR RECEIVED NOTHING IN RETURN, R&T 11911."**

DATED: **May 10, 2010**

Andrew Kramer

STATE OF          **California**
COUNTY OF          **Los Angeles**
ON **MAY 26 TH , 2010**                    before me,
**Roohollah Sadighim**                    , notary public,
personally appeared
**Andrew Kramer**

who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument, or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

ROOHOLLAH SADIGHIM
Commission # 1823789
Notary Public - California
Los Angeles County
My Comm. Expires Nov 21, 2012

RHDC6                                        GRANT DEED

039

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

SEP 2 5 2014

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA



040

**This page is part of your document - DO NOT DISCARD**



# 20100897938



**Pages:
0006**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/30/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 49.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 49.00 |



**LEADSHEET**

201006300110015

00002591359

002758214

**SEQ:
07**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E34611

T79

041

*2*

RECORDING REQUESTED BY:

# The Document Center, Inc.
Glendale, CA

When Recorded Mail Document
and Tax Statement To:

**Private Funding Management, Inc.**
**8464 Santa Monica Blvd..**
**West Hollywood, CA. 90069**

06/30/2010

*20100897938*

Escrow No.  **6202-C**
Title Order No.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS (ACCELERATION CLAUSE)

BY THIS DEED OF TRUST, made this    **10th**  day of    **May**    , 2010, between
**Anahi E. Gutierrez, an unmarried woman**

herein called Trustor, whose address is
**11552 Cantlay St., North Hollywood, CA. 91605**
(number and street)                    (city)                    (state)          (zip)
and FOOTHILL CONVEYANCE CORPORATION, a California corporation, herein called trustee, and
**Private Funding Management, Inc., a Nevada Corporation**

hereinafter called Beneficiary, Trustor grants, transfers, and assigns to Trustee, in trust, with power of sale, that
property in   **Los Angeles**          County,    **California**      , described as:
**Lot 26 of Tract No. 26674, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 760, Pages 81 to 84 of Maps, in the office of the County Recorder of said County.**

Assessor's Parcel No.:   **2316-029-008**
Commonly Known As:   **11552 Cantlay St., North Hollywood, CA. 91605**

If the Trustor shall convey or alienate said property or any part thereof or any interest therein or shall be divested of his title in any manner or way, whether voluntary or involuntary any indebtedness or obligation secured hereby, irrespective of the maturity date expressed in any note evidencing the same, at the option of the holder hereof and without demand or notice shall become due and payable immediately.
Trustor also assigns to Beneficiary all rents, issues and profits of said realty reserving the right to collect and use the same except during continuance of default hereunder and during continuance of such default authorizing Beneficiary to collect and enforce the same by any lawful means in the name of any party hereto.
For purpose of securing:
(1)Payment of the indebtedness evidenced by one promissory note in the principal sum of **$400,000.00**
of even date herewith, payable to Beneficiary, and any extensions or renewals thereof; (2) the payment of any money that may be advanced by the Beneficiary to Trustor, of his successors, with interest thereon, evidenced by additional notes (indicating they are so secured) or by endorsement on the original note, executed by Trustor or his successor; (3) performance of each agreement of Trustor incorporated by reference or contained herein.
On June 14, 1985, identical fictitious Deeds of Trust were recorded in the offices of the County Recorders of the Counties of State of

---

CK TD          page 1 of 4

3

California, the first page thereof appearing as the following instrument numbers in the records of the respective County Recorder as follows:

| COUNTY | Instrument Number | COUNTY | Instrument Number |
|---|---|---|---|
| Los Angeles | 85–668576 | Riverside | 85-128546 |
| San Bernardino | 85-143016 | Ventura | 85-062101 |
| Orange | 85-216204 | Imperial | 125 |
| San Diego* | 85-210816 | | |
| *June 13, 1985 | | | |

The provisions contained in Section A, including paragraphs 1 through 5, and the provisions contained in Section B, including paragraphs 1 through 9 of said fictitious Deeds of Trust are incorporated herein as fully as though set forth at length and in full herein.

The undersigned Trustor requests that a copy of any notice of default and any notice of any sale hereunder be mailed to Trustor at the address hereinabove set forth, being the address designated for the purpose of receiving such notice.

Anahi E. Gutierrez

STATE OF ___California___
COUNTY OF ___Los Angeles___
ON __May 26Th, 2010_____ , before me,
__Roohollah Sadighim_____ , notary public,
personally appeared
**Anahi E. Gutierrez**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____



RUOHOLLAH SADIGHIM
Commission # 1823789
Notary Public - California
Los Angeles County
My Comm. Expires Nov 21, 2012

CK TD          page 2 of 4

043

**DO NOT RECORD** -- Provisions incorporated from Recorded Fictitious Deed of Trust

**4**

**A. TO PROTECT THE SECURITY HEREOF, TRUSTOR AGREES:**

(1) To keep said property in good condition and repair, preserve thereon the buildings, complete construction begun, restore damage or destruction, and pay the cost thereof; to commit or permit no waste, no violation of laws or covenants or conditions relating to use, alterations or improvements; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which the character and use of said property and the estate or interest in said property secured by this Deed of Trust may require to preserve this security.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or Beneficiary may release all or any part thereof to Trustor. Such application or release shall not cure or waive any default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Beneficiary or Trustee: and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof. Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the legal rate of interest, and to pay for any statement provided for by law regarding the obligations secured hereby in the amount demanded by Beneficiary, not exceeding the maximum amount permitted by law at the time of the request thereof.

**B. IT IS MUTUALLY AGREED THAT:**

(1) Any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned to Beneficiary, who may apply or release such moneys received by him in the same manner and with the same effect as provided for disposition of proceeds of fire or other insurance.

(2) By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require payment when due of all other sums so secured or to declare default for failure so to pay.

(3) At any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map thereof; join in granting any easement thereon; join in any agreement extending or subordination the lien or charge hereof.

(4) Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5) Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby, immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause said property to be sold, which notice Trustee shall cause to be duly filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby. Trustee shall give Notice of Sale as then required by law, and without demand on Trustor, at least three months having elapsed after recordation of such Notice of Default, shall sell said property at the time and place of sale fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.

Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the legal rate; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(6) This Deed applies to, insures to the benefit of, and binds all parties hereto, their legal representatives and successors in interest. The term Beneficiary shall include any future owner and holder, including pledgees of the note secured hereby. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(7) Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(8) The Trusts created hereby are irrevocable by Trustor.

(9) Beneficiary may substitute a successor Trustee from time to time by recording in the Office of the Recorder or Recorders of the county where the property is located an instrument stating the election by the Beneficiary to make such substitution, which instrument shall identify the Deed of Trust by recording reference, and by the name of the original Trustor, Trustee and Beneficiary, and shall set forth the name and address of the new Trustee, and which instrument shall be signed by the Beneficiary and duly acknowledged.

**Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.**
**Both must be delivered to the Trustee for cancellation before reconveyance will be made.** _____Initial

O44

**DO NOT RECORD**

5

# REQUEST FOR FULL RECONVEYANCE

**To be used only when note has been paid**

Dated:_____

To: **FOOTHILL CONVEYANCE CORPORATION**, Trustee:

The undersigned is the legal owner of all indebtedness secured by this Deed of Trust. All sums secured by said Deed of Trust have been paid, and you are requested, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

Mail Reconveyance to:

By:_____

By:_____

045

# Exhibit Five

046

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 5

| | 2. Cross File | Related Files | | |
|---|---|---|---|---|
| ███████ | ☐ | | ███████ | ███████ |
| 5. By: James M De Leo, SA  At: Los Angeles FDO | ☐ | | 6. File Title  Jordana LEEDS | |
| | ☐ | | | |
| 7. ☐ Closed ☐ Requested Action Completed  ☐ Action Requested By: | ☐ ☐ | | 8. Date Prepared  04-17-2013 | |

9. Other Officers: See Witnesses.

10. Report Re: Execution of Search Warrant at 11751 Zelzah Avenue, Granada Hills, California, and acquisition of Exhibits N-1201 through N-1205 on 04/16/2013.

## SYNOPSIS

On April 16, 2013, a Federal Search Warrant was executed at 11751 Zelzah Avenue, Granada Hills, California, resulting in the seizure of US Currency, computers and financial documents.

## DETAILS

1. On April 16, 2013, at approximately 11:03 a.m., a Federal Search Warrant was executed at 11751 Zelzah Avenue, Granada Hills, California.

2. Special Agents knocked and announced their presence and authority. Agents found the front door unsecured and did not have to force entry. Rosalinda KRAMER, the owner and resident, was taken into custody without incident at the front door. No other people were found in the residence.

3. After the residence was secured, SA James De Leo provided Rosalinda KRAMER a copy of the Search Warrant.

4. Beverly Hills Police Department Crime Scene Tech Fogg videotaped the residence prior to any agents searching the residence.

5. Internal Revenue Service Criminal Investigations Special Agents Patrick Leonard and Castro advised Rosalinda KRAMER of Miranda Warnings since they would be asking Rosalinda KRAMER about who was using the computers found in the residence. Rosalinda KRAMER was also questioned about the financial records of VICTORY FINANCIAL and Andrew KRAMER found in the residence.

6. Rosalinda KRAMER advised SAs Leonard, Castro and De Leo that she did financial work on the computers for Andrew KRAMER because she was trying to keep him "on the straight and narrow."

| 11. Distribution:  Division | 12. Signature (Agent)  _[signature]_  James M De Leo, SA | 13. Date  04-19-2013 |
|---|---|---|
| District | 14. Approved (Name and Title)  Deanne L Reuter, GS  _[signature]_ | 15. Date  4/19/13 |
| Other | | |

DEA Form   - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

047

U.S. Department of Justice
Drug Enforcement Administration

| | REPORT OF INVESTIGATION | 3. File Title |
|---|---|---|
| | *(Continuation)* | Jordana LEEDS |
| 4. Page  2  of  5 | | |
| | | 6. Date Prepared 04-17-2013 |

7. Two stand-alone computers, Dell XPS 420, were found in the office immediately to the left of the front door. Both computers were seized. Dell XPS 420 #GTGHWH1 was labeled Exhibit N-1202. Dell XPS 420 #J4CCWH1 was labeled Exhibit N-1203.

8. Another stand-alone computer was seized from the adjacent room next to the office. The HP 6000 (serial #3CR04214SL), an external Seagate hard-drive (serial #NA5G0DSA) and a thumb-drive attached to a hub were seized together and labeled as Exhibit N-1204.

9. At approximately 2:11 p.m., Dr. Stuart KRAMER arrived at the house. Dr. KRAMER was provided a copy of the Search Warrant.

10. During the search of the residence, while searching the Master Bedroom closet (northwest bedroom on the second floor), TFO Frank Panza and SA De Leo found small bundles of United States Currency (USC) concealed among shoes, hat boxes, and medicines. Three bundles were wrapped tightly in aluminum foil and one in saran wrap.   Other bundles of US Currency were just folded together and concealed throughout the shelves. The bundles of US Currency were in 100s, fifties, and twenties. SA De Leo sealed the US Currency into Self-Sealing Evidence Envelope (SSEE) #EM000212970, as witnessed by TFO Panza. The US Currency was labeled Exhibit N-1201.

11. SA De Leo asked Dr. KRAMER and Rosalinda KRAMER if they wanted to initial SSEE #EM000212970 and they refused.

12. Mrs. Kramer asked if the agents had left her any spending money. Mrs. Kramer did not know how much money was hidden in her closet. Mrs. Kramer advised that she wrapped some of her money to protect it from water damage.

13. Mrs. Kramer did advise that her son, Andrew Kramer, did have access to all the bedrooms (including his) on the second floor without supervision.

14. During search of the attic, an agent accidently put his foot through the ceiling in the Master Bedroom. SA De Leo provided a SF-95 (Claim of Damage, Injury or Death) to Dr. Kramer and Rosalinda KRAMER.

15. IRS SAs Leonard and Castro seized financial documents for Andrew KRAMER and VICTORY FINANCIAL. The financial documents were labeled Exhibit N-1205. IRS SA Leonard and Castro maintained care, control and custody of the documents.

DEA Form      - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

048

U.S. Department of Justice
Drug Enforcement Administration

| | **REPORT OF INVESTIGATION** *(Continuation)* | | |
|---|---|---|---|
| **4.** Page 3 of 5 | | **3. File Title** Jordana LEEDS | |
| | | **6. Date Prepared** 04-17-2013 | |

16. A search of the residence did not reveal any other drug or non-drug evidence.

17. Beverly Hills Police Department Crime Scene Tech Fogg videotaped the residence after the agents were done searching the residence.

18. SA De Leo provided Dr. KRAMER and Rosalinda KRAMER an itemized list of property seized from the residence.

19. At approximately 4:05 p.m., all law enforcement officers and agents left the property.

**CUSTODY OF EVIDENCE**

1.  Exhibit N-1201 – is an undetermined amount of US Currency seized from 11751 Zelzah Avenue, Granada Hills, California, on April 16, 2013, pursuant to a Federal Search Warrant. In the Master Bedroom closet (northwest bedroom on the second floor), TFO Frank Panza and SA De Leo found small bundles of United States Currency (USC) concealed among shoes, hat boxes, and medicines. Three bundles were wrapped tightly in aluminum foil and one in saran wrap. Other bundles of US Currency were just folded together and concealed throughout the shelves. The bundles of US Currency were in 100s, fifties, and twenties. SA De Leo sealed the US Currency into Self-Sealing Evidence Envelope (SSEE) #EM000212970, as witnessed by TFO Panza. SA Jesse Odum and SA Shane Martineau transported Exhibit N-1201 to the Los Angeles Field Division Non-Drug Evidence vault and turned Exhibit N-1201 over to High Value Evidence Custodian for safekeeping.

2.  Exhibit N-1202 – is a stand-alone computer, Dell XPS 420 #GTGHWH1, seized from 11751 Zelzah Avenue, Granada Hills, California, on April 16, 2013, pursuant to a Federal Search Warrant. SA De Leo took custody of the exhibit and turned the exhibit over to Beverly Hills Police Department Detective David Williams for analysis.

3.  Exhibit N-1203 – is a stand-alone computer, Dell XPS 420 #J4CCWH1, seized from 11751 Zelzah Avenue, Granada Hills, California, on April 16, 2013, pursuant to a Federal Search Warrant. SA De Leo took custody of the exhibit and turned the exhibit over to Beverly Hills Police Department Detective David Williams for analysis.

4.  Exhibit N-1204 - stand-alone computer HP 6000 (serial #3CR04214SL), an external Seagate Hard-drive (serial #NA5G0DSA) and a thumb-drive attached to a hub were seized from 11751 Zelzah Avenue,

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

049

U.S. Department of Justice
Drug Enforcement Administration

| | REPORT OF INVESTIGATION | 3. File Title |
|---|---|---|
| | *(Continuation)* | Jordana LEEDS |
| 4. Page 4 of 5 | | 6. Date Prepared 04-17-2013 |

Granada Hills, California, on April 16, 2013, pursuant to a Federal Search Warrant. SA De Leo took custody of the exhibit and turned the exhibit over to Beverly Hills Police Department Detective David Williams for analysis.

5.  <u>Exhibit N-1205</u> – financial documents for Andrew KRAMER and VICTORY FINANCIAL were seized from 11751 Zelzah Avenue, Granada Hills, California, on April 16, 2013, pursuant to a Federal Search Warrant. IRS SAs Leonard and Castro seized financial documents for Andrew KRAMER and VICTORY FINANCIAL. The financial documents were labeled Exhibit N-1205. IRS SA Leonard and Castro maintained care, control and custody of the documents. On April 18, 2013, IRS SAs Leonard and Lee turned Exhibit N-1205 to SA De Leo for processing. SA De Leo, as witnessed by SA Lydia Kelly, processed the Exhibit as per the Agent's Manual and turned the Exhibit over to the Los Angeles Field Division Non-Drug Evidence Custodian for safekeeping.

**WITNESSES**

**DEA Southwest Border 4:** GS Amador Martinez, SAs Jeff Cottet, Craig Wiggins, Robert Walts, Jeff Gunter, Wesley Bedford, Lydia Kelly, Shane Martineau, Jesse Odum, TFO Phil Swinford and TFO Frank Panza.

**DEA Southwest Border 2:** Det. Gene Johns, SAs Norm Tobias and Kevin Burrell, TFOs John Burt, Andrew Vestey, Joshua McAlister, Juan Rodriguez, Joseph Carrillo, Mark Gutierrez and Roman Gomez.

**DEA Orange County:** SAs Steve Paris, Mark Campbell, Sean Hall, Paul Schwarz, David Mertus, Ryan Dorsey and Aubree Fierro.

**Bevery Hills Police Department:** Sgt. Publicker, Officer Dufour, Detectives Hyon, Chilson, Mendoza, Coulter, and Crime Scene Tech Fogg.

**IRS Criminal Investigations:** SAs Patrick Leonard, Castro, Damen Slotsve, and Andrew Lee.

**INDEXING**

1.  KRAMER, Patrick ▓▓▓▓▓▓▓▓▓▓

2.  KRAMER, Rosalinda ▓▓▓▓▓▓▓▓▓▓

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

050

U.S. Department of Justice
Drug Enforcement Administration

| | |
|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | [redacted]  [redacted]<br>3. File Title<br>Jordana LEEDS |
| 4.<br>Page  5  of  5<br>[redacted] | 6. Date Prepared<br>04-17-2013 |

3.   KRAMER, Stuart [redacted]

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

051

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
# RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable)

Rosalinda Kramer
11751 Zelzah Ave
Granada Hills, CA

FILE NO. RI-06-0113

G-DEP IDENTIFIER

FILE TITLE

DATE April 16, 2013

DIVISION/DISTRICT OFFICE

Los Angeles Field Div

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| Undetermined | U.S. Currency | Evidence |
| 1 | Dell XPS 420 # GTGHWH1 | " |
| 1 | Dell XPS 420 # J4CCWH1 | " |
| 1 | HP 6000 # 3CR0421454 | Evidence |
| | w/ Seagate External Drive #NA5G0DSA | " |
| | w/ USB Thumb Drive on Hub | " |
| misc | Documents : banking & financial | " |
| | Re: Victory Financial & A. Kramer | Evidence |
| | (7 envelopes & 4 binders) | Evidence |
| | —— Nothing Further —— | |

RECEIVED BY (Signature)

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)
James De Leo, Special Agent

NAME AND TITLE (Print or Type)
213-945-1043

DEA-12 (8-02) Previous editions obsolete

Electronic Form Version Designed in JetForm 5.2 Version

# Exhibit Six

**PFMC**
## Transaction Detail By Account
### January 1, 2000 through March 23, 2016

**$525,000 EXPENSES**                    TOTAL =

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | ADR Services, Inc | | | |
| Check | 11/11/2013 | 1151 | ADR Services, Inc | | | PFMC - 0171 |

| Type | Date | Num | | Name | Memo | Account |
|---|---|---|---|---|---|---|
| General Jou | 06/15/2013 | 12 | Ö | | | Due to/From Office |
| Check | 07/11/2013 | 1244 | | Weissman & Weissman | | PFMC - 0171 |
| Check | 07/30/2013 | 1087 | | Weissman & Weissman | INV # 3126  7/20/201 | PFMC - 0171 |
| Check | 08/22/2013 | 1092 | | Weissman & Weissman | August 10, 2  √ | PFMC - 0171 |
| Check | 08/22/2013 | 1147 | | Weissman & Weissman | august 10 2013 Inv 3 | PFMC - 0171 |
| Check | 10/02/2013 | 1226 | | Weissman & Weissman | August 30 Invoice | PFMC - 0171 |
| Check | 10/14/2013 | 1221 | | Weissman & Weissman | | PFMC - 0171 |
| Check | 10/24/2013 | 1216 | | Weissman & Weissman | hold to clarify  √ | PFMC - 0171 |
| Check | 10/24/2013 | 1215 | | Weissman & Weissman | Inv 3355 | PFMC - 0171 |
| General Jou | 10/24/2013 | 3 | | Weissman & Weissman | VOID: For C  √ | PFMC - 0171 |
| Check | 12/11/2013 | 1191 | | Weissman & Weissman | partial payment | PFMC - 0171 |
| Check | 12/20/2013 | 1178 | | Weissman & Weissman | 11.20.2013 statement | PFMC - 0171 |
| Check | 01/14/2014 | 1152 | | Weissman & Weissman | through 12.30.2013 | PFMC - 0171 |
| Check | 04/11/2014 | 1295 | | Weissman & Weissman | 2/28/2014 Billing | PFMC - 0168 |
| Check | 05/16/2014 | 1300 | | Weissman & Weissman | Nevada Equity | PFMC - 0171 |
| Check | 07/01/2014 | 1307 | | Weissman & Weissman | -MULTIPLE- | PFMC - 0171 |
| Check | 08/12/2014 | 1309 | | Weissman & Weissman | RLK | PFMC - 0171 |
| Check | 10/21/2014 | 1327 | | Weissman & Weissman | | PFMC - 0171 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Check | ## | 4289 | Citibank-9256 | Gabbert? | 1075 · B of A - RLI ## |
| Check | 05/24/2013 | 1137 | Paul Gabbert, Atty | | PFMC - 0171 |
| Check | 10/14/2013 | 1220 | Vcheck | Inv. 9221 | 888-740-  PFMC - 0171 |
| Check | ## | 1213 | Fera Construction, Inc. | | PFMC - 0171 |
| | | | Inv. 13-0101 | | |

054

2:04 AM
03/23/16
Cash Basis

**PFMC**
**Transaction Detail By Account**
January 1, 2000 through March 23, 2016

$79,881.85

| | |
|---|---|
| | 2,875.00 |
| | 1,125.00 |
| | 4,000.00 |

er

| | |
|---|---|
| | 4,255.00 |
| | 1,040.00 |
| | 0.00 |
| | 4,930.00 |
| | 2,788.00 |
| | 7,690.00 |
| | 5,000.00 |
| | 3,830.00 |
| | 0.00 |
| | 5,000.00 |
| | 5,357.00 |
| | 2,162.85 |
| | 4,520.00 |
| | 645.00 |
| | 768.84 |
| | 1.16 |
| | 120.00 |
| | 48,107.85 |

| | |
|---|---|
| | 10,000.00 |
| | 15,000.00 |
| | 805.25 |
| | 1,968.75 |

$27,774                    ##

055

Exhibit Seven

KeyCite Blue Flag – Appeal Notification
Appeal Filed by  USA v. MARIN ALLIANCE FOR MEDICAL MAR,
ET AL,  9th Cir.,  December 21, 2015

2015 WL 6123062
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

United States of America, Plaintiff,

v.

Marin Alliance for Medical Marijuana,
and Lynette Shaw, Defendants.

No. C 98-00086 CRB
|
Signed 10/19/2015

**Synopsis**
**Background:** Medical marijuana dispensary brought action, seeking to dissolve a permanent injunction prohibiting it from dispensing marijuana.

**[Holding:]** The District Court, Charles R. Breyer, J., held that Department of Justice was precluded from enforcing permanent injunction prohibiting medical marijuana dispensary from distributing marijuana to extent dispensary complied with California law.

Motion denied.

West Headnotes (6)

**[1]**     **Injunction**
           ⬥ Injunctions to enforce laws and regulations in general
When a court of equity exercises its discretion in determining whether an injunction should be means of enforcing a statute, it may not consider the advantages and disadvantages of nonenforcement of the statute, but only the advantages and disadvantages of employing the extraordinary remedy of injunction over the other available methods of enforcement.

Cases that cite this headnote

**[2]**     **Injunction**
           ⬥ Injunctions to enforce laws and regulations in general
In determining whether an injunction should be the means of enforcing a statute instead of another permissible means of enforcement, to the extent a district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms.

Cases that cite this headnote

**[3]**     **Injunction**
           ⬥ Grounds in general; multiple factors
At the initial stage, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief, by demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Cases that cite this headnote

**[4]**     **Injunction**
           ⬥ Specificity, vagueness, overbreadth, and narrowly-tailored relief
           **Injunction**
           ⬥ Scope and duration of relief
Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion.

Cases that cite this headnote

**[5]**     **Injunction**
           ⬥ Grounds in general

057

**Injunction**
&#x261e; Grounds or cause in general

**Injunction**
&#x261e; Evidence and affidavits

Typically, a party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction; that requirement presumes that the moving party could have appealed the grant of the injunction but chose not to do so, and thus that a subsequent challenge to the injunctive relief must rest on grounds that could not have been raised before.

Cases that cite this headnote

[6] **Injunction**
&#x261e; Hospitals, pharmacies, and health care professionals

Provision of Appropriations Act prohibiting Department of Justice (DOJ) from using funds to prevent states from implementing their own state laws that authorize the use, distribution, possession, or cultivation of medical marijuana precluded Department of Justice (DOJ) from enforcing permanent inunction, · prohibiting medical marijuana dispensary from distributing marijuana, to the extent that the dispensary complied with California law exempting from state criminal prosecution physicians, patients, and primary caregivers who possess or cultivate marijuana for medicinal purpose with a physician's recommendation. Pub. L. 114–53, § 103, 129 Stat. 502 (2015); West's Ann.Cal.Health & Safety Code § 11362.5.

1 Cases that cite this headnote

**Attorneys and Law Firms**

Kathryn L. Wyer, Washington, DC, for Plaintiff

Greg Anton, Lagunitas, CA, for Defendant

## ORDER RE MOTION TO DISSOLVE PERMANENT INJUNCTION

CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE

**\*1** The Marin Alliance for Medical Marijuana ("MAMM") asks this Court to dissolve a permanent injunction that this Court entered against it in 2002. See Mot. Dissolve Perm. Inj. (dkt. 262). Having reviewed the filings and accompanying papers, the Court DENIES the motion to dissolve the injunction. However, the enforcement of said injunction must be consistent with the new directive of Congress in Section 538 of the Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. 113–235, 128 Stat. 2130 (2014) ("2015 Appropriations Act"),[1] which prohibits the Department of Justice from expending any funds in connection with the enforcement of any law that interferes with California's ability to "implement [its] own State law[ ] that authorize[s] the use, distribution, possession, or cultivation of medical marijuana." See 2015 Appropriations Act § 538. As long as Congress precludes the Department of Justice from expending funds in this manner, the permanent injunction will only be enforced against MAMM insofar as that organization is in violation of California "State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." See id.; Fed. R. Civ. P. 60(b).

## I. BACKGROUND

As a matter of federal law, marijuana is prohibited as a Schedule I drug under the Controlled Substances Act ("CSA"). 21 U.S.C. § 812(c). But under state law, California's Compassionate Use Act of 1996 exempted from state criminal prosecution physicians, patients, and primary caregivers who possess or cultivate marijuana for medicinal purpose with a physician's recommendation. See Cal. Health and Safety Code Ann. §§ 11362.5 ("Compassionate Use Act"). The Compassionate Use Act was passed in a state-wide November 1996 referendum with the support of 56% of voters. United States v. Cannabis Cultivators Club, 5 F.Supp.2d 1086, 1091 (N.D.Cal.1998) (dkt. 61).

This Court has a lengthy history with this defendant on these issues. In 1998, the Government filed an action seeking declaratory and injunctive relief against MAMM (and five other medical marijuana dispensaries, all of which were deemed related and reassigned to this Court) on the grounds

058

that it was engaged in the distribution of marijuana in violation of the CSA. See 21 U.S.C. §§ 801 et seq. At that time, the City and County of San Francisco and other cities in which the related defendants are located, acting as amici curiae, "urge[d] the Court not to adopt the injunctive relief sought by the federal government because of the adverse consequences an injunction would have on the public health of their citizens." Cannabis Cultivators Club, 5 F.Supp.2d at 1094. But this Court determined that the preliminary injunction "must be granted" on the grounds of there being "a strong likelihood that defendants' conduct violates the Controlled Substances Act, [and thus] the Supremacy Clause of the United States Constitution requires that the Court enjoin further violations of the Act." Cannabis Cultivators Club, 5 F.Supp.2d at 1091, 1105.

*2 [1] [2] Thereafter, defendants openly violated this Court's preliminary injunction, which prompted the Government to initiate contempt proceedings. In the litigation that ensued, defendants sought to modify the preliminary injunction to exclude distributions of marijuana that were medically necessary, which this Court denied on October 16, 1998. See Order (dkt. 174). The Ninth Circuit reversed this Court in an interlocutory appeal of that decision, United States v. Oakland Cannabis Buyers' Co-Op ("OCBC"), 190 F.3d 1109, 1115 (9th Cir.1999), and in turn were reversed by the Supreme Court, United States v. OCBC, 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). There, the Supreme Court held that there is no medical necessity exception to the CSA's prohibition on the manufacture and distribution of marijuana. OCBC, 532 U.S. at 486, 121 S.Ct. 1711. In so doing, the Supreme Court explained that even when a district court is exercising its equity jurisdiction in the course of fashioning an injunction, its usual discretion to "consider the necessities of the public interest" was "displaced" by the "judgment of Congress, deliberately expressed in legislation." Id. at 496–98, 121 S.Ct. 1711. As applied here, then, the district court may weigh whether an injunction should be the means of enforcing the statute instead of another permissible means of enforcement —"not whether enforcement is preferable to no enforcement at all." Id. at 497–98, 121 S.Ct. 1711. "Consequently, when a court of equity exercises its discretion, it may not consider the advantages and disadvantages of nonenforcement of the statute, but only the advantages and disadvantages of 'employing the extraordinary remedy of injunction' over the other available methods of enforcement." Id. at 498, 121 S.Ct. 1711 (quoting Weinberger v. Romero–Barcelo, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). "To

the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms." Id.

Following the Supreme Court's ruling, the OCBC defendants moved to dissolve their preliminary injunctions in this Court and the Government moved for summary judgment and for a permanent injunction. See Mem. and Order May 3, 2002 (dkt. 229). This Court granted the Government's motion for summary judgment and, after the defendants declined to reassure this Court that they would not resume their distribution activity, entered a permanent injunction on June 10, 2002. See United States v. Cannabis Cultivator's Club, No. 98–85 et al., 2002 WL 1310460 (June 10, 2002); Mem. and Order June 20, 2002 (dkt. 247); Permanent Injunction (dkt. 248).

For the next near-decade, defendant MAMM continued to operate a medical marijuana dispensary out of its same location. The United States Attorney's Office waited until September 2011 to send cease and desist letters to MAMM and other medical marijuana dispensaries in the area. The Mayor of the Town of Fairfax responded with a series of letters to United States Attorney Melinda Haag stating that MAMM was operating as a model business in careful compliance with its local Use Permit in a "cooperative and collaborative relationship" with the community. See Bragman Letter October 2011, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 2. The Mayor explained that Marin has "the highest documented rate of breast cancer in the United States," and Marin's breast cancer patients have especially benefitted from MAMM. Id. He asserted that "elimination of this vital community access facility would effectively prevent [patients] from obtaining medical marijuana," with the "paradoxical impact of increasing public safety concerns for local law enforcement" if the market were pushed underground. Id. According to the letter, the "record clearly establishes that [MAMM] has been in clear and unambiguous compliance with existing state and local laws providing for the medical use of marijuana." Id. To avoid "needlessly increas[ing] the suffering of hundreds of patients who have come to rely on [MAMM] as a safe access point for medical marijuana," he urged Haag "to exercise [her] discretion to reconsider [her] office's evaluation of the legal viability of [MAMM] in light of its documented record of lawful operation and benefit to the community." Id. [2]

059

*3 The U.S. Attorney's Office nevertheless pressed its forfeiture action. In response, MAMM and three other dispensaries filed suit seeking to enjoin the Government from taking any enforcement action against them. See Am. Compl. (dkt. 21), Marin Alliance For Med. Marijuana v. Holder, 866 F.Supp.2d 1142 (N.D.Cal.2011) (No. 11–5349 SBA). The court denied the Plaintiffs' motion for a temporary restraining order, denied their motion for a preliminary injunction, and granted the Government's motion to dismiss. See Marin Alliance, 866 F.Supp.2d 1142 (N.D.Cal.2011); Marin Alliance, No. 11–5349, 2012 WL 2862608 (N.D.Cal.July 11, 2012).

Seven days after the initial complaint in that litigation was filed, the Government initiated a forfeiture action against the property on which MAMM operated. See Compl., United States v. Real Property Located at 6 School Street, Fairfax, California, No. 11–cv–5596 (filed Nov. 18, 2011). The forfeiture complaint cited this Court's permanent injunction and MAMM's violation of the CSA given that it was operating a medical marijuana dispensary. See id. The litigation was resolved in a settlement with the property owner, who agreed no longer to rent the property to MAMM in exchange for the Government's agreement not to seize the property. See Stipulation and Order ¶ 4 (dkt. 18), No. 11–5596.

Then the legal and factual circumstances changed. Section 538 of the 2015 Appropriations Act—which governed Treasury Funds for the fiscal year ending September 30, 2015, and which has now been extended until December 11, 2015, by the 2016 Appropriations Act, Pub. L. 114–53, § 103, 129 Stat. 502 (2015)—states as follows:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of...California [and 32 other states], to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

2015 Appropriations Act § 538. MAMM argues that the injunction is now unenforceable under Section 538 and should therefore be dissolved.

## II. LEGAL STANDARD

[3]  [4]  Federal Rule of Civil Procedure 60 provides for relief from a judgment or order under the following circumstances, as relevant here:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> ...

> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

> (6) any other reason that justifies relief.

[5] Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is counterbalanced against "the strong public interest in the timeliness and finality of judgments." See Phelps v. Alameida, 569 F.3d 1120, 1135 (9th Cir.2009). Typically, "[a] party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." Alto v. Black, 738 F.3d 1111, 1120 (9th Cir.2013) (quoting Sharp v. Weston, 233 F.3d 1166, 1170 (9th Cir.2000)). "That requirement presumes that the moving party could have appealed the grant of the injunction but chose not to do so, and thus that a subsequent challenge to the injunctive relief must rest on grounds that could not have been raised before." Id. (citing Transgo, Inc. v. Ajac Transmission Parts Corp., 911 F.2d 363, 365 (9th Cir.1990)). In order to meet their burden under Rule 60(b), MAMM would have to establish that Section 538 represents a significant change in the law that "renders continued enforcement [of the injunction] detrimental to the public interest." Horne v. Flores, 557 U.S. 433, 447, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (as cited and characterized by the Government's supplemental brief (dkt. 272) at 12).[3]

## III. DISCUSSION

*4 [6] The plain reading of the text of Section 538 forbids the Department of Justice from enforcing this injunction against MAMM to the extent that MAMM operates in compliance with California law. Although the parties argued at length whether equitable concerns—namely the harmful effects engendered by MAMM's closure and the demonstrable lack of harm that resulted from the 14 years in

060

which it operated—support the dissolution or modification of the injunction, these arguments can be dismissed out of hand. MAMM's approach stems from Rule 60(b)(5)'s provision that the court may grant relief from a final judgment when "applying it prospectively is no longer equitable." See Fed. R. Civ. P. 60(b)(5). But this Court continues to be bound by OCBC's prohibition on conducting public policy balancing in determining whether to enjoin behavior that violates the CSA. See OCBC, 532 U.S. at 496–98, 121 S.Ct. 1711. "To the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms." Id. at 498, 121 S.Ct. 1711.

In other words, this Court is not in a position to "override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." See id. at 497, 121 S.Ct. 1711. On the contrary: This Court's only task is to interpret and apply Congress's policy choices, as articulated in its legislation. And in this instance, Congress dictated in Section 538 that it intended to prohibit the Department of Justice from expending any funds in connection with the enforcement of any law that interferes with California's ability to "implement [its] own State law[ ] that authorize[s] the use, distribution, possession, or cultivation of medical marijuana." 2015 Appropriations Act § 538. The CSA remains in place, and this Court intends to enforce it to the full extent that Congress has allowed in Section 538, that is, with regard to any medical marijuana not in full compliance with "State law [ ] that authorize[s] the use, distribution, possession, or cultivation of medical marijuana." Id.

The Government's contrary reading so tortures the plain meaning of the statute that it must be quoted to ensure credible articulation. Specifically, the Government contends that Section 538 proscribes

> "the use of appropriated funds to 'prevent' states from 'implementing their own' medical marijuana laws. Such prohibited uses could include, for example, federal actions that interfered with a state's promulgation of regulations implementing its statutory provisions, or with its establishment of a state licensing scheme. However, such uses do not include CSA enforcement actions against individuals or private

businesses because such actions do not prevent a State from implementing its own laws....[T]here is no evidence in the record that California has been impeded in any way in implementing its own State laws during the thirteen years the permanent injunction at issue has been in effect."

Gov't Supp. Brief (dkt. 272) at 6 & n.2. Where to start? An initial matter, perhaps, is the contradiction inherent in the Government's assertion that enjoining any one medical marijuana dispensary—here, MAMM—does not impede California's implementation of its medical marijuana laws. The Government appears to mean that, in the grand scheme of things, shutting down any given dispensary may be presumed to have such a minimal effect on California's medical marijuana regime that it does not "prevent" California from "implementing" its State law. But if anything, the Government's reliance on the operation of other medical marijuana dispensaries to justify enjoining this dispensary is an a fortiori reason why the injunction is inappropriate in its present form.

Moreover, this drop-in-the-bucket argument is at odds with fundamental notions of the rule of law. It has never been a legal principle than an otherwise impermissible government intrusion can be countenanced because any one defendant is a small piece of the legal landscape. Section 538 either allows the DOJ to shut down medical marijuana dispensaries for violating the CSA, or it does not. It contains no limitation that requires a State to implement its medical marijuana laws in one way or not another—via a centralized state dispensary, for example, or through highly regulated local private dispensaries—before Section 538's prohibition is triggered. Rather, Section 538 takes as a given that States implement their medical marijuana laws in the ways they see fit. California has chosen its way: allowing private dispensaries to operate under strict state and local regulation. California's Compassionate Use Act states that its purpose is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician..." Cal. Health & Safety Code § 11362.5(A). In the years following the passage of the Compassionate Use Act, the California Legislature enacted extensive legislation implementing and regulating the medical marijuana regime. The legislature established a detailed process through which patients receive permits from county health departments. See Cal. Health & Safety

061

Code Ann. §§ 11362.7–11362.83 (West 2015). California law specifies that medical marijuana dispensaries must be located outside a 600-foot radius of any school and empowers local authorities to adopt additional restrictions. See id. at § 11362.768. It also requires the State Attorney General to "develop and adopt appropriate guidelines to ensure the security and nondiversion of marijuana grown for medical use" by qualified patients. Id. at § 11362.81. These extensive Guidelines explain a detailed regime in which qualified, licensed patients may obtain medical marijuana from private dispensaries operating as nonprofit collectives or cooperatives under extensive licensing requirements for business incorporation, record keeping, taxation, verification, security, and the like. See Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use at Part IV (2008), http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf. The Town of Fairfax, operating under its authority in Cal. Health & Safety Code § 11362.768, added its own extensive local permitting requirements, which mandate that a medical marijuana dispensary comply with 72 conditions regulating every conceivable aspect of the time, place, and manner of the dispensary's operation. See Amended Conditions of Approval for the Marin Alliance Medicinal Marijuana Dispensary Use Permit Number 97-UP-2, Approved on August 15, 2002, MAMM Supplemental Brief (dkt. 271) at Ex. 11.

**\*5** In sum, this intricate legal framework "implements" California's medical marijuana laws by allowing licensed patients to obtain medical marijuana from highly regulated non-profit cooperative dispensaries. Against this backdrop, Section 538 states that "None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of...California [and 32 other states], to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." 2015 Appropriations Act § 538. To "implement," of course, means to "carry out, accomplish, to give practical effect to and ensure of actual fulfillment by concrete measures." Merriam-Webster Dictionary (2015). It defies language and logic for the Government to argue that it does not "prevent" California from "implementing" its medical marijuana laws by shutting down these same heavily-regulated medical marijuana dispensaries; whether it shuts down one, some, or all, the difference is of degree, not of kind. And, contrary to the Government's representation, the record here does support a finding that Californians' access to legal medical marijuana has been substantively impeded by the closing of dispensaries, and the closing of MAMM in

particular. See Bragman Letter December 2014, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 3 ("Since the departure of the Marin Alliance, the County of Marin, with a population of over 250,000, has not had a legal medical cannabis dispensary to serve the local patient population. Marin County has exceptionally high rates of breast and prostate cancer. Those patient groups both benefit from proven medical benefits of cannabis but now are unable to have safe access in their local community.").

Given that the statutory language of Section 538 is plain on its face, the Court "must enforce it according to its terms," see King v. Burwell, ——U.S. ——, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015), and need not consider the legislative history. But it comes as no surprise to the Court that the legislative history of Section 538 points in only one direction: away from the counterintuitive and opportunistic meaning that the DOJ seeks to ascribe to it now. Without exception, it appears that both the supporters and opponents of Section 538 in Congress at least agreed that the words mean what they appear to mean. See, e.g., 60 Cong. Rec. 82, H4914, H4984 (daily ed. May 29, 2014) (statement of Cosponsor Rep. Dina Titus) ("[T]his commonsense amendment simply ensures that patients do not have to live in fear when following the laws of their States and the recommendations of their doctors. Physicians in those States will not be prosecuted for prescribing the substance, and local businesses will not be shut down for dispensing the same.") (emphasis added); 160 Cong. Rec. 82, H4914, H4984 (daily ed. May 29, 2014) (statement of Rep. Alcee Hastings) ("Specifically, the bill is a bipartisan appropriations measure that looks to prohibit the DEA from spending funds to arrest state-licensed medical marijuana patients and providers. Many of my colleagues and their constituencies agree that patients who are allowed to purchase and consume medical marijuana in their respective states should not be punished by the federal government.") (emphasis added); 160 Cong. Rec. 82, H4914, H4984 (daily ed. May 29, 2014) (statement of Lead Sponsor Rep. Sam Farr) ("This is essentially saying, look, if you are following State law, you are a legal resident doing your business under State law, the Feds just can't come in and bust you."); 160 Cong. Rec. 70, H4020, H4053–55 (daily ed. May 9, 2014) (statement of Lead Sponsor Dana Rohrabacher) ("The harassment from the [DEA] is something that should not be tolerated in the land of the free. Businesspeople who are licensed and certified to provide doctor recommended medicine within their own States have seen their businesses locked down, their assets seized, their customers driven away,

062

and their financial lives ruined by very, very aggressive and energetic Federal law enforcers enforcing a law...Instead of continuing to finance this repressive and expensive approach, we should be willing to allow patients and small businesses to follow their doctors' advice under the watchful eye of State law enforcement and regulators...") (emphasis added); 160 Cong. Rec. 82, H4914, H4983–84 (daily ed. May 29, 2014) (statement of Rep. John Fleming in opposition) ("What this amendment would do is, it wouldn't change the law, it would just make it difficult, if not impossible, for the DEA and [DOJ] to enforce the law.").

In fact, the members of Congress who drafted Section 538 had the opportunity to respond to the very same argument that the DOJ advances here. In a letter to Attorney General Eric Holder on April 8, 2015, Congressmen Dana Rohrabacher and Sam Farr responded as follows to "recent statements indicating that the [DOJ] does not believe a spending restriction designed to protect [the medical marijuana laws of 35 states] applies to specific ongoing cases against individuals and businesses engaged in medical marijuana activity":

> *6 As the authors of the provision in question, we write to inform you that this interpretation of our amendment is emphatically wrong. Rest assured, the purpose of our amendment was to prevent the Department from wasting its limited law enforcement resources on prosecutions and asset forfeiture actions against medical marijuana patients and providers, including businesses that operate legally under state law. In fact, a close look at the Congressional Record of the floor debate of the amendment clearly illustrates the intent of those who sponsored and supported this measure. Even those who argued against the amendment agreed with the proponents' interpretation of their amendment.

Letter to Attorney General Holder, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 7. Having no substantive response or evidence, the Government simply asserts that it "need not delve into the legislative history here" because the meaning of the statute is clearly in its favor. The Court disagrees.

To the extent the Government cites a few cases addressing Section 538, none are analogous or even particularly favorable to the Government's position. In each one of the cases that the Government cites, the individual or organization at issue was not operating in compliance with State law—in which case this Court agrees that Section 538 does not apply by its own terms. See, e.g., United States v. Tote, No. 1:14–mj–212, 2015 WL 3732010 (E.D.Cal. June 12, 2015) (rejecting a criminal defendant's argument that his criminal prosecution for driving under the influence of marijuana on federal land should be dismissed under Section 538 because Section 538 did not repeal federal laws criminalizing the possession of marijuana and "Defendant was using marijuana in a manner that violates California law"); United States v. Firestack–Harvey, No. 13–cr–24, 2015 WL 3533222 (E.D.Wash. June 4, 2015) (rejecting the applicability of Section 538 to a criminal prosecution of three individuals because the conduct at issue involved operating a for-profit marijuana business that was not authorized by Washington state law); United States v. Silkeutsabay, No. 13–cr–140, 2015 WL 2376170 (E.D.Wash. May 18, 2015) (concluding that Section 538 was "inapplicable to prosecution of Defendants' case where over 1000 marijuana plants were seized—a number far in excess of that authorized under Washington's medical marijuana law"). A single Ninth Circuit case held that a prohibition on the deduction of expenses in connection with illegal drug trafficking applied to bar a medical marijuana dispensary from deducting its business expenses to eliminate a tax deficiency. See Olive v. Commissioner of Internal Revenue, 792 F.3d 1146 (9th Cir.2015). In that separate context, the Ninth Circuit explained that "Section 538 does not apply" because the government was "enforcing only a tax, which does not prevent people from using, distributing, possessing, or cultivating marijuana in California. Enforcing these laws might make it more costly to run a dispensary, but it does not change whether these activities are authorized in the state." See id. at 1150.

## IV. CONCLUSION

For the foregoing reasons, as long as Congress precludes the Department of Justice from expending funds in the manner proscribed by Section 538, the permanent injunction will only be enforced against MAMM insofar as that organization is in violation of California "State laws that authorize the use, distribution, possession, or cultivation of medical marijuana."[4] See 2015 Appropriations Act § 538; Fed. R. Civ. P. 60(b).

063

**All Citations**

**\*7  IT IS SO ORDERED.**

--- F.Supp.3d ----, 2015 WL 6123062

Footnotes

1       Congress extended the force of Section 538 by passing the Continuing Appropriations Act of 2016 ("2016 Appropriations
        Act"), Pub. L. 114–53, § 103, 129 Stat. 502 (2015).

2       A follow-up letter from the Mayor in December 2014 stated his belief that "changed circumstances justify reconsideration
        of the District Court's injunction," particularly the struggles of Marin patients who were left without a legal medical cannabis
        dispensary, the loss of tax revenues to the town, the uptick of drug-related arrests, and the change in the social and legal
        perception of medical marijuana. See Bragman Letter Dec. 2014, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm.
        Injunction (dkt. 262-3) at Ex. 3.

3       At the initial stage, " 'a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such
        relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as
        monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between
        the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by
        a permanent injunction.' " Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156–57, 130 S.Ct. 2743, 177 L.Ed.2d
        461 (2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).
        "An injunction should issue only if the traditional four-factor test is satisfied." Id. at 157, 130 S.Ct. 2743 (citing Winter v.
        Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 380–82, 172 L.Ed.2d 249 (2008)). "It is not enough
        for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should not
        issue; rather, a court must determine that an injunction should issue under the traditional four-factor test set out above."
        Id. at 158, 130 S.Ct. 2743.

        Even if a Plaintiff survives this inquiry, "[i]njunctive relief must be tailored to remedy the specific harm alleged, and an
        overbroad preliminary injunction is an abuse of discretion." Natural Resources Defense Coun cil, Inc. v. Winter, 508
        F.3d 885, 886 (9th Cir.2007) (later litigation reversed on other grounds by Winter, 555 U.S. at 12, 129 S.Ct. 365).

4       To the Court's recollection, the Government has yet to allege or even suggest that MAMM was at any time operating in
        violation of state law. The only evidence in the record on this point is to the contrary: a letter from the Mayor of Fairfax to
        United States Attorney Melinda Haag states that "Based upon its satisfaction of the scores of conditions in the Use Permit
        issued by the Town of Fairfax, the record clearly establishes that the Marin Alliance has been in clear and unambiguous
        compliance with existing state and local laws providing for the medical use of marijuana." See Bragman Letter October
        2011, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 2; see also Bragman Letter
        December 2014, id. at Ex. 3 (same). Rather, the Government has taken the position that the injunction is justified solely
        because MAMM operates in contravention of the CSA. Whether MAMM in fact operates in compliance with California
        state law is not before the Court at this time.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

064

| | |
|---|---|
| 1 | UNITED STATES OF AMERICA, ) | CASE NO.: CR 15-606-RGK |
| 2 | Plaintiff, ) |
| 3 | vs. ) | Declaration of Service |
| 4 | ) |
| 5 | ANDREW KRAMER, ) |
| 6 | Defendant. ) |

```
 1   UNITED STATES OF AMERICA,   )     CASE NO.: CR 15-606-RGK
 2            Plaintiff,         )
                                 )     Declaration of Service
 3   vs.                         )
 4                               )
     ANDREW KRAMER,              )
 5                               )
              Defendant.         )
 6                               )
 7   _____)
     ROSALINDA KRAMER,           )
 8   STUART KRAMER, M.D., BLUE   )
     MOUNTAIN MANAGEMENT         )
 9   AND MARKETING, INC.,        )
     PRIVATE FUNDING             )
10   MANAGEMENT, INC.,           )
                                 )
11            Petitioners.       )
12   _____)
```

13    I, Thomas P. Sleisenger, am over the age of 18 and not a part to the within action. My business address is 1901 Avenue of the Stars, Suite 615, Los Angeles, California 90067.

14    On March 31, 2016, I served the foregoing documents described as **Exhibits in Support of Petition For Ancillary Hearing** on the interested parties in the above

15    entitled action by CM/ECF filing, electronic mail, U.S. mail and/or personal delivery as follows:

16

17    Jonathan Galatzan
      Assistant United States Attorney
      Asset Forfeiture Section

18    United States Attorney's Office
      312 North Spring Street, 14th Floor

19    Los Angeles, California 90012

20    Jason A. Savlov
      RCO Legal, P.S.

21    2121 Alton Parkway, Suite 110
      Irvine, CA 92606

22

23    I declare under penalty of perjury that the foregoing is true and correct.

24    Executed on March 31, 2016, at Los Angeles, California.

25

26                          THOMAS P. SLEISENGER

27

28