EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JONATHAN GALATZAN
California Bar No. 190414
Assistant United States Attorney
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2727
     Facsimile: (213) 894-7177
     E-mail:  Jonathan.Galatzan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 15-00606-RGK |
| Plaintiff, | |
| v. | **GOVERNMENT'S BRIEF RE: ANCILLARY PROCEEDING** |
| ANDREW KRAMER, | Hearing Date:   July 18, 2016 |
| Defendant. | Hearing Time:   10:00 a.m. |
| | Courtroom:   850 |
| | Honorable R. Garv Klausner |

/ /

/ /

/ /

/ /

/ /

/ /

/ /

1

**TABLE OF CONTENTS**

2

DESCRIPTION                                                                                           PAGE

3

TABLE OF AUTHORITIES .................................................................................................iii

4

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

5

I.     INTRODUCTION .......................................................................................................1

6

II.    PURPOSE OF ANCILLARY PROCEEDING .........................................................2

7

III.   CHIMINEAS AND HYDE PARK PROPERTIES...................................................3

8

9

A.     None of the petitioners has ever been an owner of the Chimineas or
       Hyde Park Properties.......................................................................................4

10

       1.     **Petitioners cannot prove the existence of a constructive
              trust by clear and convincing evidence**...........................................5

11

12

       2.     **Petitioners cannot prove the existence of a resulting trust
              by clear and convincing evidence** ...................................................5

13

       3.     **To the extent that Petitioners made mortgage payments or
              paid for upkeep of the Properties, they are merely
              unsecured creditors and not bona fide purchasers pursuant
              to § 853** ...............................................................................................6

14

15

IV.    FOOTHILL PROPERTY .............................................................................................7

16

17

A.     Petitioners cannot prove the creation of a constructive trust by clear
       and convincing evidence .................................................................................8

18

B.     Petitioners cannot prove the creation of a resulting trust by clear and
       convincing evidence.........................................................................................8

19

20

C.     If petitioners mad the payments they claim to have made, they are
       merely unsecured creditors and not bona fide purchasers pursuant to
       § 853..................................................................................................................9

21

22

D.     Petitioner Private Funding Management, Inc. was not a bona fide
       purchaser of the Foothill property pursuant to § 853....................................9

23

V.     CANTLAY PROPERTY..............................................................................................10

24

A.     Petitioners Rosalinda Kramer and Stuart Kramer have never been
       titled owners of the Cantlay property............................................................10

25

26

B.     Petitioner Anahi Gutierrez was not a bona fide purchaser of the
       Cantlay property pursuant to § 853 ..............................................................11

27

       1.     **Because petitioner Anahi Gutierrez gave no financial
              consideration for the Cantlay property, she is not a bona
              fide purchaser**...................................................................................11

28

1

## TABLE OF CONTENTS (CONTINUED)

2 DESCRIPTION                                                                                    PAGE

3
4     2.    **Even if petitioner Anahi Gutierrez made the payments she claims to have made, she is merely an unsecured creditor and not a bona fide purchaser pursuant to § 853** ........................ 11

5 VI.    THE BRANCH FUNDS ................................................................................................ 11

6 VII.   $525,752.70 IN ESCROW FUNDS .......................................................................... 12

7 VIII.  $79,375.00 IN U.S. CURRENCY ............................................................................ 13

8 IX.    CONCLUSION ............................................................................................................ 14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                                                          <u>PAGE</u>

3

**Federal Cases**

4

*United States v. Andrews*,

5

    530 F.3d 1232 (10th Cir. 2008) ................................................................................ 3

6

*United States v. Armstrong*,

7

    2007 WL 7335173 (E.D. La. June 1, 2007) ............................................................... 7

8

*United States v. Boyle*,

    2009 WL 2391857 (N.D. Ill. July 24, 2009) ............................................................. 7

9

*United States v. Moses*,

10

    2012 WL 458494 (D. Vt. Feb. 10, 2012) ................................................................... 7

11

*United States v. Nava*,

12

    404 F.3d 1119 (9th Cir. 2005) ................................................................................... 4

13

*United States v. Negron-Torres*,

14

    876 F. Supp. 2d 1301 (M.D. FL 2012) ..................................................................... 7

15

*United States v. Nnaji*,

    2005 WL 1049905 (E.D. Mich. Apr. 22, 2005) ........................................................ 7

16

*United States v. Oregon*,

17

    671 F.3d 484 (4th Cir. 2012) ..................................................................................... 4

18

*United States v. Starcevic*,

19

    766 F. Supp. 2d 937 (S.D. Iowa 2011) ..................................................................... 7

20

*United States v. Wheaton*,

21

    2005 WL 2429792 (D. Me. 2005) ............................................................................. 7

22

/ /

23

/ /

24

25

26

27

28

# TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                           PAGE

**Federal Statutes and Rules**

21 U.S.C. § 841(a)(1) ............................................................................................... 2

21 U.S.C. § 841(b)(1)(A) ......................................................................................... 2

21 U.S.C. § 846 ......................................................................................................... 2

21 U.S.C. § 853 ................................................................................................. passim

21 U.S.C. § 853(n)(6)(A) ......................................................................................... 4

21 U.S.C. § 853(n)(6)(B) .................................................................................. passim

Fed. R. Crim. P. 32.2(c) ............................................................................................ 2

**State Cases**

*Kraus v. Willow Park Pub. Golf Course*,
    73 Cal. App. 3d 354 (1977) ............................................................................ 5

*Lezinsky v. Mason Malt Whisky Distilling Co.*,
    185 Cal. 240 (1921) ........................................................................................ 6

*Melendrez v. D & I Inv., Inc.*,
    127 Cal. App. 4th 1238 (2005) ...................................................................... 10

*Merco Constr. Eng'rs, Inc. v. Mun. Court*,
    21 Cal. 3d 724 (1978) .................................................................................... 12

**State Statutes**

Cal. Civ. Code § 2223 .............................................................................................. 5

Cal. Civ. Code § 2224 .............................................................................................. 5

Cal. Evid. Code § 662 .......................................................................................... 4, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

On November 3, 2015, a plea agreement was filed in this case  (Docket #7) in which, at paragraph 2, Defendant Andrew Kramer agreed to forfeit to the United States immediately all of his right, title and interest in: a) any property constituting, or derived from, any proceeds Defendant Kramer obtained, directly or indirectly, as the result of narcotics trafficking, that were subject to forfeiture pursuant to 21 U.S.C. § 853 including, but not limited, to all assets listed on Exhibit 2 to the plea agreement.  Kramer also admitted that the assets listed on Exhibit 2 were "the proceeds of narcotics trafficking as forth in the single count Information."

The assets listed on Exhibit 2 (hereinafter the "Forfeitable Assets") were:

-$171,980.37 Seized from Branch Banking and Trust Account XXXXXX9375 on June 14, 2013 (the "Branch Funds");

-$174,125.00 in U.S. Currency seized on April 16, 2013;

-$79,375.00 in U.S. Currency seized on April 16, 2013 (the "currency");

-$525,752.70 in Escrow Funds seized on February 13, 2014 (the "Escrow Funds");

-Real Property located at 11266 Chimineas Avenue, Porter Ranch, California (the "Chimineas Property");

-Real Property located at 620 W. Hyde Park Boulevard, Unit 114, Inglewood, California (the "Hyde Park Property");

-Real Property located at 13250-13252 Foothill Boulevard, Los Angeles, California (the "Foothill Property"); and

-Real Property located at 11552 Cantlay Street, North Hollywood, California (the "Cantlay Property")

On November 23, 2015, this Court accepted and entered Kramer's guilty plea. (Docket # 21.)

On January 29, 2016, Kramer was sentenced.  (Docket # 35.)  The sentence included entry of a Preliminary Order of Forfeiture ordering the forfeiture of Kramer's

right, title, and interest in the Forfeitable Assets to the United States.  In entering the Preliminary Order, this Court found that the Government had established the requisite nexus between the Forfeitable Assets and the offense described in the one count Information (21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)).  (Docket # 36.)

In this ancillary proceeding, petitioners Rosalinda Kramer, Stuart Kramer, Blue Mountain Management and Marketing, Inc., Private Funding Management, Inc., and Anahi Gutierrez contend that they, not Kramer are the true owners of all but one of the Forfeitable Assets[1]  and that the Forfeitable Assets do not represent the proceeds of narcotics trafficking, despite the Court's finding and Kramer's admission otherwise.

## II.    PURPOSE OF ANCILLARY PROCEEDING

Federal Rule of Criminal Procedure 32.2(c) allows third parties to file petitions asserting interests in property that has been found to be subject to forfeiture in a preliminary order of forfeiture.  The ancillary proceeding is governed procedurally by 21 U.S.C. § 853, which allows *only two* avenues of relief, requiring that a petitioner show by a preponderance of the evidence that either:

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the Preliminary Order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts that gave rise to the forfeiture of the property under section 853; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property that arose after the conduct that gave rise to the forfeiture, and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under section 853.

---

[1] Claimants herein are not claiming the $174,125.00 in U.S. Currency seized on April 16, 2013.

1   What a third party ancillary petitioner is *not* entitled to do is challenge the

2   underlying basis for the forfeiture.  "A third party has no right to challenge the

3   preliminary order's finding of forfeitability; rather, the third party is given an

4   opportunity during the ancillary proceeding to assert any ownership interest that would

5   require amendment of the order."  *United States v. Andrews*, 530 F.3d 1232, 1236–37

6   (10th Cir. 2008).  In other words, "(i)f the property really belongs to the third party, he

7   will prevail and recover his property whether there were defects in the criminal trial or

8   the forfeiture process or not; and if the property does not belong to the third party, such

9   defects in the finding of forfeitability are no concern of his."  *Id.* at 1237 (brackets,

10  ellipsis, and citation omitted).

11  **III.   CHIMINEAS AND HYDE PARK PROPERTIES**

12   Each of petitioners Rosalinda Kramer, Stuart Kramer and Private Funding

13  Management, Inc. claims all right, title, and interest in the Chimineas Property.

14  Rosalinda and Stuart Kramer each claims all right, title, and interest in the Hyde Park

15  Property.  (Petition at p. 3.)  In fact, none of them has an interest in either property as a

16  matter of law.

17   On November 19, 2012, a grant deed was recorded in the Los Angeles County

18  Recorder's office by which the Chimneas property was conveyed by Kramer to Nevada

19  External Properties, LLC (an entity owned and controlled by Kramer).  The Chimineas

20  property remains titled in the name of Nevada External Properties, LLC, which is not a

21  petitioner here, despite having received notice of its right to do so.

22   On November 19, 2012, a grant deed was recorded in the Los Angeles County

23  Recorder's office by which the Hyde Park property was conveyed by Kramer to Nevada

24  External Properties, LLC.  The Hyde Park property remains titled in the name of Nevada

25  External Properties, LLC.

26

27

28

3

### A.     None of the petitioners has ever been an owner of the Chimineas or Hyde Park Properties

The petitioners have not – and cannot – produce any evidence that any of them has ever been a titled owner of the Chimineas or Hyde Park Properties.  Nevertheless, three of the petitioners contend that they each hold all legal right, title, or interest in the properties, and that such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner(s) rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under section 853.  In a novel twist, petitioners argue alternatively that each is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under section 853.  In making these contentions, the petitioners argue not only that each of them owns the entirety of each claimed property, to the exclusion of others, creating an irreconcilable conflict of interest among them, but that each first acquired his or her claimed interest in each property both before *and* after the conduct giving rise to the forfeiture.  Obviously, both cannot be true, and the petitioners will be incapable of satisfying their burden of proof as to either.

Ownership of real property subject to forfeiture under federal law is determined according to the law of the state in which the real property is situated.  *See U.S. v. Nava*, 404 F.3d 1119, 1129 (9th Cir. 2005) and *U.S. v. Oregon*, 671 F.3d 484, 490 n.8 (4th Cir. 2012).

In California, the owner of the legal title to the property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing evidence.  *California Evidence Code section 662*.  Instead of focusing on the elements of the statutory affirmative innocent owner defense set out at 21 U.S.C.  § 853(n)(6)(A)) or (B), petitioners contend merely that their legal interest arose as a result

of a poorly-defined and legally baseless constructive or resulting trust, of which they claim to be beneficiaries.

### 1. Petitioners cannot prove the existence of a constructive trust by clear and convincing evidence

"A constructive trust is a remedial device primarily created to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled." *Kraus v. Willow Park Public Golf Course*, 73 Cal.App.3d. 354, 373 (1977).

There is no evidence that any of the petitioners were or would have been the legal owners of the Chimineas or Hyde Park Properties before or at the time of the commission of the acts that gave rise to the forfeiture of the properties under section 853. In California, a constructive trust is defined by two statutes, *California Civil Code* sections 2223 and 2224. Section 2223 states that one who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner, while section 2224 states that one who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. Both statutes require a wrongful act on the part of the constructive trustee for the creation of a constructive trust. In order to establish a constructive trust here, petitioners must prove an unlawful act on the part of Kramer against them sufficient to have created a trustee-beneficiary relationship whereby Kramer held those properties in trust for the benefit of petitioners. They have not – and cannot – begin to do so.

### 2. Petitioners cannot prove the existence of a resulting trust by clear and convincing evidence

Petitioners' argument that a resulting trust was created between the petitioners and Kramer at the time of the purchase of the Chimineas and Hyde Park Properties appears

1    to be based on their claims to have paid real estate taxes, made mortgage payments, and

2    paid costs of maintenance, repair and improvement relating to the Chimineas and Hyde

3    Park Properties.  Petitioners have produced no evidence, however, that there was any

4    agreement between them and Kramer at the time of his acquisition of the properties to

5    the effect that Kramer did not intend to take a beneficial interest in the properties when

6    he became the titled owner thereof.

7         "A resulting trust is not founded on the simple fact that money or property of one

8    has been used by another to purchase property. It is founded on a relationship between

9    the two, on the fact that as between them, ***consciously and intentionally***, one has

10   advanced the consideration wherewith to make a purchase in the name of the other. The

11   trust arises because it is the natural presumption in such a case that it was their intention

12   that the ostensible purchaser should acquire and hold the property for the one with whose

13   means it was acquired. But this presumption is rebuttable, and, if the evidence or the

14   circumstances show that such intention did not exist, no trust arises." *Lezinsky v. Mason*

15   *Malt Whisky Distilling Co.*, 185 Cal. 240, 251 (1921) (Emphasis added).

16        Here, there is no evidence suggesting either that anything other than Kramer's

17   drug money was used to purchase the properties, or that petitioners and Kramer

18   consciously and intentionally agreed that petitioners would advance consideration to

19   purchase the Chimineas and Hyde Park properties in Kramer's name, but that Andrew

20   Kramer would hold the properties for the petitioners.  There is no resulting trust.

21              **3.    To the extent that Petitioners made mortgage payments or paid for**

22                      **upkeep of the Properties, they are merely unsecured creditors and**

23                      **not bona fide purchasers pursuant to § 853**

24

25        Petitioners are expected to testify that they paid real estate taxes, made mortgage

26   payments, and paid costs of maintenance, or even a portion of the down payments for the

     Chimineas and Hyde Park Properties, but they have presented no evidence that any liens

27   or other encumbrances were ever filed or recorded against the Properties as a result of

28

1  these expenditures.  As a result, petitioners are merely unsecured creditors, not bona fide

2  purchasers for value within the meaning of § 853(n)(6)(B).  *See U.S. v. Negron-Torres*,

3  876 F.Supp.2d 1301, 1305 (M.D. FL 2012) (mother who claimed she loaned her son (the

4  defendant) a portion of the currency sought to be forfeited to buy auto parts and expected

5  to be repaid, was an unsecured creditor and lacked standing to contest the forfeiture);

6  *U.S. v. Armstrong*, 2007 WL 7335173, *4 (E.D. La. June 1, 2007) (person who loaned

7  money to defendant to buy real property had no basis to object to forfeiture of that

8  property if he did not acquire a secured lien; he is only an unsecured creditor); *U.S. v.*

9  *Moses*, 2012 WL 458494, *2 (D. Vt. Feb. 10, 2012) (defendant's father and ex-wife

10  lacked standing as unsecured creditors to contest forfeiture of property traceable to drug

11  proceeds, even if they loaned defendant money to improve the property);  *U.S. v. Boyle*,

12  2009 WL 2391857, *2-3 (N.D. Ill. July 24, 2009) (brother who invested purchase money

13  in defendant's property was merely an unsecured creditor); *U.S. v. Nnaji*, 2005 WL

14  1049905, *1 (E.D. Mich. Apr. 22, 2005) (persons who loaned money to defendant to

15  improve his home, but did not record a lien against the property, were unsecured

16  creditors without standing to contest the forfeiture); *U.S. v. Wheaton*, 2005 WL 2429792,

17  *7 (D. Me. 2005) (person who provided building materials for construction of residence

18  but did not record a lien is an unsecured creditor without standing to contest the

19  forfeiture); and *U.S. v. Starcevic*, 766 F.Supp. 2d 937, 940-941 (S.D. Iowa 2011)

20  (claimant who loaned money to defendant for mortgage payments on defendant's

21  property and for defendant's purchase of a truck but who was not on the deed to either

22  and never filed a lien or otherwise obtained a security interest in the real property or

23  truck is an unsecured creditor and not a bona fide purchaser pursuant to § 853.)

## IV.    FOOTHILL PROPERTY

25        Petitioners Rosalinda Kramer, Stuart Kramer, Private Funding Management, Inc.,

26  and Blue Mountain Management and Marketing, Inc. each claim all right, title, and

27  interest in the Foothill property.  (Petition at p. 5.)

28

On June 30, 2010, a quitclaim deed was recorded in the Los Angeles County Recorder's office by which the Foothill property was conveyed by Kramer to Private Funding Management, Inc.  The quitclaim deed recorded on June 30, 2010 indicated: "THE GRANTORS AND THE GRANTEES IN THIS CONVEYANCE ARE COMPRISED OF THE SAME PARTIES WHO CONTINUE TO HOLD THE SAME PROPORTIONATE INTEREST IN THE PROPERTY, R&T 11923 (D)."  As with the Chimineas and Hyde Park Properties, petitioners claim to be beneficiaries of a constructive or resulting trust.

A.    **Petitioners cannot prove the creation of a constructive trust by clear and convincing evidence**

As with the Chimineas and Hyde Park properties, there is no evidence that the petitioners were or would have been the legal owners of the Foothill property before or at the time of the commission of the acts that gave rise to the forfeiture of the property under section 853.  There is no evidence of any unlawful act on the part of Kramer against the petitioners that would have created a trustee-beneficiary relationship whereby Kramer held the property in trust for the benefit of petitioners.  Absent this evidence, petitioners cannot show a creation of a constructive trust that would entitle them to a legal interest in the Foothill property.

B.    **Petitioners cannot prove the creation of a resulting trust by clear and convincing evidence**

The claims by petitioners Rosalinda Kramer, Stuart Kramer, and Blue Mountain Management and Marketing, Inc. that each has a full ownership interest in the Foothill property arising from a resulting trust appears to be based on the assertion that Rosalinda and Stuart Kramer made payments to escrow in the amount of $194,000.00 (presumably towards the down payment), and paid property tax and "various Los Angeles service providers and vendors." (Petition at p. 5.)  As with the Chimineas and Hyde Park properties, petitioners have presented no evidence that there was an agreement between

them and Kramer at the time of his acquisition of the property that Kramer was not intended to take a beneficial interest in the property when he became the titled owner thereof.  There is no resulting trust.

**C.      If petitioners mad the payments they claim to have made, they are merely unsecured creditors and not bona fide purchasers pursuant to § 853**

Even if petitioners present evidence that they made payments towards the purchase of the Foothill property, or paid property taxes and service providers, they cannot present evidence that they filed or recorded any liens or other encumbrances against the property in connection with these purported expenditures.  As a result, petitioners are, at best, merely unsecured creditors, not bona fide purchasers for value within the meaning of § 853(n)(6)(B).

**D.      Petitioner Private Funding Management, Inc. was not a bona fide purchaser of the Foothill property pursuant to § 853**

As stated above, on June 30, 2010, a quitclaim deed was recorded in the Los Angeles County Recorder's office by which the Foothill property was conveyed by Kramer to Private Funding Management, Inc.  The quitclaim deed recorded on June 30, 2010 indicated:  "THE GRANTORS AND THE GRANTEES IN THIS CONVEYANCE ARE COMPRISED OF THE SAME PARTIES WHO CONTINUE TO HOLD THE SAME PROPORTIONATE INTEREST IN THE PROPERTY, R&T 11923 (D)." Petitioner Private Funding Management, Inc. has admitted in discovery responses that Kramer was a corporate officer of Private Funding Management, Inc. at the time the Foothill property was transferred to Private Funding Management, Inc., and that Private Funding Management, Inc. gave no financial consideration to Kramer in exchange for Kramer's transferring the Foothill property to Private Funding Management, Inc.  Under California law, a party that acquires an interest in real property is a bona fide purchaser on if "the buyer (1) purchase[s] the property in good faith for value, and (2) [had] no

knowledge or notice of the asserted rights of another." *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th  1238, 1251 (2013).  Here petitioner Private Funding Management, Inc. gave no financial consideration to Defendant Andrew Kramer in exchange for the Foothill property.  As a result, it cannot be considered a bona fide purchaser of that property, and thus is not an owner pursuant to § 853(n)(6)(B).

## V.      CANTLAY PROPERTY

Petitioners Rosalinda Kramer, Stuart Kramer, and Anahi Gutierrez each claim all right, title, and interest in the Cantlay property. (Petition of Rosalinda Kramer and Stuart Kramer at p. 6 and petition of Anahi Gutierrez at p. 1)

On June 30, 2010, a grant deed was recorded in the Los Angeles County Recorder's Office by which the Cantlay property was transferred by Kramer to Anahi Gutierrez.  The grant deed included the following information:  "THIS IS A BONAFIDE GIFT AND THE GRANTOR RECEIVED NOTHING IN RETURN, R&T 11911."

### A.      Petitioners Rosalinda Kramer and Stuart Kramer have never been titled owners of the Cantlay property

Despite the fact that petitioners Rosalinda Kramer and Stuart Kramer have no evidence that either of them have ever been titled owners of the Cantlay property, they each claim all legal right, title, or interest in the property.  As discussed at length above, in California, the holder of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing evidence. *California Evidence Code* section 662.  Not only do petitioners Rosalinda and Stuart Kramer lack clear and convincing evidence to rebut the presumption of ownership evidenced by the title, they lack any such evidence.

**B.      Petitioner Anahi Gutierrez was not a bona fide purchaser of the Cantlay property pursuant to § 853**

**1.      Because petitioner Anahi Gutierrez gave no financial consideration for the Cantlay property, she is not a bona fide purchaser**

As stated above, on June 30, 2010, a grant deed was recorded in the Los Angeles County Recorder's Office by which the Cantlay property was transferred by Kramer to Anahi Gutierrez.  The grant deed included the following statement:  "THIS IS A BONAFIDE GIFT AND THE GRANTOR RECEIVED NOTHING IN RETURN, R&T 11911."  For the reasons discussed above in connection with the Foothill Property, because petitioner Anahi Gutierrez gave no financial consideration to Kramer in exchange for the Cantlay property, she cannot be considered a bona fide purchaser of that property under California law, and thus is not an owner pursuant to § 853(n)(6)(B).

**2.      Even if petitioner Anahi Gutierrez made the payments she claims to have made, she is merely an unsecured creditor and not a bona fide purchaser pursuant to § 853**

If Anahi Gutierrez presents evidence that she paid money for improvements on the Cantlay Property or paid property taxes and other costs to improve and maintain the Cantlay Property, but presents no evidence that any liens or other encumbrances were filed or recorded against the property as a result of these expenditures, she is merely an unsecured creditor, and not a bona fide purchaser for value within the meaning of § 853(n)(6)(B).

## VI.    THE BRANCH FUNDS

Petitioners Rosalinda Kramer, Stuart Kramer, and Blue Mountain Management and Marketing, Inc. each claim all right, title, and interest in the $171,980.37 seized from Branch Banking and Trust account 9375, which account was held in the name of Blue Mountain Management and Marketing, Inc. (Petition at p. 6.)

11

1   As part of his guilty plea, Kramer admitted that the Branch Funds represented

2   proceeds of his narcotics trafficking.  By claiming that they each have all right, title, and

3   interest in the bank funds, Rosalinda Kramer, Stuart Kramer, and Blue Mountain

4   Management and Marketing, Inc. are contending that Kramer lied about the source of

5   those funds.  In addition to having to overcome Kramer's admission in this regard,

6   Rosalinda Kramer and Stuart Kramer must also explain how they have individual

7   ownership interests in money seized from a corporate bank account.

8   "It is fundamental, of course, that a 'corporation is a distinct legal entity separate

9   from its stockholders and from its officers.'  A corporation . . . in its corporate rights and

10  liabilities . . . is as distinct from the persons composing it, as an incorporated city is from

11  an inhabitant of that city."  *Merco Constr. Engineers, Inc. v. Municipal Court*, 21 Cal.3d

12  724, 729-730 (1978) (Citations omitted).  It is legally impossible for the assets of

13  petitioner Blue Mountain Management and Marketing, Inc. to *also* belong to petitioners

14  Rosalinda Kramer and Stuart Kramer.  The seized bank funds, which the Government

15  contends and Kramer admitted were actually proceeds of narcotics trafficking, cannot

16  belong to Blue Mountain Management and Marketing, Inc. *and* Rosalinda Kramer *and*

17  Stuart Kramer.

18  **VII.   $525,752.70 IN ESCROW FUNDS**

19  Petitioners Rosalinda Kramer and Stuart Kramer each claim all right, title, and

20  interest in $525,752.70 in escrow funds that were seized by the Government after the

21  sale of real property located at 3420 Cordova Drive, Calabasas, California. (Petition at p.

22  7.)  Petitioners base their claims not on the proposition that they ever owned the Cordova

23  Drive property (they did not), but instead on their claim that they paid attorney's fees

24  and mediation costs relating to litigation arising from the proposed sale of the property.

25  As stated above, if petitioners present evidence that they made such payments, unless

26  they filed or recorded liens or other encumbrances against the sales proceeds, petitioners

27  are merely unsecured creditors, not bona fide purchasers for value within the meaning of

28  § 853(n)(6)(B).

## VIII. $79,375.00 IN U.S. CURRENCY

Petitioners Rosalinda Kramer and Stuart Kramer each claim all right, title, and interest in $79,375.00 in U.S. currency seized from their Granada Hills, California residence on April 16, 2013.

As with the Branch Funds, Kramer admitted in his plea agreement that the $79,375.00 in U.S. currency seized on April 16, 2013 represented proceeds of his narcotics trafficking. By claiming that they each have all right, title, and interest in the seized currency, Rosalinda Kramer and Stuart Kramer are necessarily claiming that Kramer lied when he made this admission. More importantly, petitioners can present no evidence that they had an interest superior to Kramer's for this money.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

1

## IX. CONCLUSION

2
3
4
5
6
7

Based on the above, and the anticipated testimony and evidence to be presented at the July 18, 2016 hearing on the ancillary petitions, the Government respectfully requests that the Court deny the petitions of Rosalinda Kramer, Stuart Kramer, Blue Mountain Management and Marketing, Inc., Private Funding Management, Inc., and Anahi Gutierrez, and enter a Final Order forfeiting the Forfeitable Assets to the United States.[2]

8

Dated: July 11, 2016                                    Respectfully submitted,

9
10
11
12
13

EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

14
15
16
17

*/s/ Jonathan Galatzan*
JONATHAN GALATZAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

18
19
20
21
22
23
24
25
26
27
28

[2] The Government does not seek to forfeit the interest of Wells Fargo Bank, N.A. in the Chimineas property.

14